## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF DELAWARE

SUN OPTICS, INC.
a Utah Corporation,

        Plaintiff,

  v.

FGX INTERNATIONAL, INC.,
a Delaware Corporation,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)

Civil Action No. _____

Oral Argument Requested

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR A PRELIMINARY INJUNCTION

**CONNOLLY BOVE LODGE & HUTZ**

R. ERIC HUTZ (#2702)
The Nemours Building
1007 N. Orange Street
P.O. Box 2702
Wilmington, DE  19899
Phone (302) 658-9141
*Attorneys for Plaintiff SUN OPTICS, INC.*

**OF COUNSEL**
LARRY R. LAYCOCK
CHAD E. NYDEGGER
**WORKMAN NYDEGGER**
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT  84111
Telephone:  (801) 533-9800

**DATE:**  March 7, 2007

# TABLE OF CONTENTS

**PAGE**

I.    NATURE AND STAGE OF THE PROCEEDINGS ..........................................................1

II.    SUMMARY OF ARGUMENT ...................................................................................1

III.    STATEMENT OF FACTS ........................................................................................2

IV.    INTRODUCTION ...................................................................................................4

V.    STANDARDS FOR GRANTING A PRELIMINARY INJUNCTION..............................4

VI.    ARGUMENT.........................................................................................................4

    A.    Sun Optics Is Likely to Prevail on the Merits of Infringement and Validity..........4

        1.    Sun Optics is likely to prove infringement of the '427 and '180 patents ...............................................................................................5

            a)    Legal standards for infringement of design patents.........................6

            b)    The Accused Products satisfy the "ordinary observer" test............6

            c)    The Accused Products satisfy the "points of novelty" test............11

        2.    The claims of the '427 and '180 patents are valid .....................................12

    B.    Sun Optics is Suffering Irreparable Harm Because of Foster Grant's Continuing Infringement of the '427 and '180 Patents .........................................12

        1.    Sun Optics is entitled to a presumption of irreparable harm .....................12

        2.    Sun Optics will be irreparably harmed independent of the presumption......................................................................................................12

    C.    The Balance of Hardships Favors Sun Optics .......................................................15

    D.    The Public Interest Favors Granting The Preliminary Injunction .........................15

VII.    CONCLUSION....................................................................................................17

## TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ashcroft v. Am. Civil Liberties Union,*
   542 U.S. 656 (2004)............................................................................................. 5

*Atlas Powder Co. v. Ireco Chem.,*
   773 F.2d 1230 (Fed. Cir. 1985)........................................................................ 5, 14

*Augat, Inc. v. John Mezzalingua Assoc., Inc.,*
   642 F. Supp. 506 (N.D.N.Y. 1986)...................................................................... 16

*Bell & Howell Document Mgmt. Prods. Co. v. Altek Systems,*
   132 F.3d 701 (Fed. Cir. 1997).............................................................................. 15

*Bernhardt, L.L.C. v. Collezione Europa USA, Inc.,*
   386 F.3d 1371 (Fed. Cir. 2004)............................................................................. 6

*Braun Inc. v. Dynamics Corp. of Am.,*
   975 F.2d 815 (Fed. Cir. 1992)............................................................................... 6

*Canon Computer Sys. Inc. v. Nu-Kote Int'l, Inc.,*
   134 F.3d 1085 (Fed. Cir. 1998)........................................................................... 12

*Contessa Food Prods., Inc. v. Conagra, Inc.,*
   282 F.3d 1370 (Fed. Cir. 2002).............................................................................. 6

*E.I. duPont de Nemours & Co. v. Polaroid Graphics Imaging, Inc.,*
   706 F. Supp. 1135 (D.Del. 1989).......................................................................... 16

*Gonzales v. O Centro Espirita,*
   126 S. Ct. 1211 (2006).......................................................................................... 5

*H.H. Robertson, Co. v. United Steel Deck, Inc.,*
   820 F.2d 384 (Fed. Cir. 1987).............................................................................. 5

*Hybritech, Inc. v. Abbott Lab.,*
   849 F.2d 1446 (Fed. Cir. 1988)..................................................................... 5, 14, 15

*Illinois Tool Works, Inc. v. Grip-Pak, Inc.,*
   906 F.2d 679 (Fed. Cir. 1990).............................................................................. 15

*In re Angstadt,*
   537 F.2d 498 (C.C.P.A. 1976) ............................................................................. 16

*Jeneric/Pentron, Inc. v. Dillon Co., Inc.,*
   205 F.3d 1377 (Fed. Cir. 2000)............................................................................. 4

# TABLE OF AUTHORITIES

**PAGE(S)**

*Kegel Co., Inc. v. AMF Bowling, Inc.*,
    127 F.3d 1420 (Fed. Cir. 1997)........................................................................ 5

*Lawman Armor Corp. v. Winner Int'l LLC*,
    437 F.3d 1383 (Fed. Cir. 2006)........................................................................ 6

*Litton Sys., Inc. v. Whirlpool Corp.*,
    728 F.2d 1423 (Fed. Cir. 1984)........................................................................ 6

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995)........................................................................... 5

*Medtronic, Inc. v. Daig Corp.*,
    221 U.S.P.Q. 595 (D. Minn. 1983) ................................................................. 16

*New England Braiding Co. v. A.W. Chesterton Co.*,
    970 F.2d 878 (Fed. Cir. 1992).......................................................................... 5

*North American Vaccine, Inc. v. American Cyanamid Co.*,
    7 F.3d 1571 (Fed. Cir. 1993)........................................................................... 12

*PHG Techs., LLC v. St. John Cos.*,
    469 F.3d 1361 (Fed. Cir. Nov. 17, 2006)......................................................... 5

*Pittway v. Black & Decker*,
    667 F. Supp. 585 (N.D. Ill. 1987) .................................................................... 16

*Polymer Technologies, Inc. v. Bridwell*,
    103 F.2d 970 (Fed. Cir. 1996).......................................................................... 12

*Reebok Int'l Ltd. v. J. Baker, Inc.*,
    32 F.3d 1552 (Fed. Cir. 1994).......................................................................... 12

*Rohm & Haas Co. v. Crystal Chemical Co.*,
    722 F.2d 1556 (Fed. Cir. 1983)........................................................................ 16

*Sears, Roebuck & Co. v. Talge*,
    140 F.2d 395 (8th Cir. 1944) ........................................................................... 6

*Tropicana Prods., Inc. v. Land O'Lakes, Inc.*,
    286 F. Supp. 2d 343 (D. Del. 2003).................................................................. 6

*Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.*,
    157 F.3d 1311 (Fed. Cir. 1998)........................................................................ 6

## **TABLE OF AUTHORITIES**

**<u>PAGE(S)</u>**

**<u>STATUTES</u>**

35 U.S.C. § 282.................................................................................................................... 12

35 U.S.C. § 283.................................................................................................................... 4

Fed.R.Civ.P. 65.................................................................................................................... 4


**<u>OTHER AUTHORITIES</u>**

*Chisum on Patents*, § 20.04[1][f][I] (1999) ................................................................... 15

## I.    NATURE AND STAGE OF THE PROCEEDINGS

The nature of the proceedings is alleged patent infringement of U.S. Patent No. D525,427 and U.S. Patent No. D527,180 (the "'427 patent" and "'180 patent" respectively). For the convenience of the Court, copies of the '427 and '180 patents are attached hereto as Exhibits A and B, respectively. Sun Optics's present Motion for Preliminary Injunction was filed contemporaneously with the Complaint. Consequently, Foster Grant has not, as of the date of this filing, made an appearance in the case or filed its Answer to the Complaint.

## II.    SUMMARY OF ARGUMENT

1. To obtain a preliminary injunction Sun Optics must show that the balance of the following four factors weighs in favor of an injunction: (1) a reasonable likelihood of success on the merits, (2) the prospect of irreparable harm, (3) a balance of the parties' hardships, and (4) potential injury to an important public interest.

2. The first factor, a reasonable likelihood of success on the merits, weighs in favor of an injunction because the patents at issue are presumed valid and are likely infringed by the accused products.

3. The asserted design patents are likely infringed because the accused products satisfy both the "ordinary observer" and the "point of novelty" tests.

4. The accused products meet the "ordinary observer" test because a comparison of the two designs from the viewpoint of the ordinary observer demonstrates that the patented designs as a whole are substantially the same as the accused designs.

5. The accused products meet the "point of novelty" test because the accused devices appropriate the novelty in the patented designs that distinguish them from the prior art.

6. The second factor, the prospect of irreparable harm, weighs in favor of an injunction because Foster Grant's allegedly infringing acts are taking market

share from Sun Optics, the damage for which can not be compensated for by monetary damages.

7. The third factor, the balance of the parties' hardships, is presumed to weigh in favor of an injunction because of Sun Optics's strong showing of likelihood of success on the merits.

8. The fourth factor, potential injury to an important public interest, weighs in favor of an injunction because the only important public interest implicated by these design patents is the public's interest in upholding the patent system. No public health interest is implicated by the present suit.

## III.   STATEMENT OF FACTS

Sun Optics designs and sells innovative eye glasses, eye glass cases, and eye glass displays, which it combines into a complete merchandising program for reading glasses. [Declaration of Bruce Raile in Support of Plaintiff's Motion for a Preliminary Injunction ("Raile Decl."), at p. 1, ¶ 3.] Foster Grant also is a distributor of various products, including eye glasses and eye glass cases. [*Id.*]

Sun Optics has invented and developed an innovative merchandising program that has proven very successful in the market place. [*Id.* at pp. 1-2, ¶ 4.] This new merchandising program includes displaying the reading glasses in reading glass cases that are protected by the '427 and '180 patents. [*Id.*] Products incorporating the designs of the '427 and '180 patents are referred as "Clear Tubes" because the clear upper portion of the reading glass case allows consumers to view the style of glasses without having to take the glasses out of the display. [*Id.*] Sun Optics's used its Clear Tube merchandising program to secure a contract to sell this program through the Rite Aid national chain of stores. [*Id.*] This shelf space awarded to Sun Optics by Rite Aid was taken from Foster Grant. [*Id.*]

In approximately late 2006, a few months after Rite Aid took shelf space from Foster Grant and awarded it to Sun Optics, Foster Grant launched a knock-off of Sun Optics's Clear Tube merchandising system. [*Id.* at p. 2, ¶ 5.] Foster Grant copied Sun Optics's patented

reading glass case designs from the opaque bottom half to the clear top half of the case, including the silver band in the middle and silver cap at the top. [*Id.*] Foster Grant also copied the Sun Optics's displays, using displays with the identical number of glasses in each display, and an identical mix and arrangement of large and small reading glass cases. [*Id.*] Last, Foster Grant copied at least five different styles of Sun Optics's reading glasses. [*Id.*] In sum, Foster Grant has copied virtually every aspect of Sun Optics's reading glass merchandising system, including the reading glass case designs of the '427 and '180 patents. [*Id.*]

In the reading glasses market, vendors of reading glasses typically obtain accounts with retail customers who carry the manufacturer's products and sell them to consumers. [*Id.* at p. 2, ¶ 6.] The normal course is for retail customers to enter into an exclusive contract with a vendor. [*Id.*] These contracts, however, also typically include a provision that allows the retail customer to carry certain products of different vendors if those products are not offered by the original vendor under the exclusive contract. [*Id.*] Further, retailers who do not sign exclusive contracts with reading glasses vendors still typically carry the product of only one vendor because it is less hassle for the retailer to deal with one vendor as opposed to numerous vendors. [*Id.*] Again, the exception to this practice is that retailers add the product of a second vendor if it cannot obtain the desired product from the first vendor. [*Id.*]

Prior to Foster Grant's infringement of Sun Optics's patents, Sun Optics has been able to use its innovative reading glass case designs to obtain accounts with retailers that carry the product of another vendor because Sun Optics was the only vendor offering the innovative Clear Tube merchandising program. [*Id.* at p. 3, ¶ 7.] For example, Sun Optics was able to obtain a contract with the Rite Aid national chain of stores to carry Sun Optics's Clear Tube products, despite Rite Aid's prior contract to carry Foster Grant's product as explained above. [*Id.*] Since entering the Rite Aid stores, Rite Aid has taken additional shelf space from Foster Grant and given it to Sun Optics because Sun Optics's Clear Tubes out sold Foster Grant's reading glasses when marketed side-by-side in Rite Aid stores. [*Id.*]

3

IV.    **INTRODUCTION**

In the accompanying Motion for Preliminary Injunction, Plaintiff Sun Optics, Inc. ("Sun Optics") seeks an order enjoining Defendant FGX International, Inc. ("Foster Grant" or "Defendant") from making, using, selling, offering to sell or importing its infringing reading glass cases ("Accused Products") in or into the United States, pending the outcome of this action. This motion is based on Foster Grant's infringement of U.S. Patent Nos. D525,427 and D527,180 (the "'427 patent" and "'180 patent" respectively).[1]    Sun Optics respectfully submits this memorandum in support of its Motion for Preliminary Injunction.

V.    **STANDARDS FOR GRANTING A PRELIMINARY INJUNCTION**

Consistent with the standard for preliminary injunction applied in other contexts, the general requirements for obtaining preliminary injunctive relief in patent cases requires the movant to show four factors:  (1) a reasonable likelihood of success on the merits, (2) the prospect of irreparable harm, (3) a balance of the parties' hardships in favor of an injunction, and (4) no potential injury to an important public interest. *Jeneric/Pentron, Inc. v. Dillon Co., Inc.,* 205 F.3d 1377, 1380 (Fed. Cir. 2000); *see also* Fed.R.Civ.P. 65; 35 U.S.C. § 283.  As shown below, each of these factors is satisfied and weighs in favor of a preliminary injunction.

VI.    **ARGUMENT**

A.    **Sun Optics Is Likely to Prevail on the Merits of Infringement and Validity**

To establish a likelihood of success on the merits Sun Optics must make a showing with respect to both validity of the '427 and '180 patents and infringement by the Accused Products.

---

[1] The primary difference between the designs claimed in the '420 and '180 patents is the shape of the horizontal cross section of the reading glass case.  The design of the '420 patent is elongated horizontally as compared to the design of the '180 patent.  This elongation of the design in the '420 patent allows this case to accommodate reading glasses with larger lenses than will fit in the cases of the '180 patent without substantially increasing the length of that case. The designs of the '420 and '180 patents are similar in all other respects.  The Accused Products that allegedly infringe the '420 patent and the accused products that allegedly infringe the '180 have exactly the same differences and similarities as the designs of the '420 and '180 patents. Consequently, the similarities, differences, and analysis of the Accused Products is the same for the products that allegedly infringe the '427 and '180 patents, respectively.  Consequently, to avoid unnecessary redundancy, this memorandum will combine the analysis of the Accused Products that infringe '427 and '180 patents, respectively.

*Hybritech, Inc. v. Abbott Lab.*, 849 F.2d 1446, 1451 (Fed. Cir. 1988).   Sun Optics need ***not***, however, establish a likelihood of success "beyond question." *Atlas Powder Co. v. Ireco Chem.*, 773 F.2d 1230, 1233 (Fed. Cir. 1985).   Indeed, Sun Optics's burden in this respect is "no different in a patent case than for other kinds of intellectual property, where, generally, only a 'clear showing' is required." *Id.; H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987)   ("The grant of a preliminary injunction does not require that infringement be proved beyond all question, or that there be no evidence supporting the viewpoint of the accused infringer."), overruled on different grounds by *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995). Also, "the movant in a preliminary injunction proceeding need not present sufficient evidence to be entitled to summary judgment in its favor." *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 883 n.4 (Fed. Cir. 1992).

At this preliminary stage, Sun Optics need only discharge its burden "in the context of the presumptions and burdens that will inhere at trial on the merits." *H.H. Robertson*, 820 F.2d at 388.   Importantly, Sun Optics's burden of proof with respect to infringement only requires evidence meeting the preponderance of the evidence standard. *See Kegel Co., Inc. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1425 and 1429 (Fed. Cir. 1997).   Conversely, Foster Grant bears the burden of establishing that the claims of the '427 and '180 patents are invalid by ***clear and convincing evidence***. At the preliminary injunction stage, Foster Grant must first come forward with evidence raising a "substantial question of invalidity." *PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1365 (Fed. Cir. Nov. 17, 2006) (citing *Gonzales v. O Centro Espirita*, 126 S. Ct. 1211, 1219-20 (2006); *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 666 (2004)); *New England Braiding*, 970 F.2d at 882.   Thereafter, Sun Optics can establish that Foster Grant's invalidity defense, if any, lacks substantial merit. *Id.*

### 1.    Sun Optics is likely to prove infringement of the '427 and '180 patents

Sun Optics is likely to succeed on the merits of its claim of literal infringement of the '427 and '180 patents.   A comparison of the Accused Products with the claims of the '427 and

'180 patents clearly satisfies both the "ordinary observer" and "point of novelty" tests required for infringement of design patents, as explained below.

### a)    Legal standards for infringement of design patents

In determining infringement of a design patent, the Federal Circuit has instructed courts to use two tests:

> In comparing a design patent claim to the accused design to determine infringement, a court must apply "two distinct tests, both of which must be satisfied in order to find infringement: (a) the 'ordinary observer' test, and (b) the 'point of novelty' test." *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed. Cir. 2002). *See Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.*, 157 F.3d 1311, 1323 (Fed. Cir. 1998). The "ordinary observer" test requires comparison of the two designs from the viewpoint of the ordinary observer to "determine whether the patented design as a whole is substantially the same as the accused design." *Tropicana Prods., Inc. v. Land O'Lakes, Inc.*, 286 F. Supp. 2d 343, 345 (D. Del. 2003) (citing *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 820 (Fed. Cir. 1992)). Under the "point of novelty" test, a court must determine whether "the accused device . . . appropriates the novelty in the patented device which distinguishes it from the prior art." *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984), (quoting *Sears, Roebuck & Co. v. Talge*, 140 F.2d 395, 396 (8th Cir. 1944)). *See generally Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1384 (Fed. Cir. 2004) (discussing the required showing for the "point of novelty" test).

*Lawman Armor Corp. v. Winner Int'l LLC*, 437 F.3d 1383, 1384-1385 (Fed. Cir. 2006). Thus, Sun Optics must show a likelihood of success for proving at trial that Foster Grant's Accused Products satisfy both the "ordinary observer" and "point of novelty" tests. Foster Grant's Accused Products meet both of these tests as set forth in detail below.

### b)    The Accused Products satisfy the "ordinary observer" test

Below is a side-by-side comparison of Figures from the '427 and '180 patents, pictures of the commercial embodiments of those patents, and pictures of the Accused Products.

| '180 Patent | Sun Optics's Commercial Embodiment | Foster Grant's Accused Product |
|---|---|---|
|  | | |

Fig. 1



Fig. 2

Fig. 4

Fig. 5



| '427 Patent | Sun Optics's Commercial Embodiment | Foster Grant's Accused Product |
|---|---|---|



As clearly demonstrated by the Figures and pictures above, the Accused Products are identical to the designs claimed in the '427 and '180 patents, respectively. Indeed, the following elements of the Figures and the pictures are the same:

1. The oval shape of a horizontal cross-section of the cases is the same.

2. The top half of the cases is transparent. The transparent portion of Sun Optics's commercial embodiments and Foster Grant's Accused Products are exactly the same height for each respective product.

3. The bottom half of the cases is opaque. The opaque bottom half of Sun Optics's commercial embodiments and Foster Grant's Accused Products is a dark gray, and are exactly the same height for each respective product.

4. The cases have a band around the middle where the opaque portion meets the transparent portion. This band on Sun Optics's commercial embodiments and on the Accused Products is made from a silver metal, and is exactly the same width for each respective product.

5.    The cases have a rounded cap at the top.  The top on Sun Optics's commercial embodiments and on the Accused Products is made from the same silver metal as the band.

6.    The cases have a substantially flat bottom.

In sum, every significant ornamental detail of the Accused Products is a virtual copy of the designs claimed by the '427 and '180 patents.

An ordinary observer of the '427 and '180 patents and the Accused Products would find that the ornamental designs are at least substantially similar, if not exactly identical. Consequently, the "ordinary observer" test clearly is satisfied.

c)    The Accused Products satisfy the "points of novelty" test

The points of novelty of the '427 and '180 patents are at least the following:

1.    A transparent upper portion.

2.    An opaque bottom portion.

3.    A band in the middle of the case, the band visually separating the transparent and opaque portions.

4.    A cap the end of the transparent portion of the case.

5.    A substantially flat end on the opaque portion or the case.

As demonstrated in the Figures above, each and every one of these points of novelty is found in the Accused Products.  The Accused Products have an opaque bottom portion and transparent upper portion exactly like the '427 and '180 patents.  The Accused Products have a band in the middle of the case that visually separates the transparent and opaque portions of the case. The Accused Products have a cap on the end of the transparent portion of the case, and a substantially flat end on the opaque portion of the case.  Consequently, the point of novelty test is satisfied and Sun Optics is likely to succeed on its claims of infringement of the claims of the '427 and '180 patents.

### 2. The claims of the '427 and '180 patents are valid

In addition to providing a strong showing of likelihood of success on the merits for the question of infringement, Sun Optics is also likely to succeed on the issue of the validity. First, the claims of the '427 and '180 patents are presumed valid. *See* 35 U.S.C. § 282. Importantly, this presumption exists at every stage of the proceedings, including the preliminary injunction stage, *Canon Computer Sys. Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998), and the party challenging validity (here Foster Grant) bears the burden of establishing invalidity by clear and convincing evidence, *North American Vaccine, Inc. v. American Cyanamid Co.*, 7 F.3d 1571, 1579 (Fed. Cir. 1993). "Thus, where the challenger fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue." *Canon Computer Sys.*, 134 F.3d at 1088.

### B. Sun Optics is Suffering Irreparable Harm Because of Foster Grant's Continuing Infringement of the '427 and '180 Patents

On the question of irreparable harm, the evidence also favors Sun Optics and entry of preliminary injunctive relief.

### 1. Sun Optics is entitled to a presumption of irreparable harm

The law is clear. A patentee who demonstrates a strong likelihood of success on the merits is entitled to a presumption of irreparable harm. *See Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556-57 (Fed. Cir. 1994). Given Sun Optics's strong showing on the merits of its claims for infringement, it is entitled to a presumption of irreparable harm which, by itself, is sufficient to satisfy the irreparable harm requirement for a preliminary injunction.

### 2. Sun Optics will be irreparably harmed independent of the presumption

Even without the presumption of irreparable harm, the undisputed facts of this case establish that Sun Optics is suffering and will continue to suffer irreparable harm until Foster Grant is enjoined. In *Polymer Technologies, Inc. v. Bridwell*, 103 F.3d 970 (Fed. Cir. 1996), the Federal Circuit recognized that ongoing infringement often has lasting and irreversible effects on the market, effects not compensable in money damages:

> Competitors change the marketplace. Years after infringement has begun, it may be impossible to restore a patentee's (or an exclusive licensee's) exclusive position by an award of damages and a permanent injunction. Customers may have established relationships with infringers. The market is rarely the same when a market of multiple sellers is suddenly converted to one with a single seller by legal fiat. Requiring purchasers to pay higher prices after years of paying lower prices to infringers is not a reliable business option.

*Id.* at 975-76. The law recognizes that relationships built upon infringing products like the Accused Products pollute the market and make it very difficult, if not impossible, for a patentee such as Sun Optics to regain market share and customer loyalty, even with the statutory right to exclude. Moreover, because of the statutory right to exclude, Sun Optics could charge higher prices if Foster Grant were not infringing. After Foster Grant has conditioned the market, however, Sun Optics may no longer have that option, notwithstanding its right to do so via the '427 and '180 patents.

Indeed, there is evidence that this irreparable harm is already occurring. In the reading glasses market, vendors of reading glasses typically obtain accounts with retail customers who carry the manufacturer's products and sell them to consumers. [Raile Decl., at p. 2, ¶ 6.] As explained in the Statement of Facts section above, the normal course is for retail customers to enter into an exclusive contract with a vendor. [*Id.*] Consequently, retail customers presently purchasing product from one vendor will not entertain the proposition of carrying product from another vendor unless the second vendor offers products that are not available through the first vendor. For example, Sun Optics was able to obtain a contract with the Rite Aid national chain of stores to carry Sun Optics's Clear Tube products, despite Rite Aid's prior contract to carry Foster Grant's products because Foster Grant did not offer a Clear Tube program. [*Id.*]

As explained in the Statement of Facts section above, Foster Grant has seen Sun Optics's success with its innovative Clear Tube program. Consequently, Foster Grant began copying and marketing Sun Optics's Clear Tube marketing program. Before Foster Grant began copying Sun Optics's Clear Tube program, Sun Optics was able to market its innovative Clear Tube program as a program available exclusively from Sun Optics. [*Id.* at p. 3, ¶ 8.] The innovative nature of Sun Optics's Clear Tubes coupled with Sun Optics's as the exclusive source for the Clear Tubes enabled Sun Optics to obtain appointments to pitch it Clear Tube program to retailers, like Rite

Aid, that were already carrying the product of another vendor. [*Id.*] Since Foster Grant began marketing its copy-cat Clear Tube program, Sun Optics has been met with new resistance from some retail customers. [*Id.*] Retailers no longer view Sun Optics as the exclusive source of Clear Tubes. [*Id.*] Consequently, some retailers have refused even to give Sun Optics an appointment to pitch its Clear Tube program. [*Id.*] Thus, Foster Grant's infringement is severely curtailing Sun Optics's ability to market its Clear Tube program.

While Foster Grant might argue that damages are sufficient to make Sun Optics whole, this argument has been categorically rejected by the Federal Circuit. In *Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1233 (Fed. Cir. 1985), the Federal Circuit held that:

> [The defendant] also argues that since all of [the patentee's] possible damages are compensable in money, there is no irreparable harm to justify a preliminary injunction. [The defendant's] arguments that infringement and related damages are fully compensable in money downplay the nature of the statutory right to exclude others from making, using, or selling the patented invention throughout the United States. While monetary relief is often the sole remedy for past infringement, it does not follow that a money award is also the sole remedy against future infringement. The patent statute further provides injunctive relief to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable in money. If monetary relief were the sole relief afforded by the patent statute then injunctions would be unnecessary and infringers could become compulsory licensees for as long as the litigation lasts.

*Id.; accord, Hybritech, Inc.*, 849 F.2d at 1456-57 ("[B]ecause the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole"). Further, any damages assessed upon the infringing products will not be an accurate reflection of Sun Optics's harm. For example, some retailers are already under contract with Foster Grant. As explained above, under the typical contract between vendors and retailers, as long as Clear Tubes are available from Foster Grant, those retailers can not carry Sun Optics's Clear Tubes regardless of whether Foster Grant has placed the Clear Tube program with those retailers. Thus, Sun Optics is being foreclosed from obtaining accounts with retailers that carry Foster Grant, but are not currently selling the infringing products. The lost opportunity of Sun Optics to obtain these accounts will not be reflected in any money damages accessed on the infringing products sold by Foster Grant.

### C.    The Balance of Hardships Favors Sun Optics

When a movant meets the other elements for the granting of a preliminary injunction, the movant is entitled to relief unless the balance of hardships tips *decidedly* in the accused infringer's favor. 7 Donald S. Chisum, *Chisum on Patents*, § 20.04[1][f][I] (1999) ("As to comparative hardship, the court will usually grant relief unless the balance tips decidedly in favor of the defendant."). Moreover, while the balance of hardships tipping in favor of the movant is one of four factors to be considered by a district court in determining whether to issue a preliminary injunction, "the Federal Circuit has never required, as a prerequisite to awarding preliminary injunctive relief, that the district court expressly find the existence of this factor." *Hybritech,* 849 F.2d at 1457 (rejecting appellant's argument that district court erred by granting preliminary injunction without determining that balance of hardships tipped in movant's favor).

The hardship on a patentee denied an injunction after showing a strong likelihood of success on the merits can be a serious delay in the exercise of the limited-in-time right to exclude. *Illinois Tool Works, Inc. v. Grip-Pak, Inc.,* 906 F.2d 679, 683 (Fed. Cir. 1990). If the movant's showing on the merits is strong, the balance of hardships tips toward the patentee. *Id.* The Federal Circuit has made it clear that the mere fact that an accused infringer may be injured or even put out of business is *insufficient* to deny the grant of a preliminary injunction where the patentee has made a strong showing of likelihood of success, irreparable harm and the public interest. *See Bell & Howell Document Mgmt. Prods. Co. v. Altek Systems,* 132 F.3d 701, 708 (Fed. Cir. 1997).

Here, Sun Optics has made a strong showing on the merits, and the balance of the hardships therefore tips in favor of Sun Optics.

### D.    The Public Interest Favors Granting The Preliminary Injunction

In considering the public interest, the Court weighs the interest in protecting rights secured by valid patents with whatever critical interest may be impacted by the grant of an injunction. *See, Hybritech, Inc.*, 849 F.2d at 1458. Where, as here, there is a strong showing of infringement and invalidity, courts generally find that the public interest in a patent case is

strongly weighted toward protecting the rights of patent holders. *Augat, Inc. v. John Mezzalingua Assoc., Inc.,* 642 F. Supp. 506, 509 (N.D.N.Y. 1986); *see also, Pittway v. Black & Decker,* 667 F. Supp. 585, 593 (N.D. Ill. 1987) ("[I]t may be said protecting patents from would-be infringers is always acting in the public interest"); *E.I. duPont de Nemours & Co. v. Polaroid Graphics Imaging, Inc.,* 706 F. Supp. 1135, 1146 (D. Del. 1989), *aff'd,* 887 F.2d 1095. Courts have generally held that the public interest favors the granting of an injunction unless such an injunction raises serious public health concerns (such as patents on medical devices.) *See Hybritech,* 849 F.2d at 1458. No public health concerns are at issue in this case.

"The basic policy underlying the patent system is to encourage the disclosure of inventions through issuance of patents. Another policy of the system is to stimulate the investment of risk capital in the commercialization of useful patentable inventions so that the public gets some benefit from them, which may not occur in the absence of some patent protection." *Rohm & Haas Co. v. Crystal Chemical Co.,* 722 F.2d 1556 (Fed. Cir. 1983); *see also In re Angstadt,* 537 F.2d 498, 503 (C.C.P.A. 1976) ("[T]he basic policy of the Patent Act . . . is to encourage disclosure of inventions and thereby to promote progress in the useful arts."); *see also Medtronic, Inc. v. Daig Corp.,* 221 U.S.P.Q. 595 (D. Minn. 1983) (finding issuance of preliminary injunction in a patent case was in the public interest because: "In enacting the patent laws, Congress recognized that it is necessary to grant temporary monopolies on inventions in order to induce those skilled in the 'useful arts' to expend the time and money necessary to research and develop new products and to induce them 'to bring forth new knowledge.'") (citation omitted).

In the present case, Sun Optics has spent substantial capital and labor in developing, perfecting, promoting, marketing, and patenting the design of the '427 and '180 patents. If Foster Grant is not enjoined from infringing the '427 and '180 patents, it will in a very real sense be stealing the capital and efforts Sun Optics has expended, which, as discussed above, will irreparably harm Sun Optics. This type of competition is not only fundamentally unfair, it is contrary to public policy because the result of allowing such thievery would be that inventors

and companies would not expend energy and capital to innovate and develop new and better products.

In light of Sun Optics's strong showing of a likelihood of success on the merits on both infringement and validity, the public policy favors a preliminary injunction and there is no public policy which favors allowing Foster Grant to continue to infringe a valid patent.

## VII.    CONCLUSION

Based on the foregoing, Sun Optics respectfully requests that the Court grant its motion for a preliminary injunction and preliminarily enjoin Foster Grant from selling its Clear Tube products that allegedly infringe the '429 and '180 patents.

Respectfully submitted

**CONNOLLY BOVE LODGE & HUTZ, LLP**

By: _____
R. ERIC HUTZ (#2702)
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE  19899
Phone (302) 658-9141
ehutz@cblh.com
*Attorneys for Plaintiff*
  *SUN OPTICS, INC, Inc.*

LARRY R. LAYCOCK
CHAD E. NYDEGGER
**WORKMAN NYDEGGER**
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT  84111
Telephone:  (801) 533-9800
*Attorneys for Plaintiff   SUN OPTICS, INC.*

**DATE:**  March 7, 2007
525634_1

17

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2007, I did cause to be served two copies of the

foregoing: **PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A**

**PRELIMINARY INJUNCTION** in the manner indicated upon the following:

> **HAND DELIVERED**
> FGX International, Inc.
> c/o The Corporation Trust Company
> Corporation Trust Center
> 1209 Orange Street
> Wilmington, DE 19801

R. Eric Hutz

# EXHIBIT A

US00D525427S

(12) **United States Design Patent**    (10) Patent No.:    **US D525,427 S**

Raile    (45) Date of Patent:    ** *Jul. 25, 2006

(54) **EYEGLASS CASE**

(75) Inventor:    **Bruce Raile**, Park City, UT (US)

(73) Assignee:    **Sun Optics, Inc.**, Salt Lake City, UT (US)

( * ) Notice:    This patent is subject to a terminal disclaimer.

(**) Term:    **14 Years**

(21) Appl. No.: **29/205,824**

(22) Filed:    **May 20, 2004**

(51) LOC (8) Cl. ..................................................... **03-01**
(52) U.S. Cl. .......................................... **D3/265**; D3/263
(58) **Field of Classification Search** ................. D3/263,
D3/265, 268; 206/5, 6, 203.5; 351/63; 220/326
See application file for complete search history.

(56)    **References Cited**

U.S. PATENT DOCUMENTS

|  |  |  |  |  |
|---|---|---|---|---|
| 246,460 | A | * | 8/1881 | Chase ........................... 206/6 |
| 1,092,156 | A |  | 4/1914 | Mathis |
| 2,606,708 | A |  | 8/1952 | Irvan |
| 2,713,947 | A |  | 7/1955 | Foster |
| 2,735,597 | A |  | 2/1956 | Treleven |
| 2,747,760 | A |  | 5/1956 | Jacobson |
| 2,809,786 | A | * | 10/1957 | Anderson ................... 220/326 |
| 2,816,666 | A |  | 12/1957 | Nadel |
| RE24,571 | E |  | 11/1958 | Nadel |
| 2,936,897 | A |  | 5/1960 | Bloch |
| 2,966,271 | A |  | 12/1960 | Nadel |
| 3,333,709 | A |  | 8/1967 | Leblanc et al. |
| D208,469 | S |  | 9/1967 | Parker |
| 3,357,568 | A |  | 12/1967 | Leblanc et al. |
| 3,593,856 | A |  | 7/1971 | Zander |
| 3,817,392 | A |  | 6/1974 | Bloch |
| 3,857,482 | A |  | 12/1974 | Shelton |
| 3,866,800 | A |  | 2/1975 | Schmitt |
| 4,000,810 | A |  | 1/1977 | Leblanc |
| 4,204,602 | A |  | 5/1980 | Dunchock |
| D267,992 | S |  | 2/1983 | Shelton |
| D275,160 | S |  | 8/1984 | Shelton |

|  |  |  |  |  |
|---|---|---|---|---|
| D275,161 | S |  | 8/1984 | Shelton |
| 4,572,366 | A |  | 2/1986 | Carson |
| 4,614,272 | A |  | 9/1986 | Shelton et al. |
| D286,462 | S | * | 11/1986 | Sender et al. ................. D3/265 |
| 4,715,575 | A |  | 12/1987 | Kamerer |
| 4,733,775 | A |  | 3/1988 | Fireman |
| 4,744,461 | A |  | 5/1988 | Lapham |
| 5,141,117 | A |  | 8/1992 | Olsen et al. |
| D339,913 | S | * | 10/1993 | Reed ............................ D3/265 |
| 5,423,419 | A |  | 6/1995 | Wentz et al. |
| 5,501,321 | A |  | 3/1996 | Liu |
| D369,466 | S |  | 5/1996 | Jannard et al. |
| 5,568,872 | A |  | 10/1996 | Hinnant, Sr. |
| D400,009 | S | * | 10/1998 | Conway ...................... D3/265 |
| 5,899,371 | A | * | 5/1999 | Weliver ..................... 224/245 |
| 5,929,967 | A |  | 7/1999 | Conner |

(Continued)

FOREIGN PATENT DOCUMENTS

DE    3815889    11/1989

*Primary Examiner*—Celia A. Murphy
(74) *Attorney, Agent, or Firm*—Workman-Nydegger

(57)    **CLAIM**

The ornamental design for an eyeglass case, as shown and described.

**DESCRIPTION**

FIG. 1 is a perspective view of an eyeglass case showing my new design;
FIG. 2 is a front elevational view of the eyeglass case as shown in FIG. 1, with the back elevational view being a mirror image thereof;
FIG. 3 is a right side elevational view of the eyeglass case shown in FIG. 1, with the left side being a mirror image thereof;
FIG. 4 is a top plan view of an eyeglass case shown in FIG. 1; and,
FIG. 5 is a bottom plan view of the eyeglass case as shown in FIG. 1.
The broken lines are for illustrative purposes only and form no part of the claimed design.

**1 Claim, 2 Drawing Sheets**




**US D525,427 S**

Page 2

## U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,949,515 | A | | 9/1999 | Hoshino |
| D422,139 | S | * | 4/2000 | Meikle ........................ D3/268 |
| D425,299 | S | * | 5/2000 | Charbonneau ............... D3/265 |
| 6,102,541 | A | * | 8/2000 | Kuo ............................ 351/63 |
| D432,784 | S | * | 10/2000 | Conway .................. D3/203.5 |
| D432,786 | S | * | 10/2000 | Rogers ....................... D3/265 |
| D434,560 | S | * | 12/2000 | Chao .......................... D3/265 |
| D436,434 | S | * | 1/2001 | Conway .................. D3/203.5 |
| D436,725 | S | * | 1/2001 | Rogers ....................... D3/265 |
| 6,170,651 | B1 | * | 1/2001 | Taormina ...................... 206/5 |
| D437,112 | S | * | 2/2001 | Toffoli ....................... D3/219 |
| 6,206,217 | B1 | * | 3/2001 | Chiang .......................... 220/8 |
| D439,738 | S | * | 4/2001 | McCormack ............... D3/265 |
| D441,953 | S | * | 5/2001 | Ben Moshe ................ D3/265 |
| D446,389 | S | * | 8/2001 | Zhou ........................... D3/265 |
| 6,273,246 | B1 | * | 8/2001 | Marciano ................... 206/301 |
| D454,686 | S | * | 3/2002 | McCormack ................ D3/265 |
| 6,382,407 | B1 | * | 5/2002 | Chao ............................. 206/5 |
| 6,415,915 | B1 | | 7/2002 | Grossman |
| D467,421 | S | * | 12/2002 | Chao .......................... D3/265 |
| 6,491,158 | B1 | * | 12/2002 | Chen ............................. 206/5 |
| 6,626,287 | B1 | | 9/2003 | Watson |
| D483,944 | S | * | 12/2003 | Conner ....................... D3/265 |
| 6,789,664 | B1 | | 9/2004 | Chao |
| 6,851,552 | B1 | * | 2/2005 | Chao ............................. 206/5 |
| 6,929,116 | B1 | * | 8/2005 | Chao et al. .................... 206/5 |
| 2002/0157968 | A1 | * | 10/2002 | Chen ............................. 206/5 |
| 2003/0111361 | A1 | | 6/2003 | Fischer et al. |
| 2005/0155872 | A1 | * | 7/2005 | Cheng ........................... 206/6 |

* cited by examiner



*Fig. 1*



*Fig. 4*



*Fig. 2*



*Fig. 3*



*Fig. 5*

# EXHIBIT B



US00D527180S

(12) **United States Design Patent**
Raile

(10) Patent No.: **US D527,180 S**
(45) Date of Patent: **  *Aug. 29, 2006**

(54) **EYEGLASS CASE**

(75) Inventor: **Bruce Raile**, Park City, UT (US)

(73) Assignee: **Sun Optics, Inc.**, Salt Lake City, UT (US)

( * ) Notice: This patent is subject to a terminal disclaimer.

(**) Term: **14 Years**

(21) Appl. No.: **29/221,502**

(22) Filed: **Jan. 17, 2005**

**Related U.S. Application Data**

(63) Continuation of application No. 29/205,824, filed on May 20, 2004.

(51) LOC (8) Cl. ................................................... **03-01**

(52) U.S. Cl. ........................................ **D3/265; D3/263**

(58) Field of Classification Search ................. D3/263, D3/265, 268; 206/5, 6, 203.5; 351/63; 220/326
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 246,460 | A * | 8/1881 | Chase ........................... 206/6 |
| 1,092,156 | A | 4/1914 | Mathis |
| 2,606,708 | A | 8/1952 | Irvan |
| 2,713,947 | A | 7/1955 | Foster |
| 2,735,597 | A | 2/1956 | Treleven |
| 2,747,760 | A | 5/1956 | Jacobson |
| 2,809,766 | A * | 10/1957 | Anderson ................... 220/326 |
| 2,816,666 | A | 12/1957 | Nadel |
| RE24,571 | E | 11/1958 | Nadel |
| 2,936,897 | A | 5/1960 | Bloch |
| 2,966,271 | A | 12/1960 | Nadel |
| 3,333,709 | A | 8/1967 | Leblanc et al. |
| D208,469 | S | 9/1967 | Parker |
| 3,357,568 | A | 12/1967 | Leblanc et al. |
| 3,593,856 | A | 7/1971 | Zander |
| 3,817,392 | A | 6/1974 | Bloch |
| 3,857,482 | A | 12/1974 | Shelton |
| 3,866,800 | A | 2/1975 | Schmitt |
| 4,000,810 | A | 1/1977 | Leblanc |
| 4,204,602 | A | 5/1980 | Dunchock |
| D267,992 | S | 2/1983 | Shelton |
| D275,160 | S | 8/1984 | Shelton |
| D275,161 | S | 8/1984 | Shelton |
| 4,572,366 | A | 2/1986 | Carson |
| 4,614,272 | A | 9/1986 | Shelton et al. |
| D286,462 | S * | 11/1986 | Sender et al. ................ D3/265 |
| 4,715,575 | A | 12/1987 | Kamerer |
| 4,733,775 | A | 3/1988 | Fireman |
| 4,744,461 | A | 5/1988 | Lapham |
| 5,141,117 | A | 8/1992 | Olsen et al. |
| D339,913 | S * | 10/1993 | Reed ........................... D3/265 |
| 5,423,419 | A | 6/1995 | Wentz et al. |
| 5,501,321 | A | 3/1996 | Liu |

(Continued)

FOREIGN PATENT DOCUMENTS

DE          3815889          11/1989

*Primary Examiner*—Celia A. Murphy
(74) *Attorney, Agent, or Firm*—Workman-Nydegger

(57) **CLAIM**

The ornamental design for an eyeglass case, as shown and described.

**DESCRIPTION**

FIG. 1 is a perspective view of an eyeglass case showing my new design;
FIG. 2 is a front elevational view of the eyeglass case as shown in FIG. 1, with the back elevational view being a mirror image thereof;
FIG. 3 is a right side elevational view of the eyeglass case shown in FIG. 1, with the left side view being a mirror image thereof;
FIG. 4 is a top plan view of the eyeglass case shown in FIG. 1; and,
FIG. 5 is a bottom plan view of the eyeglass case as shown in FIG. 1.
The broken lines are for illustrative purposes only and form no part of the claimed design.

**1 Claim, 2 Drawing Sheets**




**US D527,180 S**
Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D369,466 S | | 5/1996 | Jannard et al. |
| 5,568,872 A | | 10/1996 | Hinnant, Sr. |
| D400,009 S | * | 10/1998 | Conway ...................... D3/265 |
| 5,899,371 A | * | 5/1999 | Weliver ...................... 224/245 |
| 5,929,967 A | | 7/1999 | Conner |
| 5,949,515 A | | 9/1999 | Hoshino |
| D422,139 S | * | 4/2000 | Meikle ...................... D3/268 |
| D425,299 S | * | 5/2000 | Charbonneau ............... D3/265 |
| 6,102,541 A | * | 8/2000 | Kuo ........................... 351/63 |
| D432,784 S | * | 10/2000 | Conway ................... D3/203.5 |
| D432,786 S | * | 10/2000 | Rogers ...................... D3/265 |
| D434,560 S | * | 12/2000 | Chao .......................... D3/265 |
| D436,434 S | * | 1/2001 | Conway ................... D3/203.5 |
| D436,725 S | * | 1/2001 | Rogers ...................... D3/265 |
| 6,170,651 B1 | * | 1/2001 | Taormina ...................... 206/5 |
| D437,112 S | * | 2/2001 | Toffoli .......................... D3/219 |
| 6,206,217 B1 | * | 3/2001 | Chiang ......................... 220/8 |
| D439,738 S | * | 4/2001 | McCormack ............... D3/265 |
| D441,953 S | * | 5/2001 | Ben Moshe ................. D3/265 |
| D446,389 S | * | 8/2001 | Zhou .......................... D3/265 |
| 6,273,246 B1 | * | 8/2001 | Marciano .................... 206/301 |
| D454,686 S | * | 3/2002 | McCormack ............... D3/265 |
| 6,382,407 B1 | * | 5/2002 | Chao ............................. 206/5 |
| 6,415,915 B1 | | 7/2002 | Grossman |
| D467,421 S | * | 12/2002 | Chao .......................... D3/265 |
| 6,491,158 B1 | * | 12/2002 | Chen ............................. 206/5 |
| 6,626,287 B1 | | 9/2003 | Watson |
| D483,944 S | * | 12/2003 | Conner ...................... D3/265 |
| 6,789,664 B1 | | 9/2004 | Chao |
| 6,851,552 B1 | * | 2/2005 | Chao ............................. 206/5 |
| 6,929,116 B1 | * | 8/2005 | Chao et al. ..................... 206/5 |
| 2002/0157968 A1 | * | 10/2002 | Chen ............................. 206/5 |
| 2003/0111361 A1 | | 6/2003 | Fischer et al. |
| 2005/0155872 A1 | * | 7/2005 | Cheng ............................ 206/6 |

* cited by examiner



*Fig. 1*



*Fig. 4*





*Fig. 2*

*Fig. 3*



*Fig. 5*