IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SUN OPTICS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-137-SLR |
| | ) | |
| FGX INTERNATIONAL INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**GREENBERG TRAURIG, LLP**
Donald J. Detweiler (I.D. #3087)
Sandra G. M. Selzer (I.D. #4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
302-661-7000
*detweilerd@gtlaw.com*
*selzers@gtlaw.com4*

*Attorneys for FGX International, Inc.*

DATE: April 4, 2007

## TABLE OF CONTENTS

**PAGE**

NATURE AND STAGE OF THE PROCEEDINGS ................................................................. 1

PRELIMINARY STATEMENT ............................................................................................. 1

SUMMARY OF ARGUMENT ............................................................................................... 2

CONCISE STATEMENT OF FACTS ................................................................................... 2

ARGUMENT ........................................................................................................................... 5

     I.     PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE
          THE PATENTS AT ISSUE ARE INVALID. ...................................................5

     II.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE
          PLAINTIFF'S ATTEMPT AT "JUDGE SHOPPING" IS AN ABUSE OF
          THE JUDICIAL PROCESS. ...........................................................................11

CONCLUSION ...................................................................................................................... 16

# TABLE OF AUTHORITIES

**PAGE**

**Federal Cases**

Cargill, Inc. v. Canbra Foods, LTD.,
476 F.3d 1359 (Fed. Cir. 2007)............................................................... 7, 8

Chambers v. NASCO, Inc.,
501 U.S. 32 (1991)........................................................................... 11, 14

Dayco Prods., Inc. v. Total Containment, Inc.,
329 F.3d 1358 (Fed.Cir. 2003)..................................................................9

Dippin' Dots, Inc. v. Mosey,
476 F.3d 1337 (Fed. Cir. 2007)............................................................ 7, 8, 9

Disability Advocates and Counseling Group, Inc. v. Betancourt,
379 F. Supp. 2d 1343 (S.D. Fl. 2005) .................................................... 12, 14

Eash v. Riggins Trucking Inc.,
757 F.2d 557 (3d Cir. 1985).................................................................. 11

Enzo Biochem, Inc. v. Gen-Probe, Inc.,
424 F.3d 1276 (Fed. Cir. 2005)..................................................................7

Hernandez v. City of El Monte,
138 F.3d 393 (9th Cir. 1998) ................................................................ 11

In re BellSouth Corp.,
334 F.3d 941 (11th Cir. 2003) .............................................................. 12

In re Fieger,
No. 97-1359, 1999 WL 717991 (6th Cir. Sept. 10, 1999) ........................... 14

KangaROOS U.S.A., Inc. v. Caldor, Inc.,
778 F.2d 1571 (Fed. Cir. 1985)..............................................................10

Kellen Co., Inc. v. Calphalon Corp.,
54 F. Supp. 2d 218 (S.D.N.Y. 1999)........................................................11

Li Second Family L.P. v Toshiba Corp.,
231 F.3d 1373 (Fed. Cir. 2000)..............................................................10

McCuin v. Texas Power & Light Co.,
714 F.2d 1255 (5th Cir. 1983) .............................................................. 13

Molins PLC v. Textron, Inc.,
    48 F.3d 1172 (Fed. Cir. 1995)........................................................................8

Nilssen v. Osram Sylvania, Inc.,
    440 F. Supp. 2d 884 (N.D. Ill. 2006) ..........................................................10

Oliva v. Sullivan,
    958 F.2d 272 (9th Cir. 1992) ........................................................................14

Paragon Podiatry Lab., Inc. v. KLM Labs. Inc.,
    984 F.2d 1182 (Fed.Cir. 1993)......................................................................9

Pfaff v. Wells Elecs., Inc.,
    525 U.S. 55 (1998)......................................................................................6, 7

Ruth v. Purdue Pharma Co.,
    225 F.R.D. 434 (S.D.N.Y. 2004) ................................................................12

Scaltech, Inc. v. Retec/Tetra, LLC,
    269 F.3d 1321 (Fed. Cir. 2001)......................................................................6

Semmes Motors, Inc. v. Ford Motor Co.,
    429 F.2d 1197 (2d Cir. 1970).......................................................................11

Smith v. Mt. Sinai Hospital,
    No. 84 Civ 9111-CSH, 1985 WL 561, (S.D.N.Y.  Apr. 22, 1985)..........................13

Standing Comm. on Discipline of the U.S. Dist. Ct. for the Cent. Dist. of Cal. v. Yagman,
    55 F.3d 1430 (9th Cir. 1995) .......................................................................11

United States v. Conforte,
    457 F.Supp. 641 (D. Nev. 1978)..................................................................11

United States v. Phillips,
    59 F. Supp. 2d 1178  (D. Utah 1999)............................................................11

Zografos v. Qwest Communications Corp.,
    225 F. Supp. 2d 1217 (D. Ore. 2002)...........................................................13

**Federal Statutes**

35 U.S.C. § 102(b) ................................................................... 1, 2, 5, 6, 7

37 C.F.R. § 1.56 ...................................................................... 7, 8, 10

## NATURE AND STAGE OF THE PROCEEDINGS

Defendant FGX International, Inc. ("FGX") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, the plaintiff, Sun Optics, Inc. ("Sun Optics" or "Plaintiff") fails to state a claim for which relief can be granted where (i) the asserted patents are invalid; and (ii) the Plaintiff has impermissibly engaged in judge shopping across two jurisdictions. FGX has not yet filed its Answer to the Complaint or its Opposition to Plaintiff's Motion for Preliminary Injunction.

## PRELIMINARY STATEMENT

Despite Plaintiff's allegations to the contrary, the facts proffered by Plaintiff reveal that the patents at issue in this action are invalid as a matter of law. Plaintiff offered the asserted patents for sale more than one year prior to applying for the patent, making the patents invalid pursuant to 35 U.S.C. § 102(b). Although the on-sale facts were admitted in this suit, the Plaintiff improperly withheld them from the patent office, stripping the office of its ability to properly examine the patent; thus, no presumption of validity applies.

Furthermore, this action represents an impermissible attempt by Plaintiff to avoid having its design patent complaint heard in Utah, where it originally brought the action.[2] Plaintiff filed the Utah action on February 28, 2007.[3] Upon assignment of the Utah action to the Honorable Bruce R. Jenkins of the United States District Court for the District of Utah, Plaintiff voluntarily

---

[1] A true and correct copy of Plaintiff's Complaint, dated March 7, 2007 (the "Compl.") is attached as Exhibit A to the Affirmation of Donald J. Detweiler ("Detweiler Aff.")

[2] A true and correct copy of Plaintiff's Utah Complaint, dated February 28, 2007 (the "Utah Compl.") is attached as Exhibit B to the Detweiler Aff.

[3] Sun Optics Inc. v. FGX International, Inc., Case No. 07-00121-BSJ (D. Utah February 28, 2007).

dismissed the Utah action and immediately re-filed the same action in this Court.[4]  Just two

weeks before the voluntarily dismissal, Judge Jenkins ruled against Plaintiff's counsel in another

unrelated patent case.[5]  Plaintiff's acts can only be explained as an effort to avoid the assignment

of Judge Jenkins, and such judge shopping should not be permitted.  Thus, because Plaintiff has

failed to state a claim upon which relief can be granted and because Plaintiff has engaged in

inequitable conduct, this action should be dismissed.

## SUMMARY OF ARGUMENT

     I.     This Court should dismiss Plaintiff's Complaint because the patents at issue are

invalid pursuant to 35 U.S.C. § 102(b).

     II.     This Court should dismiss Plaintiff's complaint because Plaintiff's attempt at

"judge shopping" is an abuse of the judicial process.

## CONCISE STATEMENT OF FACTS

     The following facts are taken from the allegations of the Complaint and the attached

Declaration of Alec Taylor, FGX's chief executive officer (the "Taylor Decl."), filed

contemporaneously herewith.  Solely for the purpose of this motion to dismiss, FGX presumes

the factual allegations of the Complaint (but not the legal conclusions) to be true.

### The Parties

     Plaintiff designs and sells reading glasses, reading glass cases, and displays for

merchandising reading glasses.  Compl. ¶ 6.  FGX also sells reading glasses and reading glass

cases.  Id.  FGX is preparing for an Initial Public Offering, a fact well-known in the business

---

[4]    The Utah action included a Utah state law claim for unfair competition that was not included in the
present complaint.  With this exception, the Complaint's are otherwise substantially identical.

[5]    Chad E. Nydegger of the Plaintiff's firm Workman Nydegger, is on both the Utah and Delaware
pleadings in this case, and appeared on behalf of plaintiff Wavetronix in connection with Wavetronics v.
EIS Electronic Integrated Systems, Case No. 05-00073 (BSJ) (D. Utah), the above-referenced Utah
action.

community and filed a registration statement with the Securities and Exchange Commission on December 20, 2006 to commence such process. Taylor Decl. ¶ 3. Sun Optics alleges that FGX has infringed two design patents for reading glass holders. Compl. ¶ 9.

## History of this Action

The present action was filed on March 7, 2007. One week earlier Plaintiff filed a nearly identical complaint in the United States District Court for the District of Utah ("Utah Compl."), where Sun Optics is incorporated and where it claims is its principal place of business. Compl. ¶ 1. Sun Optics has not plead any connection to Delaware. Except for a Utah state law unfair competition count, the Utah complaint and the Delaware complaint are substantially identical. Compare Utah Compl. ¶¶ 26-29, to Compl. Plaintiff voluntarily dismissed the Utah action seven days after filing, and after it had been assigned to Honorable Bruce S. Jenkins. See Detweiler Aff., Ex. C.

## The Design Patents Asserted

Plaintiff alleges that it owns two patents covering reading glass holders, U.S. Patent Nos. D525,427 and D527,180 (the " '427 patent" and " '180 patent" respectively, and collectively, the "patents-in-suit"). Compl. ¶ 7. The patents-in-suit claim two variations on a single design, as reproduced below:

### DESIGNS ASSERTED




D525, 247            D527,180

Both claim eyeglass cases with an opaque portion, a transparent portion and a <u>domed top</u>.

Plaintiff has several other design patents for eyeglass cases that are <u>not</u> asserted in this case, including, for example, some with flat tops, and some with tapered tops. The designs <u>not</u> asserted reveal the narrow scope of protection afforded by Plaintiff's patent's-at-issue.

### <u>DESIGNS NOT ASSERTED</u>



<u>D525, 246</u>          <u>D527,179</u>          <u>D525,787</u>          <u>D525,788</u>

Eyeglass cases with an opaque portion, a transparent portion and a flat top were known prior to Plaintiff's invention. <u>See, e.g.</u>, U.S. Patent No. 6,929,116 (the "Chao patent"). Figure 1 of the Chao patent shows such an eyeglass case 12' in a display stand:



**Plaintiffs' Claims**

Plaintiff claims that it has created "an entire merchandising program, called the 'Clear Tube program'" based on the patents-in-suit. Compl. ¶ 7. According to Plaintiff, the Clear Tube program has been extremely successful, and, according to Plaintiff, the Clear Tube program induced Rite Aid to give 25% of the space it allocated to FGX's products to Plaintiff. Compl. ¶ 8.

Although not expressly stated, Plaintiff's allegations presuppose that <u>only</u> the designs for the patents-in-suit, and not its other designs, are to be credited with Plaintiff's purported success. Plaintiff's failure to expressly allege this fact results from the fact that such a statement would either be false or would invalidate the patents-in-suit. The Rite Aid arrangement, under which Plaintiff pays FGX to maintain its display on FGX's in-store fixture, has been in place since at least as early as May 20, 2003,[6] more than a year prior to plaintiff's filing for the patents-in-suit. Accordingly, were the statement true, the patents-in-suit would both be invalid under 35 U.S.C. § 102(b) (2002).

## ARGUMENT

**I.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE THE PATENTS AT ISSUE ARE INVALID.**

**(a)    <u>The On-Sale Bar Invalidates Plaintiff's Patents</u>**

Plaintiff has admitted that the patents-in-suit are invalid. Specifically, Plaintiff alleges that the "Clear Tube program" is based upon designs *including* those found in the patents-in-suit. Compl. ¶ 7. Plaintiff also alleges that the "Clear Tube program" so-impressed Rite Aid, that it thereafter awarded 25% of FGX's shelf space to plaintiff. Compl. ¶ 8. Plaintiff neglects to

---

[6]    <u>See</u> Declaration of Jack Flynn ("Flynn Decl.") at ¶ 4.

explain that these events happened more than a year prior to Plaintiff's applications leading to the patents-in-suit. Flynn Decl. ¶ 4.

As a matter of law, if Plaintiff places the subject matter of its patent on sale more than one year prior to applying for a patent thereupon, the patent is invalid. 35 U.S.C. § 102(b) (2002);[7] Scaltech, Inc. v. Retec/Tetra, LLC, 269 F.3d 1321, 1330 (Fed. Cir. 2001) (finding that one embodiment of patent was on sale more than one year before patent application filed, and invalidating patent). Accordingly, viewing each factual allegation made by Plaintiff as true, Plaintiff's patents-in-suit are admittedly invalid, and its Complaint can therefore be dismissed.

The Supreme Court has established a two-prong test for the application of the on-sale bar: "First, the product must be the subject of a commercial offer for sale ... . Second, the invention must be ready for patenting." Pfaff v. Wells Elecs., Inc., 525 U.S. 55, 67 (1998).

Plaintiff's pleadings satisfy the first prong of the on-sale test. Plaintiff explains that it secured the Rite Aid contract with the "Clear Tube merchandising program" which "includes displaying the reading glasses in reading glass cases that are protected by the '427 and '180 patents." Plaintiff's Memorandum In Support Of Its Motion For A Preliminary Injunction ("PI Memo") at 2-3; 13-14. The contract with Rite Aid constituted "a commercial offer for sale" of products covered by the patents-in-suit. Pfaff, 525 U.S. at 67; see Flynn Decl. Because Plaintiff offered to sell the patented inventions to Rite Aid more than a year prior to filing its patent applications, its applications were untimely. Apparently cognizant of this problem, Plaintiff improperly attempted to amend its applications for the patents-in-suit to claim the benefit of an earlier filing date. Detweiler Aff. Ex. D. Plaintiff's attempted amendment,

---

[7] 35 U.S.C. § 102(b) provides that "[a] person shall be entitled to a patent unless ... the invention was ... on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b).

however, was rejected by the United States Patent and Trademark Office (the "Office") id.

leaving Plaintiff's patents untimely filed. See 35 U.S.C. § 102(b).

In order to find the invention on sale, in addition to being the subject of a commercial

offer for sale, the invention must have been ready for patenting. An admission of being ready for

sale is implicit in Plaintiff's argument:  Plaintiff sold Rite Aid on the entirety of the "Clear Tube

merchandising program," which includes "reading glass cases that are protected by the '427 and

'180 patents."  PI Memo at 2.  The patents-in-suit did not have to be reduced to practice to be

patentable; if the inventor had prepared drawings or descriptions of the patents-in-suit that were

"sufficiently specific to enable a person skilled in the art to practice the invention," they were

ready for patenting. See Pfaff, 525 U.S. 55, at 67-68.  The patents are therefore invalid.  See,

e.g., Enzo Biochem, Inc. v. Gen-Probe, Inc., 424 F.3d 1276, 1281 (Fed. Cir. 2005) (finding

patent invalid because contract for sale was signed more than one year before patent application

was filed).  In view of Plaintiff's admissions, the patents are invalid. 35 U.S.C. § 102(b).

**(b)**    **Inequitable Conduct Bars Enforcement of Plaintiff's Patents**

In addition, Plaintiff and its attorneys had a duty of candor to the PTO while its patent

was pending.  37 C.F.R. § 1.56 (2000), Cargill, Inc. v. Canbra Foods, LTD., 476 F.3d 1359, 1363

(Fed. Cir. 2007).  Had the subject of the patent application (or something sufficiently similar that

a reasonable patent examiner would have wanted to consider it in determining patentability) been

on sale more than a year prior to the filing of the patents-in-suit, Plaintiff was duty-bound to

disclose it to the PTO.  See id. (finding inequitable conduct where patentee did not disclose

material information to PTO and invalidating patent); Dippin' Dots, Inc. v. Mosey, 476 F.3d

1337, 1346 (Fed. Cir. 2007) (finding patent invalid for, *inter alia*, inequitable conduct in not

disclosing early commercialization of product embodied by patent).  The Plaintiff's failure to do

so constitutes inequitable conduct, and invalidates the patent. <u>Dippin' Dots, Inc.</u>, 476 F.3d at

1346 .

As noted by 37 C.F.R. § 1.56(a),

> A patent by its very nature is affected with a public interest. …
> Each individual[8] associated with the filing and prosecution of a
> patent application has a <u>duty of candor and good faith</u> in dealing
> with the Office, which includes a duty to disclose to the Office all
> information known to that individual to be material to patentability
> as defined in this section.

37 C.F.R. § 1.56(a).   (Emphasis supplied.)   Failing to disclose material information, or

submitting false material information or statements, coupled with an intent to mislead or deceive

the Office, constitutes inequitable conduct and will render a patent obtained through such

conduct unenforceable. <u>Molins PLC v. Textron, Inc.</u>, 48 F.3d 1172, 1178 (Fed. Cir. 1995).  An

intent to deceive is "usually inferred from the facts and circumstances surrounding the conduct at

issue." <u>Cargill, Inc. v. Canbra Foods, LTD.</u>, 476 F.3d at 1364.

Because a patent cannot issue if the invention was on sale more than a year prior to the

filing date of a patent application, Plaintiff knew (or should have known) that its own

commercial offer for sale of the patented products more than one year prior to filing the

application would be material to a reasonable examiner.  <u>See</u> 37 C.F.R. § 1.56 (2000).

"Information is 'material' when there is a substantial likelihood that a reasonable examiner

would have considered the information important in deciding whether to allow the application to

issue as a patent." <u>Molins</u>, 48 F.3d at 1179.  A reference is not immaterial "simply because the

claims are eventually deemed by an examiner to be patentable thereover." <u>Id.</u>; <u>see also</u> <u>Cargill</u>,

476 F.3d at 1366.

---

[8]   "Individuals associated with the filing or prosecution of a patent application within the meaning of
this section are: (1) Each inventor named in the application; [and] (2) Each attorney or agent who
prepares or prosecutes the application … ." 37 C.F.R. § 1.56(c).

Commercialization of the patents-in-suit prior to their critical date is "clearly" material. Dippin' Dots, Inc. v. Mosey, 476 F.3d 1337, 1345 (Fed. Cir. 2007). There is no question that a "reasonable examiner" would have considered Plaintiff's early sales of products covered by the patents-in-suit important. "At the very least, the existence of such sales prior to the critical date is a matter that 'a reasonable examiner would have considered ... important in deciding whether to allow the ... application.'" Id. (citing Dayco Prods., Inc. v. Total Containment, Inc., 329 F.3d 1358, 1363 (Fed.Cir. 2003)). In the present case, Plaintiff improperly withheld the material information from the Office, and thus, precluded the examiner from considering Plaintiff's own sales.

Intent can be shown by Plaintiff's election to not inform the Office of its prior sales. " 'Smoking gun' evidence is not required in order to establish an intent to deceive ... . Rather, this element of inequitable conduct[ ] must generally be inferred from the facts and circumstances surrounding the applicant's overall conduct." Paragon Podiatry Lab., Inc. v. KLM Labs. Inc., 984 F.2d 1182, 1189 (Fed.Cir. 1993) (finding inequitable conduct due to patentee's, *inter alia*, "failure to disclose to the examiner the pre-critical date commercial sales of the patented device"). "[T]he evidence of a knowing failure to disclose sales that bear all the earmarks of commercialization reasonably supports an inference that the inventor's attorney intended to mislead the [Office]." Dippin' Dots, 476 F.3d at 1347. Indeed, "concealment of sales information can be particularly egregious because, unlike the applicant's failure to disclose, for example, a material patent reference, the examiner has no way of securing the information on his own." Id. Here, where Plaintiff admittedly sold products covered by the patents-in-suit prior to the critical dates, the oversight was material, intentional, and renders the patents-in-suit unenforceable.

Not only did Plaintiff conceal its commercial offer for sale from the Office, but as further evidence of its awareness of wrongdoing, Plaintiff also improperly attempted to amend its applications for the patents-in-suit to claim the benefit of an earlier filing date.  Detweiler Aff. Ex. D.  Although the Office rejected Plaintiff's improper attempt to claim to the benefit of an earlier filing date, the attempt to so amend the patent applications is evidence that Plaintiff was aware of the issue it faced from its own early sales.  The improper attempt to claim the benefit of an earlier filing date lacks the "good faith in dealing with the Office" required by 37 C.F.R. § 1.56(a).  See Nilssen v. Osram Sylvania, Inc., 440 F. Supp. 2d 884, 909 (N.D. Ill. 2006) (finding that patentee's "false claims of priority dates render [patentee's] repeated misconduct so culpable as to render the … patents unenforceable"); see also Li Second Family L.P. v Toshiba Corp., 231 F.3d 1373, 1379 (Fed. Cir. 2000) (holding that "an applicant's misrepresentation that he is entitled to the benefit of an earlier filing date is highly material" and finding inequitable conduct where applicant made affirmative assertions of an effective filing date without informing the PTO that the Examiner and Board of Appeals had rejected the same arguments that had been made earlier with respect to the prosecution of an earlier patent); KangaROOS U.S.A., Inc. v. Caldor, Inc., 778 F.2d 1571, 1576 (Fed. Cir. 1985) ("If the claim for priority met the elements of fraud, or was so grossly negligent as to support an inference of fraud or inequitable conduct, lapse on the part of the examiner does not excuse the  applicant.").

As detailed above, the patents-in-suit are each invalid and unenforceable due to Plaintiff's failure to disclose its own early sales activity, and its improper attempt to claim to the benefit of an earlier filing date.

II.    **PLAINTIFF'S    COMPLAINT    SHOULD    BE    DISMISSED    BECAUSE
PLAINTIFF'S ATTEMPT AT "JUDGE SHOPPING" IS AN ABUSE OF THE
JUDICIAL PROCESS.**

The Supreme Court has made clear that a "primary aspect" of every federal court's
inherent power is "the ability to fashion an appropriate sanction for conduct which abuses the
judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991); see also Eash v.
Riggins Trucking Inc., 757 F.2d 557, 563-64 (3d Cir. 1985). "Judge-shopping clearly constitutes
conduct which abuses the judicial process." Hernandez v. City of El Monte, 138 F.3d 393,
399 (9th Cir. 1998) (internal citations omitted). Plaintiff here has undoubtedly engaged in judge
shopping, and should be sanctioned with dismissal of this case for it.

Judge-shopping "doubtless disrupts the proper functioning of the judicial system and may
be disciplined." Standing Comm. on Discipline of the U.S. Dist. Ct. for the Cent. Dist. of Cal. v.
Yagman, 55 F.3d 1430, 1443 (9th Cir. 1995). These "attempts to manipulate the random case
assignment process are subject to universal condemnation." United States v. Phillips, 59 F.
Supp. 2d 1178, 1180 (D. Utah 1999) (citing United States v. Conforte, 457 F.Supp. 641, 652 (D.
Nev. 1978), aff'd, 624 F.2d 869 (9th Cir. 1980)). Particularly worrisome are judge shopping
cases where plaintiffs "see a storm brewing in the first court, [and] they…try to weigh anchor
and set sail for the hopefully more favorable waters of another district." Kellen Co., Inc. v.
Calphalon Corp., 54 F. Supp. 2d 218, 223 (S.D.N.Y. 1999) (citing Semmes Motors, Inc. v. Ford
Motor Co., 429 F.2d 1197, 1203 (2d Cir. 1970)). This is exactly what plaintiff has done here.

The circumstances surrounding the initiation of the Delaware action lead to only one
conclusion: Plaintiff is judge-shopping. Plaintiff filed nearly the exact same complaint in Utah
on February 28, 2007 and in Delaware on March 7, 2007. See Detweiler Aff., Exs. A, B.
Indeed, the complaints are so similar, they both have the same typographical error in their Prayer
For Relief. See Detweiler Aff., Exs. A, B at "Prayer for Relief" (claiming that FGX infringed

the " '429 patent" as opposed to the " '427" patent discussed in the rest of the complaint). The only substantive difference between the complaints is an additional state law cause of action in the Utah complaint. See Utah Compl. ¶¶ 26-29.

Plaintiff voluntarily dismissed the Utah action promptly after being assigned to the Honorable Bruce S. Jenkins, a United States District Court Judge that just recently ruled against Plaintiff's counsel who was representing the patentee in another unrelated patent infringement case. See Detweiler Aff., Ex. C. It appears obvious that Plaintiff's counsel attempted to shop around because it did not want to be before the same Judge.

The ATLA's Litigating Tort Cases describes Plaintiff's acts – using **the one "free" dismissal permitted by Civil Rule 41(a) and then re-fil[ing] the same case on the hope of getting a "better" judge the second time"** – as a clear example of judge shopping. 1 James R. Pratt, III & Bruce J. McKee, ATLA, Litigating Tort Cases § 3:10 (2006) (emphasis added). Judge shopping is "a threat to the orderly administration of justice." In re BellSouth Corp., 334 F.3d 941, 959 (11th Cir. 2003). Moreover, it is recognized by "[e]very court considering" it as a menace to the integrity of the judicial system. Id. Plaintiff's "filing and withdrawing of claims for mysterious tactical reasons smacks of harassment, imposes additional costs on defendants, and raises suspicions of narrow-gauge judge shopping." Ruth v. Purdue Pharma Co., 225 F.R.D. 434, 435 (S.D.N.Y. 2004). The Southern District of Florida in Disability Advocates and Counseling Group, Inc. v. Betancourt, 379 F. Supp. 2d 1343, 1366 (S.D. Fl. 2005) condemned the practice as one that "seriously interfere[s] with the orderly administration of justice," holding that it "cannot be countenanced." In that case, the Court dismissed the action with prejudice because plaintiffs had re-filed a nearly "identical complaint" that had been previously been dismissed for lack of standing without notifying the court. Id. at 1350. Allowing such

transparent attempts to judge-shop, the Court noted, would "bring 'the judicial system itself into disrepute' and 'would permit unscrupulous litigants and lawyers to thwart our system of judicial administration.'" Id. at 1363 (citing McCuin v. Texas Power & Light Co., 714 F.2d 1255, 1265 (5th Cir. 1983)).

Another episode of judge shopping in the District of Oregon also resulted in dismissal of the complaint. Zografos v. Qwest Communications Corp., 225 F. Supp. 2d 1217 (D. Ore. 2002). The litigation began in the Northern District of Illinois, where the parties were five months into a settlement approval process when they abruptly aborted the process and started over before the District Court in Oregon. Id. at 1221. The settlement process had been slowed down by objecting intervenors, and the Illinois Judge had "expressed concern about giving [it] quick approval." Id. at 1223. Finding "clear evidence of judge-shopping," the Court dismissed the complaint. Id. The settling parties, just like plaintiff, "wanted to find a new jurisdiction" with a judge who might be more sympathetic to their claims. Unlike in Zografos, however, Sun Optics did not have to wait five months to test the water in Utah – its lawyers had, just weeks before, lost a patent case in front of the same Judge assigned to this case. One can only conclude that rather than face him again, they dismissed the case and ran to Delaware.

In Smith v. Mt. Sinai Hospital, No. 84 Civ. 9111-CSH, 1985 WL 561, (S.D.N.Y. Apr. 22, 1985), aff'd, 857 F.2d 1461 (2d Cir. 1987), the plaintiff moved to voluntarily dismiss the complaint and later re-filed the same complaint. The defendants alerted the Court to this fact, and the Court found that the defendants' allegations "at the very least raise the appearance of 'judge-shopping.'" Id. at *2. Pursuant to its local rules, the Court transferred the action back to the original judge.

Judge shopping can result in other harsh sanctions as well. For instance, in In re Fieger No. 97-1359, 1999 WL 717991 (6th Cir. Sept. 10, 1999), plaintiffs' attorney was sanctioned and reprimanded by a three-judge panel for judge shopping. In that case, to ensure assignment to his judge of preference, plaintiff filed thirteen duplicate complaints in the same district and then dismissed all but one of them. Id. The Sixth Circuit upheld the reprimand, finding that Fieger had "circumvented the random assignment rule," and thus "violated the [local] rules, as well as his duties as an officer of the court." Id., 1999 WL 717991, at *3.

The culmination of these cases, from various jurisdictions with similar factual circumstances as this case, that a court faced with judge-shopping has the authority to act to preserve the integrity and control of its docket. See Disability Advocates and Counseling Group, Inc., 379 F. Supp. 2d at 1363.

The timing of Plaintiff's actions lead to the inescapable conclusion that it is engaging in judge-shopping.[9] As shown above, case law supports the proposition that a district court has the inherent power to dismiss an action for judge-shopping. "District courts have inherent power to control their dockets and may impose sanctions, including dismissal, in the exercise of that discretion." Oliva v. Sullivan, 958 F.2d 272, 273 (9th Cir. 1992); see also Chambers, 501 U.S. at 44-45 (district courts have "the ability to fashion an appropriate sanction for conduct which

---

[9]    Significantly, Plaintiff notified FGX that it filed the Utah complaint soon after it was filed. However, it did not inform FGX that it had dismissed that matter and re-filed the matter in Delaware. Taylor Decl. ¶ 4. In addition, likely because of FGX's plan for going public, Plaintiff has garnered press to publicize the matter and cause FGX business embarrassment. Plaintiff's publicity of this matter, and failure to inform FGX about the Delaware action, FGX was confronted with phone calls from reporters inquiring about a Delaware action of which FGX was unaware. Id. It is unusual for, e.g., Bloomberg News and other business news outlets to publicize the filing of a patent infringement case, particularly where the subject matter is as mundane as eyeglass holders and the litigants are not well known corporations.. Taylor Decl. ¶ 5. Defendant suspects the Plaintiff tipped the business news media about the filing of the Complaint in hopes that the attendant publicity would cast defendant in a bad light and result in problems with defendant proceeding with its initial public stock offering and FGX reserves all rights, remedies and claims it may have against the Plaintiff as a result of its Complaint. Taylor Decl. ¶ 6.

abuses the judicial process"). Judge-shopping clearly constitutes "conduct which abuses the judicial process."

In view of Plaintiff's own admissions concerning the invalidity of its patent, as well as Plaintiff's improper judge-shopping and other inequitable conduct, FGX requests that this Court exercise its inherent power and dismiss Plaintiff's Complaint with prejudice.

## CONCLUSION

For all of the foregoing reasons, defendant FGX International, Inc. respectfully requests that the Court (i) grant its motion to dismiss the Complaint, and (ii) grant such other and further relief as the Court may deem just and proper.

**GREENBERG TRAURIG, LLP**

Donald J. Detweiler (I.D. #3087)
Sandra G. M. Selzer (I.D. #4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
302-661-7000
*detweilerd@gtlaw.com*
*selzers@gtlaw.com*

*Attorneys for FGX International, Inc.*

DATE: April 4, 2007