IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SUN OPTICS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-137-SLR |
| | ) | |
| FGX INTERNATIONAL INC., | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION**

**GREENBERG TRAURIG, LLP**
Donald J. Detweiler (I.D. #3087)
Sandra G. M. Selzer (I.D. # 4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
302-661-7000
*detweilerd@gtlaw.com*
*selzers@gtlaw.com*

*Attorneys for Defendant, FGX International, Inc.*

Dated: Wilmington, Delaware
        April 5, 2007

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 1

PRELIMINARY STATEMENT ................................................................................. 1

SUMMARY OF ARGUMENT .................................................................................. 1

CONCISE STATEMENT OF FACTS ......................................................................... 2

ARGUMENT .......................................................................................................... 6

   A.   Preliminary Injunction Is A Drastic And Extraordinary Remedy. ...................... 6

   B.   Plaintiff Has Failed To Demonstrate, And Cannot Demonstrate,
       That It Is Reasonably Likely To Succeed On The Merits. ................................. 8

       1.   The On-Sale Bar Invalidates Plaintiff's Patents .................................... 8

       2.   Inequitable Conduct Bars Enforcement of Plaintiff's Patents ..................... 10

       3.   Plaintiff Is Unlikely To Prevail On The Merits Of Its Infringement Case ................. 14

          a.   To Determine Infringement, The Court Can Only Consider The
              Patents-At-Issue And The Accused Device; It Is Clear Error To Consider
              Plaintiff's Commercial Design ..................................................... 14

          b.   An Ordinary Purchaser Would Not Be Induced To Purchase FGX's
              Eyeglass Case Supposing It To Be Plaintiff's Patented Design ................. 15

          c.   FGX's Eyeglass Case Does Not Have The Points Of Novelty Required To Infringe
              Plaintiff's Design Patent ............................................................ 19

   C.   Plaintiff Has Failed To Demonstrate, And Cannot Demonstrate, Irreparable Harm. ........ 21

       1.   There Is No Presumption Of Irreparable Harm ..................................... 21

       2.   Plaintiff Has Not Shown Irreparable Harm ......................................... 22

       3.   Plaintiff Faces No Harm Due To FGX's Sales Strategy .......................... 23

   D.   Plaintiff Has Failed To Demonstrate, And Cannot Demonstrate,
       That The Balance Of Hardships Tip In Its Favor. ......................................... 23

   E.   Plaintiff Has Failed To Demonstrate, And Cannot Demonstrate,
       That The Public Interest Weighs In Favor Of Such Extraordinary Relief. ................ 24

CONCLUSION ..................................................................................................... 25

**Federal Cases**

Abbott Labs. v. Andrx Pharms.,
  452 F.3d 1331 (Fed. Cir. 2006) .................................................................................7, 10

Amazon.com, Inc. v. Barnesandnobel.com, Inc.,
  239 F.3d 1343 (Fed. Cir. 2001) ...................................................................................7

Amoco Production Co. v. Gambell,
  480 U.S. 531 (1987)......................................................................................................6

Anton/Bauer, Inc. v. PAG Ltd.,
  329 F.3d 1343 (Fed. Cir. 2003) ...................................................................................6

Arthrex Inc. v. dj Orthopedics, LLC,
  No. 02-67, 2002 WL 818062 (D. Del. April 30, 2002) .............................................22

Berry Sterling Corp. v. Pescor Plastics, Inc.,
  122 F.3d 1452 (Fed. Cir. 1997) .................................................................................21

Cargill, Inc. v. Canbra Foods, LTD.,
  476 F.3d 1359 (Fed. Cir. 2007) ...........................................................................10, 11

Contessa Food Prods. Inc. v. ConAgra Inc.,
  282 F.3d 1370 (Fed. Cir. 2002) ...........................................................................14, 19

Dayco Prods., Inc. v. Total Containment, Inc.,
  329 F.3d 1358 (Fed.Cir. 2003) ..................................................................................11

Dippin' Dots, Inc. v. Mosey,
  476 F.3d 1337 (Fed. Cir. 2007) ..................................................................................11

eBay Inc. v. MercExchange, LLC,
  ___ U.S. ___, 126 S. Ct. 1837 (May 15, 2006) .....................................................6, 22

Eli Lilly v. Am. Cyanamid Co.,
  82 F.3d 1568 (Fed. Cir. 1996) .....................................................................................6

Elmer v. ICC Fabricating, Inc.,
  67 F.3d 1571 (Fed. Cir. 1995) ....................................................................................15

Enzo Biochem, Inc. v. Gen-Probe, Inc.,
  424 F.3d 1276 (Fed. Cir. 2005) ....................................................................................9

Gorham Co. v. White,
  81 U.S. 511 (1872)......................................................................................................14

Hernandez v. City of El Monte,
   138 F.3d 393 (9th Cir. 1998). ................................................................................25

HG Techs., LLC v. St. John Co., Inc.,
   469 F.3d 1361 (Fed. Cir. 2006) ..........................................................................21

Illinois Tool Works, Inc. v. Grip-Pak, Inc.,
   906 F.2d 679 (Fed. Cir. 1990). ...........................................................................23

In re Mann,
   861 F.2d 1581 (Fed. Cir. 1988) ..........................................................................14

Intel Corp. v. ULSI Sys. Tech., Inc.,
   995 F.2d 1566 (Fed. Cir. 1993) ............................................................................6

Intel Corp. v. USLI Sys. Technology, Inc.,
   995 F.2d 1556 (Fed. Cir.), cert. denied, 114 S. Ct. 923 (1994). ......................25

KangaROOS U.S.A., Inc. v. Caldor, Inc.,
   778 F.2d 1571 (Fed. Cir. 1985) ..........................................................................12

L.A. Gear, Inc. v. Thom McAn Shoe Co.,
   988 F.2d 1117 (Fed. Cir. 1993) ..........................................................................21

Lawman Armor Corp. v. Winner International, LLC.,
   437 F.3d 1383 (Fed. Cir. Feb. 22, 2006) .....................................................14, 20

Li Second Family L.P. v Toshiba Corp.,
   231 F.3d 1373 (Fed. Cir. 2000) ..........................................................................12

Litton Sys., Inc. v. Whirlpool Corp.,
   728 F.2d 1423 (Fed. Cir. 1984) .....................................................................14, 19

Molins PLC v. Textron, Inc.,
   48 F.3d 1172 (Fed. Cir. 1995) .................................................................10, 11, 21

MX, Inc. v. LendingTree,
   No. 03-1067, 2007 WL 62697 (D. Del. Jan. 10, 2007). ....................................22

Nilssen v. Osram Sylvania, Inc.,
   440 F. Supp. 2d 884 (N.D. Ill. 2006) .................................................................12

Nutrition 21 v. United States,
   930 F.2d 867 (Fed. Cir. 1991) .........................................................................6, 22

Paragon Podiatry Lab., Inc. v. KLM Labs. Inc.,
   984 F.2d 1182 (Fed.Cir. 1993) ..............................................................................11, 12

Pfaff v. Wells Elecs., Inc.,
   525 U.S. 55 (1998)...............................................................................................9

Polymer Techs., Inc. v. Bridwell,
   103 F.3d 970 (Fed. Cir. 1996) ..............................................................................6

Purdue Pharma L.P. v. Boehringer Ingelheim GmbH,
   237 F.3d 1359 (Fed. Cir. 2001) .............................................................................7

Sun Hill Indus., Inc. v. Easter Unlimited,
   48 F.3d 1193 (Fed. Cir. 1995) ..........................................................................14, 19

**Federal Statutes**

35 U.S.C. § 102(b) (2002) ...................................................................................8, 9, 10, 25

**Federal Regulations**

37 C.F.R. § 1.56..................................................................................................10

37 C.F.R. § 1.56(a)...............................................................................................10, 12

37 C.F.R. § 1.56(c)................................................................................................10

## NATURE AND STAGE OF THE PROCEEDINGS

Defendant FGX International, Inc. ("FGX"), by and through its undersigned counsel, Greenberg Traurig, LLP, respectfully submits this memorandum of law in opposition to plaintiff, Sun Optics, Inc.'s ("Plaintiff" or "Sun Optics") motion for a preliminary injunction. On April 4, 2007, FGX filed a Motion to Dismiss in the above-captioned action. (D.I. 12).

## PRELIMINARY STATEMENT

To prevail on a motion for preliminary injunction, the moving party bears a heavy burden. In this case, as discussed in detail below, Plaintiff has failed to meet its burden, and indeed, fails to establish in its favor any of the several relevant factors that are necessary before it would be entitled to the extraordinary remedy it seeks. The facts proffered by Plaintiff in support of its application for this extraordinary relief reveal that Plaintiff offered the asserted patents for sale more than one year prior to applying for the patent, making the patents invalid. Although the on-sale facts were admitted in this suit, the Plaintiff improperly withheld them from the patent office, stripping the office of its ability to properly examine the patent; thus, no presumption of validity applies. Even if the Plaintiff's asserted patents were valid (which they are not) the Plaintiff has not made a showing that they are infringed, nor that they face harm, much less irreparable harm, nor has it shown that the balance of hardships or public interest favor the issuance of the injunction. Accordingly, Plaintiff's application for preliminary injunction must be denied.

## SUMMARY OF ARGUMENT

This Court should deny Plaintiff's motion for a preliminary injunction because Plaintiff fails to demonstrate, and cannot demonstrate, any of the following four factors used to decide preliminary injunctions:

I.    Plaintiff has failed to demonstrate, and cannot demonstrate, that it is reasonably likely to succeed on the merits because: (a) the patents at issue are invalid; (b) Plaintiff obtained its patents through inequitable conduct; and (c) Plaintiff cannot show that FGX has infringed its patents.

II.    Plaintiff has failed to demonstrate, and cannot demonstrate, irreparable harm.

III.    Plaintiff has failed to demonstrate, and cannot demonstrate, that the balance of hardships tip in its favor.

IV.    Plaintiff has failed to demonstrate, and cannot demonstrate, that the public interest weighs in favor of such extraordinary relief.

## CONCISE STATEMENT OF FACTS

### The Parties

Plaintiff designs and sells reading glasses, reading glass cases, and displays for merchandising reading glasses. Plaintiff's Memorandum In Support Of Its Motion For A Preliminary Injunction ("PI Memo") at 2. Plaintiff is incorporated in Utah, and claims its principal place of business as Salt Lake City. Complaint For Patent Infringement ("Compl." or "Complaint") ¶ 1.[1] Plaintiff has plead no connection to Delaware.

Defendant FGX is a Delaware corporation, headquartered in Smithfield, Rhode Island. FGX also sells reading glasses and reading glass cases. The reading glass cases at-issue in this case are sold by FGX almost exclusively to doctor's offices. Id. at 2; see also Declaration of Alec Taylor ¶ 8 ("Taylor Decl.").[2] The timing of the case is suspect because, as was announced

---

[1]    A true and correct copy of Plaintiff's Complaint for Patent Infringement, dated March 7, 2007 (the "Compl.") is attached as Exhibit A to the Affirmation of Donald J. Detweiler ("Detweiler Aff."), filed in the above-captioned action on April 4, 2007. (D.I. 16).

[2]    A copy of the Taylor Decl., filed in the above-captioned action on April 4, 2007, can be found at D.I. 14.

to the public in December, 2006, FGX is preparing for an initial public offering.[3]  Taylor Decl. ¶ 3.[4]

## History of this Action

The above-captioned action was filed on March 7, 2007.  One week prior to the initiation of this action, Plaintiff had filed a nearly identical complaint in the United States District Court for the District of Utah.  Plaintiff voluntarily dismissed the Utah action seven days after filing. See Detweiler Aff., Ex. C.  As discussed in detail in FGX's Motion to Dismiss filed in this case on April 4, 2007 (D.I. No. 12), Plaintiff's dismissal of the Utah complaint followed the assignment of the Utah action to the Honorable Bruce S. Jenkins, who, FGX understands, recently ruled against Plaintiff's counsel in an unrelated patent infringement case.  See Detweiler Aff. Ex. C.

## The Patents

In this action, Plaintiff asserts two design patents covering reading glass holders: U.S. Patent Nos. D525,427 and D527,180 (the " '427 patent" and " '180 patent" respectively, and collectively, the "Patents-in-Suit").  PI Memo at 1; Compl., Exs. A, B.  The application for the

---

[3]      Defendant in this action, FGX is the principal operating company of FGX International Holdings Limited, the latter being the entity that is offering its shares to the public.

[4]      Nearly immediately after the Complaint and PI Memo in this action were filed, FGX started receiving phone calls from business reporters at major newspapers. Taylor Decl. ¶ 4.  It appears Plaintiff has attempted to garner press attention to this case, as it would otherwise be unusual for major business news outlets to publicize the filing of a design patent infringement case, particularly where the subject matter is as mundane as eyeglass holders. Taylor Decl. ¶¶ 5, 6.  It seems that Plaintiff wanted as many of FGX's potential investors to know about the suit as possible.  The press inquiries were directed to this Delaware action, of which FGX was unaware. Taylor Decl. ¶ 4.  Significantly, Plaintiff notified FGX that it filed the Utah complaint soon after it was filed.  However, it did not inform FGX that it had dismissed that matter and re-filed the matter in Delaware. Taylor Decl. ¶ 4.  It is commonly accepted in the business community that a pending lawsuit can adversely affect a company's opportunity to go public, and for this reason pre-IPO companies have a powerful incentive to settle even unmeritorious lawsuits. Taylor Decl. ¶ 7.

'427 patent was filed on May 20, 2004 and the '180 patent on January 17, 2005. Compl., Exs. A,

B. The Patents-in-Suit claim two variations on a single design, as reproduced below:

### DESIGNS ASSERTED

    

<u>D525, 427</u>          <u>D527,180</u>

Both claim eyeglass cases with an opaque portion, a transparent portion, a band across the

middle and a <u>domed top</u>.

Plaintiff has several other design patents for eyeglass cases that are <u>not</u> asserted in this

case, including, for example, some with flat tops, and some with tapered tops. The designs <u>not</u>

asserted reveal the narrow scope of protection afforded by Plaintiff's patents-at-issue.

### DESIGNS NOT ASSERTED

              

<u>D525, 246</u>          <u>D527,179</u>          <u>D525,787</u>          <u>D525,788</u>

Eyeglass cases with an opaque portion, a transparent portion and a flat top were known prior to Plaintiff's invention. See, e.g., U.S. Patent No. 6,929,116 (the "Chao patent"). Figure 1 of the Chao patent shows such an eyeglass case 12' in a display stand:



## Plaintiff's Claims

Plaintiff claims that FGX has infringed its two design patents for reading glass holders, and seeks to preliminarily enjoin FGX from making, using, or selling FGX's "Private Eyes" reading glasses pending conclusion of this litigation. See PI Memo at 1.

Plaintiff purports to sell products covered by the Patents-in-Suit under the "Clear Tube merchandising program." PI Memo at 2. Moreover, Plaintiff claims that Rite Aid has an exclusive contract with FGX that only allows Rite Aid to sell competing products if they are unique. Id. at 3. Plaintiff further asserts that it "was able to obtain a contract with the Rite Aid national chain of stores to carry [plaintiff]'s Clear Tube products, despite Rite Aid's prior contract to carry [FGX's] products because [FGX] did not offer a Clear Tube program." Id. at 13. As confirmed by Rite Aid, Plaintiff's contract with Rite Aid began before May 20, 2003,

more than a year prior to Plaintiff's filing for the Patents-in-Suit.  Declaration of Donna Schuler[5] ("Schuler Decl.") ¶ 4.  By its own admissions, Plaintiff's Patents-in-Suit are invalid.[6]

## ARGUMENT

**A.  Preliminary Injunction Is A Drastic And Extraordinary Remedy.**

The Federal Circuit Court of Appeals has repeatedly cautioned that a "preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted." Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993); Eli Lilly v. Am. Cyanamid Co., 82 F.3d 1568 (Fed. Cir. 1996); Nutrition 21 v. United States, 930 F.2d 867, 869 (Fed. Cir. 1991). The party seeking a preliminary injunction bears a heavy burden of showing:  (1) a reasonable likelihood of succeeding on the merits; (2) immediate irreparable harm if the injunction is not granted; (3) the balance of hardships tips in its favor; and (4) the injunction will have a favorable impact on the public interest.  Intel, 995 F.2d at 1570.  At "the very least," the first two factors must be established in every case.  Anton/Bauer, Inc. v. PAG Ltd., 329 F.3d 1343, 1348 (Fed. Cir. 2003).  The Supreme Court recently cautioned that in the patent context, even a showing of validity and infringement does not entitle the patent holder to an injunction.  eBay Inc. v. MercExchange, LLC, ___ U.S. ___, 126 S. Ct. 1837, 1841 (May 15, 2006); c.f. Amoco Production Co. v. Gambell, 480 U.S. 531, 542 (1987) (holding that the "bases for injunctive relief are irreparable injury and inadequacy of legal remedies" and that the violation of a statute does not, unless specifically authorized by the statute, remove the court's requirement to apply principles of equity).

---

[5]       A copy of the Schuler Decl. was filed contemporaneously herewith.

[6]       As discussed in detail below, "[a] person shall be entitled to a patent unless-- ... (b) the invention was ... on sale in this country, more than one year prior to the date of the application for patent in the United States ... ."  35 U.S.C. § 102(b).

We focus particularly on Plaintiff's failure to establish the first factor— likelihood of success on the merits.   In this context, Plaintiff must prove that: (1) it will likely prove infringement and (2) any challenge to the validity and enforceability of its patent "lacks substantial merit." Abbott Labs. v. Andrx Pharms., 452 F.3d 1331, 1335 (Fed. Cir. 2006) (noting that defendant "need not make out a case of actual invalidity," only raise "a substantial question as to invalidity"); Purdue Pharma L.P. v. Boehringer Ingelheim GmbH, 237 F.3d 1359, 1363 (Fed. Cir. 2001).[7]   Plaintiff cannot rely on a presumption of patent validity to carry its burden on validity.  Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001).

## B.   Plaintiff Has Failed To Demonstrate, And Cannot Demonstrate, That It Is Reasonably Likely To Succeed On The Merits.

Plaintiff faces three insurmountable obstacles to establishing a likelihood of success on the merits.  First, the Patents-in-Suit are invalid because Plaintiff's products were on sale more than one year before it applied for the patents.  Second, Plaintiff inequitably withheld the on-sale information from the patent examiner making the patent unenforceable.  Finally, Plaintiff cannot establish a likelihood of success on infringement because the points of novelty presented by the Patents-in-Suit are materially different than the design in FGX's products.

### 1.   The On-Sale Bar Invalidates Plaintiff's Patents

Plaintiff bases its application for a preliminary injunction upon an alleged threat of encroachment upon Plaintiff's "Clear Tube" merchandising program, at the heart of which

---

[7]      Sun Optics claims, without citing any authority, that FGX bears the burden of showing that the claims of the '427 and '180 patents are "invalid by *clear and convincing evidence*."  PI Memo at 5 (emphasis in original).  This proposition was directly rebutted by the Federal Circuit in Abbott Labs. v. Andrx Pharms., Inc., where the Court held that "[t]he showing of a substantial question as to invalidity thus requires less proof than the clear and convincing showing necessary to establish invalidity itself." 452 F.3d 1331, 1335 (Fed. Cir. 2006).

ostensibly lies the designs forming the subject matter of the Patents-in-Suit.[8]  Plaintiff touts Rite

Aid's award to it of "shelf space from [FGX]."  Plaintiff obtained the purported award (under

which Plaintiff pays FGX for space on FGX's in-store fixture) prior to May 20, 2003,

see Schuler Decl. ¶ 4, more than a year prior to the date that Plaintiff applied for the Patents-in-

Suit.[9]

    As such, Plaintiff's "Clear Tube merchandising program," put products covered by the

'427 and '180 patents on-sale more than one year before either patent application was filed.

Plaintiff's patents are therefore invalid due to the on-sale bar of 35 U.S.C. § 102(b) (2002).[10]

    The Supreme Court has established a two-prong test for the application of the on-sale bar:

"First, the product must be the subject of a commercial offer for sale ... .  Second, the invention

must be ready for patenting." Pfaff v. Wells Elecs., Inc., 525 U.S. 55, 67 (1998).

    Plaintiff's pleadings satisfy the first prong of the on-sale test.  Plaintiff explains that it

secured the Rite Aid contract with the "Clear Tube merchandising program" which "includes

displaying the reading glasses in reading glass cases that are protected by the '427 and '180

patents."  PI Memo at 2-3; 13-14.  The contract with Rite Aid constituted "a commercial offer

for sale" of products covered by the Patents-in-Suit.  Pfaff, 525 U.S. at 67; see Schuler Decl. ¶ 4.

Because Plaintiff offered to sell the patented inventions to Rite Aid more than a year prior to

filing its patent applications, Plaintiff's applications were untimely.  Apparently cognizant of this

problem, Plaintiff improperly attempted to amend its applications for the Patents-in-Suit to claim

---

[8]    Plaintiff explains that the "Clear Tube" merchandising program "includes displaying the reading glasses in reading glass cases that are protected by the '427 and '180 patents." PI Memo at 2.

[9]    Plaintiff applied for its '427 patent on May 20, 2004, see Exhibit A to the Complaint, attached to the Detweiler Aff., Ex. A, and the '180 patent on January 17, 2005, see Exhibit C to the Complaint.

[10]   35 U.S.C. § 102(b) provides that "[a] person shall be entitled to a patent unless ... the invention was ... on sale in this country, more than one year prior to the date of the application for patent in the United States."

the benefit of an earlier filing date. (Detweiler Aff., Ex. D). Plaintiff's attempted amendment, however, was rejected by the United States Patent and Trademark Office (the "Office") (see id.) leaving plaintiff's patents untimely filed. See 35 U.S.C. § 102(b).

In order to find the invention on sale, in addition to being the subject of a commercial offer for sale, the invention must have been ready for patenting. An admission of being ready for sale is implicit in Plaintiff's argument: Plaintiff sold Rite Aid on the entirety of the "Clear Tube merchandising program," which includes "reading glass cases that are protected by the '427 and '180 patents." PI Memo at 2. The Patents-in-Suit did not have to be reduced to practice to be patentable; if the inventor had prepared drawings or descriptions of the patents-in-suit that were "sufficiently specific to enable a person skilled in the art to practice the invention," they were ready for patenting. Pfaff, 525 U.S. 55, at 67-68. The patents are therefore invalid. See, e.g., Enzo Biochem, Inc. v. Gen-Probe, Inc., 424 F.3d 1276, 1281 (Fed. Cir. 2005) (finding patent invalid because contract for sale was signed more than one year before patent application was filed). In view of Plaintiff's admissions, the patents are invalid. 35 U.S.C. § 102(b). At a minimum, FGX has raised a substantial question as to the validity of the Patents-in-Suit, and a preliminary injunction cannot issue. Abbott Labs. v. Andrx Pharms., 452 F.3d 1331, 1335 (Fed. Cir. 2006) (opponent of preliminary injunction only need raise a "substantial question" of invalidity to prevent injunction from issuing).

2.    Inequitable Conduct Bars Enforcement of Plaintiff's Patents

As noted in 37 C.F.R. § 1.56(c),

> A patent by its very nature is affected with a public interest. ...
> Each individual[11] associated with the filing and prosecution of a

---

[11]    "Individuals associated with the filing or prosecution of a patent application within the meaning of this section are: (1) Each inventor named in the application; [and] (2) Each attorney or agent who prepares or prosecutes the application ... ." 37 C.F.R. § 1.56(c) (2000).

> patent application has a <u>duty of candor and good faith</u> in dealing
> with the Office, which includes a duty to disclose to the Office all
> information known to that individual to be material to patentability
> as defined in this section.

37 C.F.R. § 1.56(a). (Emphasis supplied.) Failing to disclose material information, or submitting false material information or statements, coupled with an intent to mislead or deceive the Office, constitutes inequitable conduct and will render a patent obtained through such conduct unenforceable. <u>Molins PLC v. Textron, Inc.</u>, 48 F.3d 1172, 1178 (Fed. Cir. 1995). An intent to deceive is "usually inferred from the facts and circumstances surrounding the conduct at issue." <u>Cargill, Inc. v. Canbra Foods, LTD.</u>, 476 F.3d 1359, 1364 (Fed. Cir. 2007).

Because a patent cannot issue if the invention was on sale more than a year prior to the filing date of a patent application, Plaintiff knew (or should have known) that its own commercial offer for sale of the patented products more than one year prior to filing the application would be material to a reasonable examiner. <u>See</u> 37 C.F.R. § 1.56 (2000). "Information is 'material' when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent." <u>Molins</u>, 48 F.3d at 1179. A reference is not immaterial "simply because the claims are eventually deemed by an examiner to be patentable thereover." <u>Id.</u>; <u>see also</u> <u>Cargill</u>, 476 F.3d at 1366.

Commercialization of the Patents-in-Suit prior to their critical date is "clearly" material. <u>Dippin' Dots, Inc. v. Mosey</u>, 476 F.3d 1337, 1345 (Fed. Cir. 2007). There is no question that a "reasonable examiner" would have considered Plaintiff's early sales of products covered by the Patents-in-Suit important. "At the very least, the existence of such sales prior to the critical date is a matter that 'a reasonable examiner would have considered ... important in deciding whether to allow the ... application.'" <u>Id.</u> (citing <u>Dayco Prods., Inc. v. Total Containment, Inc.</u>, 329 F.3d

1358, 1363 (Fed.Cir. 2003)).  In the present case, Plaintiff improperly withheld the material information from the Office, and thus, precluded the examiner from considering Plaintiff's own sales.

Intent is demonstrated Plaintiff's election to not inform the Office of its prior sales. " 'Smoking gun' evidence is not required in order to establish an intent to deceive . . . . Rather, this element of inequitable conduct, must generally be inferred from the facts and circumstances surrounding the applicant's overall conduct." Paragon Podiatry Lab., Inc. v. KLM Labs. Inc., 984 F.2d 1182, 1189-93 (Fed.Cir. 1993) (finding inequitable conduct due to patentee's, *inter alia*, "failure to disclose to the examiner the pre-critical date commercial sales of the patented device").  "[T]he evidence of a knowing failure to disclose sales that bear all the earmarks of commercialization reasonably supports an inference that the inventor's attorney intended to mislead the [Office]." Dippin' Dots at 1346.  Indeed, "concealment of sales information can be particularly egregious because, unlike the applicant's failure to disclose, for example, a material patent reference, the examiner has no way of securing the information on his own." Id.  Here, where Plaintiff admittedly sold products covered by the Patents-in-Suit prior to the critical dates, the oversight was material, intentional, and renders the Patents-in-Suit unenforceable, and thus, the preliminary injunction should be denied.

Not only did Plaintiff conceal its commercial offer for sale from the Office, but as further evidence of its awareness of wrongdoing, Plaintiff also improperly attempted to amend its applications for the Patents-in-Suit to claim the benefit of an earlier filing date.  (Detweiler Aff., Ex. D).  Although the Office rejected Plaintiff's improper attempt to claim to the benefit of an earlier filing date, the attempt to so amend the patent applications is evidence that plaintiff was aware of the issue it faced from its own early sales.  The improper attempt to claim the benefit of

an earlier filing date lacks the "good faith in dealing with the Office" required by 37 C.F.R. § 1.56(a). <u>See</u> <u>Nilssen v. Osram Sylvania, Inc.</u>, 440 F. Supp. 2d 884, 909 (N.D. Ill. 2006) (finding that patentee's "false claims of priority dates render [patentee's] repeated misconduct so culpable as to render the ... patents unenforceable"); <u>see also</u> <u>Li Second Family L.P. v Toshiba Corp.</u>, 231 F.3d 1373, 1380 (Fed. Cir. 2000) (holding that "an applicant's misrepresentation that he is entitled to the benefit of an earlier filing date is highly material" and finding inequitable conduct where applicant made affirmative assertions of an effective filing date without informing the PTO that the Examiner and Board of Appeals had rejected the same arguments that had been made earlier with respect to the prosecution of an earlier patent); <u>KangaROOS U.S.A., Inc. v. Caldor, Inc.</u>, 778 F.2d 1571, 1576 (Fed. Cir. 1985) ("If the claim for priority met the elements of fraud, or was so grossly negligent as to support an inference of fraud or inequitable conduct, lapse on the part of the examiner does not excuse the applicant.").

The Patents-in-Suit are unenforceable due to Plaintiff's failure to disclose its own early sales activity, and its improper attempt to claim to the benefit of an earlier filing date.

3.    <u>Plaintiff Is Unlikely To Prevail On The Merits Of Its Infringement Case</u>

To show infringement of a design patent, two distinct tests must be satisfied: (1) the "ordinary observer" test, and (2) the "point of novelty" test. <u>Lawman Armor Corp. v. Winner International, LLC.</u>, 437 F.3d 1383, 1384 (Fed. Cir. Feb. 22, 2006); <u>Contessa Food Prods. Inc. v. ConAgra Inc.</u>, 282 F.3d 1370, 1377 (Fed. Cir. 2002). The "ordinary observer" test is set forth in <u>Gorham Co. v. White</u>:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

81 U.S. 511, 528 (1872).

If this test is met, the "point of novelty" test then requires proof that the accused design appropriates the protectable features of the design. <u>Litton Sys., Inc. v. Whirlpool Corp.</u>, 728 F.2d 1423, 1444 (Fed. Cir. 1984) (functional features or features in the prior art cannot be the point of novelty and, if taken, do not constitute infringement) overruled in part on other grounds by <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763 (1992) ; <u>see also</u> <u>Sun Hill Indus., Inc. v. Easter Unlimited</u>, 48 F.3d 1193, 1198 (Fed. Cir. 1995) (functional features cannot be points of novelty). Moreover, "it is legal error to merge the two test by, for example, relying on the claimed overall design as the point of novelty." <u>Contessa Food Prods., Inc.</u>, 282 F.3d at 1377.

      a.      To Determine Infringement, The Court Can Only Consider The Patents-At-Issue And The Accused Device; It Is Clear Error To Consider Plaintiff's Commercial Design

As the Court delves into issues that reveal why Plaintiff cannot prevail on the merits of its infringement claims, the Court must remain cognizant that infringement can <u>only</u> be determined by comparing the accused product to the patent. <u>In re Mann</u>, 861 F.2d 1581, 1582 (Fed. Cir. 1988) ("Design patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings."). In an attempt to confuse the Court, Plaintiff improperly incorporated an alleged commercial product into its papers. They are not relevant for any purpose, and it is improper to consider them. <u>Elmer v. ICC Fabricating, Inc.</u>, 67 F.3d 1571, 1577 (Fed. Cir. 1995); <u>Sun Hill Indus., Inc.</u>, 48 F.3d at 1196 (holding that "trial court committed legal error by relying on unclaimed features of [patentee's commercial embodiment").

      b.      An Ordinary Purchaser Would Not Be Induced To Purchase FGX's Eyeglass Case Supposing It To Be Plaintiff's Patented Design

Plaintiff argues, without any non-pictorial evidence, that FGX's accused designs "are identical to the designs claimed" in the Patents-in-Suit. PI Memo at 10. This is not true. Moreover, Plaintiff has introduced no evidence that a purchaser would suppose one to be the

other.  In any event, in attempting to distinguish its product under the ordinary observer test, Plaintiff argues six purported elements: (1) the cross section, (2) the transparent top, (3) the opaque bottom, (4) a band around the case, (5) a rounded top and (6) a flat bottom.[12]  PI Memo at 10-11.  Comparing the Plaintiff's patent to FGX's products reveals that plaintiff is unlikely to succeed on the merits of its infringement claim.

### 1    FGX's cross sections differs from the patented cross section

Plaintiff falsely argues that its "racetrack" shaped cross section  is identical to FGX's oval  .  Plaintiff's design would lie flat, while FGX's oval can rock.  Moreover, plaintiff's "racetrack" shape is not novel, it was disclosed in the prior art Zhou patent D446,389 (hereinafter the "Zhou patent"):  .

### 2, 3    The transparent top and bottom are not novel.

While both Plaintiff's patent and FGX's accused product have a transparent top and opaque bottom, eyeglass cases, including partially and completely transparent eyeglass cases, have been around long before Plaintiff's purported invention.  For example, a prior art U.S. Patent 4,744,461 to Lapham disclosed an eyeglass case with that has a transparent top and opaque bottom:

---

[12]    Plaintiff argues many of the elements of its invention by trying to show comparison between its purported commercial embodiment and FGX's products, but as discussed above, such a comparison is improper.  FGX will properly compare Plaintiff's patented invention with FGX's products.



Figures in the prior art Chao patent disclose another eyeglass case with a transparent top and opaque bottom:

 

Even Plaintiff's own prior art patent[13] shows a transparent top:



---

[13]    The figure below is Fig. 1 from Plaintiff's U.S. Patent 7,188,739. Plaintiff attempted to claim the benefit of the filing date of the '739 patent for the Patents-in-Suit, but was rejected.

**4      The use of a band where a case opens and closes is not novel.**

Plaintiff next points the Court to a band around its case where the case closes.  This



feature is found, for example, in the Zhao patent:  .  Close inspection of Plaintiff's '739 patent

show above also reveals a band where the case separates:                                                                  .

Even Plaintiff's provisional patent, which is similarly prior art to the Patents-in-Suit – and which

Plaintiff also tried unsuccessfully to claim priority to – shows transparent eyeglass cases with a



"racetrack" shape and a band:

**5, 6     The top of FGX's eyeglass case does not have a rounded top or a flat bottom, and rounded tops and flat bottoms were known.**

Plaintiff falsely argues that Plaintiff's design patent has the identical rounded top as

FGX's products.  Plaintiff's pictures, however, show that this is untrue.  The design patents' case

has a domed top  while FGX's product has a top with softened edges

. FGX's product's top is not domed. Moreover, the bottom of FGX's product has

a softened edge *just like the top* . Plaintiff makes the absurd argument that the

FGX top is "rounded" yet the bottom is "flat."

In any event, rounded tops      and flat bottoms      , are in the prior art.

Plaintiff is unable to meet its burden to show a likelihood of proving that a purchaser

would suppose FGX's product to be Plaintiff's design patent.

>        c.        FGX's Eyeglass Case Does Not Have The Points Of Novelty Required To
>                  Infringe Plaintiff's Design Patent

Even if the Plaintiff were able to meet the "ordinary observer" test, which it cannot, it

still must show that it will also prevail on the "point of novelty" test, which requires proof that

the accused design appropriates the protectable features of the design patent. Litton Sys., Inc. v.

Whirlpool Corp., 728 F.2d 1423, 1444 (Fed. Cir. 1984) (functional features or features in the

prior art cannot be the point of novelty and, if taken, do not constitute infringement); see also

Sun Hill Indus., Inc. v. Easter Unlimited, 48 F.3d 1193, 1198 (Fed. Cir. 1995) (functional

features cannot be points of novelty). Moreover, "it is legal error to merge the two test by, for

example, relying on the claimed overall design as the point of novelty." Contessa Food Prods.,

Inc., 282 F.3d at 1377.

Plaintiff claims five points of novelty for its two patents: 1) a transparent upper portion;

2) an opaque bottom portion; 3) a band in the middle of the case, the band visually separating the

transparent and opaque portions; 4) a cap at the end of the transparent portion of the case; and 5)

a substantially flat end on the opaque portion of the case.  PI Memo at 11.  Even at this early

stage of the case, it is clear that the alleged "points of novel" were previously disclosed:



| | | | | | |
|---|---|---|---|---|---|
| Transparent upper | X | | X | X | X |
| Opaque bottom | X | X | X | | |
| Band | | X | | X | X |
| Domed cap on top | X | | | | |
| Flat end on bottom | | X | X | ? | X |

Because these alleged "points of novelty" have been described in older designs, they do not

constitute points of novelty.  Lawman Armor Corp., 437 F.3d at 1386.  The only arguably novel

part of the patents-in-suit are the domed cap at the transparent end of the case, and, as shown

above, FGX's products' caps are substantially dissimilar from the domed cap claimed in

Plaintiff's design patent:  versus .  See Lawman Armor Corp., 437

F.3d at 1386 ("'New designs frequently involve only relatively small changes in the shape, size,

placement, or color of elements of old designs. It is those changes in and departures from the old

designs that constitute the 'points of novelty' in the patented new design.").

Furthermore, the "band" alleged as a point of novelty is not a point of novelty at all, but

rather a functional feature of the patent.  The band is used to conceal the overlap between the

plastic halves of the eyeglass case where the transparent top portion meets the opaque bottom

portion. It is purely functional, and not a point of novelty. <u>See, e.g.,</u> <u>Sun Hill Indus.</u>, 48 F.3d at 1198; <u>PHG Techs., LLC v. St. John Co., Inc.</u>, 469 F.3d 1361, 1366 (Fed. Cir. 2006) (noting that the "design of a useful article is deemed to be functional when 'the appearance of the claimed design is 'dictated by' the use or purpose of the article") (<u>citing</u> <u>LA. Gear, Inc. v. Thom McAn Shoe Co.</u>, 988 F.2d 1117, 1123 (Fed. Cir. 1993)).

Several other tests exist for determining if an element of a design patent is in fact functional and not ornamental, and they all weigh towards the band serving a functional purpose. These include

> [W]hether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function.

<u>Berry Sterling Corp. v. Pescor Plastics, Inc.</u>, 122 F.3d 1452, 1456 (Fed. Cir. 1997).

The cap at the end of transparent portion of the case remains as the only arguable point of novelty for the patents-in-suit. FGX's products differ from the claims:  versus .

Accordingly, FGX's products do not infringe the Patents-in-Suit because the only arguable point of novelty concerns the cap on the transparent end of the cases, and the caps claimed in the patents-in-suit are plainly different than FGX's. Plaintiff does not have a reasonable likelihood of showing infringement by FGX.

**C.    Plaintiff Has Failed To Demonstrate, And Cannot Demonstrate, Irreparable Harm.**

    1.    There Is No Presumption Of Irreparable Harm

Plaintiff claims that the "law is clear" that a patentee who demonstrates a strong likelihood of success on the merits is "entitled to a presumption of irreparable harm." PI Memo at 12. This is not the current state of the law. Recent Supreme Court precedent shows that the law is the opposite of what Plaintiff argues. eBay Inc. v. MercExchange LLC, ___ U.S. ___, 126 S. Ct. 1837 (May 15, 2006). There simply is no presumption of irreparable harm accorded to a patent holder upon a showing of infringement, either for a permanent or for a preliminary injunction. See id., at 1841 ("the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards"). Plaintiff is attempting to assert the "now-overturned presumption that a patent holder is irreparably harmed upon a finding of infringement." IMX, Inc. v. LendingTree, No. 03-1067, 2007 WL 62697 (D. Del. Jan. 10, 2007).

    2.    Plaintiff Has Not Shown Irreparable Harm

Plaintiff has asserted no grounds for claiming that it will face immediate irreparable harm if a preliminary injunction is not granted. Instead, Plaintiff's argues a speculative concern that it will be unable to "regain market share and customer loyalty" absent a preliminary injunction. PI Memo at 13. These speculative arguments are rejected wholesale: "neither the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction prior to trial." Nutrition 21 v. United States, 930 F.2d 867, 871 (Fed. Cir. 1991). Plaintiff's argument concerning "possible market share loss would apply in every patent case where the patentee practices the invention." Id.; See also Arthrex Inc. v. dj Orthopedics, LLC, No. 02-67, 2002 WL

818062, at *4 (D. Del. April 30, 2002) ("the court finds that loss of market share alone is insufficient to support a finding of irreparable harm").

Furthermore, Plaintiff has not offered "evidence and reasoned analysis" about the inadequacy of monetary damages. Nutrition 21, 930 F.2d at 872. Plaintiff bases its harm argument on the Declaration of Bruce Raile, President and CEO of Sun Optics, who vaguely asserts that "some retailers have refused even to give Sun Optics an appointment to pitch its Clear Tube program." Raile Decl. ¶ 8. Mr. Raile's declaration is insufficient to support a preliminary injunction because alleged loss of sales, drop in price, and reduction in revenue are all easily quantifiable forms of damages and, without more, cannot constitute irreparable harm. Indeed, the courts reject the notion that potential lost sales revenue alone could demonstrate "manifest irreparable harm" because such an approach would require a finding of irreparable harm to every patentee, regardless of the circumstances. Illinois Tool Works, Inc. v. Grip-Pak, Inc., 906 F.2d 679, 683 (Fed. Cir. 1990).

3.    Plaintiff Faces No Harm Due To FGX's Sales Strategy

Finally, Plaintiff faces no damages from FGX's sale of allegedly infringing products. As the Declaration of Alec Taylor makes clear, FGX only sells the allegedly infringing products to doctors' offices, and has no intent of selling these products in Plaintiff's distribution network. Taylor Decl. ¶¶ 8, 10. Furthermore, for many years Plaintiff has paid FGX to maintain the Rite Aid shelf space, and FGX has no desire to change this business relationship. See Taylor Decl. 12; Schuler Decl. ¶ 4. The entire basis for the "competitive edge" Plaintiff allegedly stands to lose in Rite Aid is based on the idea that Plaintiff took shelf space from FGX, and that by infringing, FGX may be able to take it back. This is not true: FGX is not marketing the accused products to Rite Aid. See Taylor Decl. ¶ 12.

Moreover, the unnamed "retailers" that won't now listen to Plaintiff's "pitch" are not a result of FGX's allegedly infringing activities. See PI Memo at 14. Plaintiff faces no harm from FGX's products, let alone irreparable harm.

**D.    Plaintiff Has Failed To Demonstrate, And Cannot Demonstrate, That The Balance Of Hardships Tip In Its Favor.**

Plaintiff's timing makes it clear that this case is merely an attempt to strong-arm a settlement out of FGX prior to FGX's going public. Plaintiff knows that FGX has made preparatory steps for an initial public offering, and is trying to take advantage of FGX's desire to present to investors a company free from any potential liability. FGX believes that Plaintiff has garnered press and informed reporters of the lawsuit in an effort to increase the pressure of this suit. Taylor Decl. ¶ 7.

FGX expects to ship substantially less than $ 1,000,000 worth of the products at-issue in this case in 2007, substantially all of those to doctor's offices. Taylor Decl. ¶ 9. Even if these products were later found to infringe, which FGX is confident they will not, FGX can respond in damages. Moreover, as Plaintiff is not believed to be pursuing the doctor's office market where these goods are being marketed, Taylor Decl. ¶ 11, Plaintiff cannot establish lost profits – and thus, even if it successfully proves infringement (which it will not), Plaintiff will be entitled only to a reasonable royalty. To stop shipment means that FGX will have to sit on inventory, explain issues to investors, and lose reputation with the small but growing market it has established for these goods. Taylor Decl. ¶ 13.

In support of its application, Plaintiff has not provided any evidence of hardship to itself should the injunction be denied. It should not be permitted to add any on reply, especially in light of the fact that Plaintiff's negligible alleged harms can be fully remedied by monetary compensation. PI Memo at 15.

Accordingly, this factor weighs heavily in FGX's favor.

**E.    Plaintiff Has Failed To Demonstrate, And Cannot Demonstrate,
        That The Public Interest Weighs In Favor Of Such Extraordinary Relief.**

Plaintiff's strategy has been plain from the beginning: gaming the system. For example, Plaintiff has: engaged in judge shopping because it didn't like its random assignment; attempted to put improper pressure on FGX, knowing about its initial public offering, and trying to garner press about this lawsuit; failed to disclose its own prior sales to the Office while prosecuting its patent; and falsely attempted to gain the benefit of an earlier filing date.

The equitable power of the Court cannot reward "conduct which abuses the judicial process." Hernandez v. City of El Monte, 138 F.3d 393, 399 (9th Cir. 1998). Public policy favors the exercise of extreme caution in enjoining accused activities without the benefit of a full trial on the merits. See, e.g., Intel Corp. v. USLI Sys. Technology, Inc., 995 F.2d 1556, 1568 (Fed. Cir.), cert. denied, 114 S. Ct. 923 (1994). This is especially true where, as here, the patent is likely invalid due to the on sale bar of 35 U.S.C. § 102(b) (2002). With FGX's strong showings regarding invalidity and non-infringement, the absence of any irreparable harm, the balance of hardships tilting in FGX's favor, and the gamesmanship with which Plaintiff has brought this action, public policy strongly weighs against granting the extraordinary relief sought by Plaintiff.

## CONCLUSION

Plaintiff has failed to meet its burden. Specifically, Plaintiff has failed to demonstrate, and cannot demonstrate, that it is reasonably likely to succeed on the merits where: (a) the patents at issue are invalid; (b) Plaintiff obtained its patents though inequitable conduct; and (c) Plaintiff cannot show that FGX has infringed its patents. Plaintiff has failed to demonstrate, and

cannot demonstrate, irreparable harm.   Plaintiff has failed to demonstrate, and cannot demonstrate that the balance of hardships tip in its favor.   Accordingly, these failings mandate denial of Plaintiff's application for preliminary injunction.

Based on the foregoing, FGX respectfully requests that this Court enter an Order (a) denying Plaintiff's motion for preliminary injunction in its entirety; (b) granting FGX's motion to dismiss; and (c) granting such other and further relief as this Court deems just and proper.

Dated:  April 5, 2007

**GREENBERG TRAURIG, LLP**

Donald J. Detweiler (I.D. #3087)
Sandra G. M. Selzer (I.D. # 4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
302-661-7000
*detweilerd@gtlaw.com*
*selzers@gtlaw.com*

*Attorneys for Defendant FGX International, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SUN OPTICS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-137-SLR |
| | ) | |
| FGX INTERNATIONAL INC., | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I, Sandra G. M. Selzer, being duly sworn according to law, deposes and says that I am employed by Greenberg Traurig, LLP, which is counsel for FGX International, Inc. and hereby certify that on the 5th day of April 2007, I caused copies of the MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION to be served upon the parties listed below in the manned indicated.

*__Via Hand Delivery__*
R. Eric Hutz, Esq.
Connolly Bove Lodge & Hutz, LLP
The Nemours Building
1007 North Orange Street
Wilmington, Delaware 19801

*__Via First Class Mail U.S. Mail__*
Larry R. Laycock
Chad E. Nydegger
Workman Nydegger
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT 84111

Dated: April 5, 2007

**GREENBERG TRAURIG, LLP**

Sandra G. M. Selzer (I.D. # 4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
302-661-7000
*selzers@gtlaw.com*

*Attorneys for FGX International, Inc.*