## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF DELAWARE

SUN OPTICS, INC., a Utah Corporation,     )

              Plaintiff,     )

            v.     )

FGX INTERNATIONAL, INC., a Delaware     )
Corporation,     )

             Defendant.     )

Civil Action No. 1:07cv137-SLR

**PLAINTIFF'S MEMORANDUM IN
SUPPORT OF ITS
MOTION FOR
PRELIMINARY INJUNCTION**

Oral Argument May 18, 2007 9:00 a.m.

Filed April 5, 2007

**CONNOLLY BOVE LODGE & HUTZ LLP**
R. Eric Hutz (#2702)
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Telephone: (302) 658-9141
*Attorneys for Plaintiff*
*Sun Optics, Inc.*

<u>**OF COUNSEL**</u>

**WORKMAN NYDEGGER**
LARRY R. LAYCOCK (*motion to appear pro hac vice pending*)
CHAD E. NYDEGGER (*motion to appear pro hac vice pending*)
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT 84111
Telephone: (801) 533-9800

**DATE:** April 5, 2007

# TABLE OF CONTENTS

**Page**

I.   NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 1

II.  SUMMARY OF ARGUMENT ..................................................................................... 1

III. STATEMENT OF FACTS ........................................................................................... 3

IV.  INTRODUCTION ....................................................................................................... 6

V.   STANDARDS FOR GRANTING A PRELIMINARY INJUNCTION ............................. 7

VI.  ARGUMENT ............................................................................................................... 7

    A.   Sun Optics Is Likely to Prevail on the Merits of Infringement and Validity ......... 7

        1.   Sun Optics is likely to prove infringement of the '739 patent .................... 7

            a)   Legal standards for infringement of utility patents ......................... 7

            b)   The "eyeglass display" language .................................................... 9

            c)   The "support member" and "display member" language .............. 10

            d)   The "eyeglass case" language ...................................................... 11

        2.   The claims of the '739 patent are valid .................................................... 13

    B.   Sun Optics is Suffering Irreparable Harm Because of Foster Grant's Continuing Infringement of the '739 Patent ........................................................ 14

    C.   The Balance of Hardships and the Public Interest Both Favor Sun Optics ........... 15

VII. CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230 (Fed. Cir. 1985)............................................15

*Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*,
    796 F.2d 443 (Fed. Cir. 1986) ................................................................................14

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*,
    326 F.3d 1226 (Fed. Cir. 2003) ..............................................................................14

*Canon Computer Sys. Inc. v. Nu-Kote Int'l, Inc.*,
    134 F.3d 1085 (Fed. Cir. 1998) ........................................................................13, 14

*Gemstar-TV Guide v. International Trade Com'n.*,
    383 F.3d 1352 (Fed. Cir. 2004) ..................................................................................8

*Glaxo Group Ltd. v. Apotex, Inc.*,
    376 F.3d 1339 (Fed. Cir. 2004) ..................................................................................9

*Hybritech, Inc. v. Abbott Lab.*,
    849 F.2d 1446 (Fed. Cir. 1988) ............................................................................7, 15

*Jeneric/Pentron, Inc. v. Dillon Co., Inc.*,
    205 F.3d 1377 (Fed. Cir. 2000) ..................................................................................7

*Loctite Corp. v. Ultraseal Ltd.*,
    781 F.2d 861 (Fed. Cir. 1985) ....................................................................................8

*Netword, LLC v. Central Corp.*,
    242 F.3d 1347 (Fed. Cir. 2001) ..................................................................................8

*North American Vaccine, Inc. v. American Cyanamid Co.*,
    7 F.3d 1571 (Fed. Cir. 1993) ....................................................................................14

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ..................................................................................8

*Renishaw PLC v. Marposs Societa' per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998) ..................................................................................9

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ................................................................................8, 9

## RULES AND STATUTES

35 U.S.C. § 282 ................................................................................................................13

35 U.S.C. § 283 ..................................................................................................................7

Fed.R.Civ.P. 65 ..................................................................................................................7

## I.    NATURE AND STAGE OF THE PROCEEDINGS

The nature of the proceedings is alleged patent infringement of U.S. Patent Nos. D525,427, D527,180 and 7,188,739 (the "'427 patent," "'180 patent" and "'739 patent" respectively). The '427 and '180 patents are design patents on cases for reading glasses. The '739 patent is a utility patent for displaying reading glasses inside cases. For the convenience of the Court, copies of the '427, '180 and '739 patents are attached hereto as Exhibits A through C, respectively.[1]  Plaintiff Sun Optics, Inc. ("Sun Optics") filed a Motion for a Preliminary Injunction based on the '427 and '180 patents on March 7, 2007 ("Motion for Preliminary Injunction on Design Patents" (Dkt. No. 2)). On March 13, 2007, the U.S. Patent and Trademark Office issued the '739 utility patent. Sun Optics has sought leave of the Court to add claims for infringement of the '739 patent in its Motion for Leave to File a First Amended Complaint filed concurrently herewith. Sun Optics has filed the present motion for preliminary injunction to stop the irreparable harm that Sun Optics is incurring at the hand of Defendant FGX International, Inc.'s ("Foster Grant" or "Defendant") activities that infringe the claims of the '739 patent. Foster Grant's opposition to Sun Optics's Motion for Preliminary Injunction on Design Patents is due on April 6, 2007, in response to which Sun Optics will file a timely Reply brief. In a teleconference with the Court on April 4, 2007, the Court scheduled the hearing for oral arguments on Sun Optics's motions for preliminary injunction, among others, for May 18, 2007.[2]

## II.    SUMMARY OF ARGUMENT

1. To obtain a preliminary injunction Sun Optics must show that the balance of the following four factors weighs in favor of an injunction: (1) a reasonable

---

[1] On April 5, 2007, Sun Optics filed a Certificate of Correction with the U.S. Patent and Trademark Office to correct minor typographical and clerical errors in the '739 patent. A copy of the correction included in the Certificate of Correction are attached hereto as Exhibit D.

[2] During the April 4 teleconference with the Court the Defendant indicated that it planned to file a Motion to Dismiss. The Court has indicated that it will hear oral argument on Defendant's Motion to Dismiss on May 18 as well.

likelihood of success on the merits of its claim of infringement of the '739 patent, (2) the prospect of irreparable harm to Sun Optics from Foster Grant's alleged infringement, (3) a balance of the parties' hardships, and (4) potential injury to an important public interest.

2. The first factor, a reasonable likelihood of success on the merits of its claim of infringement of the '739 patent, weighs in favor of an injunction because the patent at issue is presumed valid and is likely infringed by Foster Grant's Private Eyes line of glasses marketed in displays that maintain the eyeglass cases in a substantially vertical position ("Accused Products") such that a portion of the eye glasses are visible to the consumer.

3. The second factor, the prospect of irreparable harm, weighs in favor of an injunction because Foster Grant's allegedly infringing acts are taking market share from Sun Optics, the damage for which can not be compensated for by monetary damages.

4. The third factor, the balance of the parties' hardships, is presumed to weigh in favor of an injunction because of Sun Optics's strong showing of likelihood of success on the merits and because Foster Grant will be able to continue to market its products in conventional displays.

5. The fourth factor, potential injury to an important public interest, weighs in favor of an injunction because the only important public interest implicated by the '739 patent is the public's interest in upholding the patent system.

6. The balance of the foregoing four factors weighs in favor of issuing a preliminary injunction because each of the foregoing factors weigh in favor of Sun Optics.

## III.   STATEMENT OF FACTS

Generally, the claims of the '739 patent cover eyeglass displays that display eyeglasses inside eyeglass cases in a substantially vertical manner such that a portion of the eyeglasses is visible to the consumer.  In Short, Foster Grant's products accused of infringing the '427 and '180 patents also infringe at least claim 1 of the '739 patent when those products are marketed in displays that display the cases in a substantially vertical position.  Consequently, the facts and legal analysis supporting the present Motion for Preliminary Injunction are substantially the same as the facts supporting Sun Optics's Motion for Preliminary Injunction on Design Patents.  For the convenience of the Court, the overlapping facts and legal arguments will not be repeated in this memorandum, but will be incorporated by reference as appropriate.  Thus, the Statement of Facts at pages 2-4 of Sun Optics's Memorandum in Support of Its Motion for Preliminary Injunction on Design Patents (Dkt. No. 3) is hereby incorporated by reference.

As part of its Clear Tube merchandising program, Sun Optics markets reading glasses in cases protected by the '427 and '180 patents as set forth in the Memorandum in Support of Sun Optics's Motion for Preliminary Injunction on Design Patents.  In addition to copying those designs for reading glass cases, Foster Grant also has copied the displays Sun Optics uses to market its Clear Tube products.  For example, Sun Optics uses a certain counter-top display that holds 30 pairs of reading glasses to market its Clear Tube products.  [Declaration of Bruce Raile in Support of Plaintiff's Second Motion for Preliminary Injunction ("Second Raile Decl."), at p. 1, ¶ 3.]  A picture of such a 30-piece display used by Sun Optics for one its customers is depicted below:

3



[*See id.* at p. 1, ¶ 5.] As can be seen in the picture, Sun Optics's 30-piece display has five rows of reading glasses, each row having six pairs of reading glasses. [*Id.*] Two of the five rows contain reading glasses in larger cases and three of the rows contain reading glasses in smaller cases. [*Id.*]

In December of 2006, Sun Optics purchased several pairs of Foster Grant's Private Eyes reading glasses. [*Id.* at p. 1, ¶ 4.] A distributor of Foster Grant's products located in California shipped the purchased Private Eyes reading glasses to Sun Optics and included a brochure advertising Foster Grant's products. [*Id.*] A picture from those brochures is reproduced below:



[*See id.*] Foster Grant's display depicted above is a copy of Sun Optics's 30-piece display right down to using three rows of small cases and two rows of large cases. Not coincidentally, both Sun Optics's and Foster Grant's displays are strikingly similar to the preferred embodiment depicted Figure 5 of the '739 patent, reproduced below:



Fig. 5

5

Sun Optics continues to be irreparably harmed by Foster Grant's infringement of Sun Optics's patents. In addition to the facts showing irreparable harm set forth at pages 12-14 of Sun Optics's Memorandum in Support of Its Motion for Preliminary Injunction on Design Patents, incorporated herein by reference, Sun Optics has recently lost additional market share to Foster Grant's products accused of infringing the '739 patent. Prior to Foster Grant's infringing activities, Sun Optics was working with the CVS chain of drugstores to sell Sun Optics's Clear Tube products to CVS. [*Id.* at p. 1, ¶ 5.] At that time, CVS carried products sold by Foster Grant and marketed in conventional displays. [*Id.*] However, the communication lines between Sun Optics and CVS went cold after Foster Grant began marketing its products accused of infringing the '427, '180 and '730 patents. [*Id.*] Sun Optics recently received information giving Sun Optics reason to believe that Foster Grant has secured a contract with CVS to sell its Private Eyes products to CVS. [*Id.*] This is simply another example of a retail customer that was interested in Sun Optics's Clear Tube merchandising program and products until the incumbent reading glass vendor began offering similar infringing products. [*Id.*] The loss of the CVS account, about 6,000 stores nationwide, is not only millions of dollars of lost sales to Sun Optics, but is also lost market share and lost exposure that can not be compensated adequately by a monetary award. [*Id.*]

## IV.    **INTRODUCTION**

In the accompanying Motion for Preliminary Injunction, Sun Optics seeks an order enjoining Foster Grant from making, using, selling, offering to sell or importing the Accused Products in or into the United States, pending the outcome of this action. This motion is based on Foster Grant's infringement of the '739 patent. Sun Optics respectfully submits this memorandum in support of its Motion for Preliminary Injunction.

## V.    STANDARDS FOR GRANTING A PRELIMINARY INJUNCTION

Consistent with the standard for preliminary injunction applied in other contexts, the general requirements for obtaining preliminary injunctive relief in patent cases requires the movant to show four factors:  (1) a reasonable likelihood of success on the merits, (2) the prospect of irreparable harm, (3) a balance of the parties' hardships in favor of an injunction, and (4) no potential injury to an important public interest. *Jeneric/Pentron, Inc. v. Dillon Co., Inc.,* 205 F.3d 1377, 1380 (Fed. Cir. 2000); *see also* Fed.R.Civ.P. 65; 35 U.S.C. § 283.  As shown below, each of these factors is satisfied and weighs in favor of a preliminary injunction.

## VI.    ARGUMENT

### A.    Sun Optics Is Likely to Prevail on the Merits of Infringement and Validity

To establish a likelihood of success on the merits Sun Optics must make a showing with respect to both validity of the '739 patent and infringement by the Accused Products. *Hybritech, Inc. v. Abbott Lab.*, 849 F.2d 1446, 1451 (Fed. Cir. 1988).  The specific burdens of the parties with regard to showing infringement and validity are set forth at page 4 of Sun Optics's Memorandum in Support of Motion for Preliminary Injunction on Design Patents, and are incorporated herein by reference.

#### 1.    Sun Optics is likely to prove infringement of the '739 patent

Sun Optics is likely to succeed on the merits of its claim of literal infringement of the '739 patent.  Foster Grant's Accused Products are virtually identical to the preferred embodiment depicted in Figure 5 of the '739 patent.  A comparison of the Accused Products with the claims of the '739 patent clearly demonstrates that each and every limitation of claim 1 is satisfied, as explained below.

#### a)    Legal standards for infringement of utility patents

To determine whether a particular device is covered by a claim, a two-step analysis is required by the courts.  "In the first step the court 'construes' the patent claims by establishing

the scope and boundaries of the subject matter that is patented, as a matter of law, and in the second step the trier of fact applies the construed claims to the accused device." *Netword, LLC v. Central Corp.,* 242 F.3d 1347, 1350 (Fed. Cir. 2001).

On the issue of claim interpretation, the *en banc* decision of the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), held that "[w]e cannot look at the ordinary meaning of the term ... in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history." *Id.* at 1313. This is because "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* The Court further reaffirmed that "the specification ... [is] 'a concordance for the claims,' based on the statutory requirement that the specification 'describe the manner and process of making and using' the patented invention." *Id.* at 1315.

In *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996), the Federal Circuit held that a district court should "[f]irst, [] look to the words of the claims themselves, both asserted and non-asserted, to define the scope of the patented invention." *Id.* at 1582. While review of the specification is necessary in any claim construction exercise, the fact that language appears in the specification is not a sufficient reason to graft limitations corresponding to such limitations from the specification into the claims. *See Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 867 (Fed. Cir. 1985) ("[P]articular limitations or embodiments appearing in the specification will not be read into the claims."). This is true even when the patent describes only a single embodiment. *Gemstar-TV Guide v. International Trade Com'n.*, 383 F.3d 1352, 1366 (Fed. Cir. 2004) ("Our precedent has emphasized that the disclosure in the written description of a single embodiment does not limit the claimed invention to the features described in the disclosed embodiment."). Further, a fundamental principle of claim construction holds "that

claims should rarely, if ever, be construed to exclude a preferred embodiment." *Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1347 (Fed. Cir. 2004) (*citing Vitronics*, 90 F.3d at 1583).

Ultimately, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). The construction that stays true to the claim language and the patent's description leads inescapably to a finding of literal infringement of the '739 patent by Foster Grant's Private Eyes product displays.

> Claim 1 of the '739 patent reads as follows:
>
> 1. An eyeglass display comprising:
>
> a support member;
>
> one or more display members having a plurality of openings, wherein each of said plurality of openings is adapted to receive an eyeglass case and is configured to permit a consumer to view at least a portion of the eyeglasses enclosed therein, wherein at least one eyeglass case is received by one of said plurality of openings and is displayed in a substantially vertical manner, said eyeglass case comprising,
>
>> a body adapted to enclose a pair of eyeglasses, said body have [sic] a first component and a second component, said second component having a substantially flat surface at one end thereof, said body configured to permit a consumer to observe at least-a [sic] portion of the pair of eyeglasses enclosed within said body, wherein said substantially flat surface at said one end of said second component permitting said eyeglass case to be positioned on said substantially flat surface at said one end of said second component in a substantially vertical manner.

### b)    The "eyeglass display" language

The preamble of claim 1 refers to an "eyeglass display." The specification explains that an eyeglass display is "a display 100 for displaying eyeglasses." '793 patent at 6:50-51, Fig. 5. Foster Grant's Accused Products are undisputedly displays for displaying eyeglasses.

c)    The "support member" and "display member" language

The specification explains that the "support member" "provides a frame for securing other components" of the display. *Id.* at 6:65-67, Fig. 5.[3]  The Accused Products have a "support member" similar to part 120 depicted in Figure 5 and described at column 6, line 58 through column 7, line 1 of the '739 patent, as indicated below.

The "display member" must have "a plurality of openings . . . adapted to receive an eyeglass case" and be "configured to permit a consumer to view at least a portion of the eyeglasses enclosed therein[.]" *Id.* at claim 1.  The "display member" must also display the eyeglass case in a "substantially vertical manner" when the eyeglass case is "received" by one of the openings[.]" *Id.*  A "display member" is depicted as part 130 in Figure 5 of the '739 patent. The specification explains that the "display member" "is positioned in a substantially horizontal manner" and "permits the eyeglasses to be displayed in a vertical manner." *Id.* at 7:1-13.  The Accused Products have a "display member" that positions the eyeglass cases in a substantially horizontal manner that allows at least a portion of the eyeglasses to be visible, as indicated below.

---

[3] One of the corrections being made in the Certificate of Correction referenced *supra* in footnote 2 is to label the vertical member of the display depicted in Figure 5 as the "support structure 120" described at column 6, line 58 through column 7, line 1 of the '739 patent.



### d)     The "eyeglass case" language

The "eyeglass case" of claim 1 requires at least 1) a "body" having a "first component and a second component" that are "adapted to enclose a pair of eyeglasses" and "permit a consumer to observe at least a portion of the eyeglasses enclosed within said body"; and 2) the "second component" must have a "substantially flat surface at one end" that permits the eyeglass case "to be positioned on said substantially flat surface . . . in a substantially vertical manner." *Id.* at claim 1.

The specification provides an example of one preferred embodiment of such an "eyeglass case" in Figures 1 and 2. The specification explains Figure 1, indicating that "body 10 comprises a first component 20 and a second component 30." Although both first component 20 and second component 30 are transparent in Figures 1 and 2, thereby allowing a consumer to view the reading glasses contained in the body 10, the specification explains that "[i]n yet another embodiment, the eyeglass case includes a first translucent or transparent portion and a second opaque portion." *Id.* at 4:10-12. Thus, the "eyeglass case" limitation does not require the reading glass case to be entirely transparent, so long as a translucent or transparent portion of the

case allows "a consumer to observe at least a portion of the pair of eyeglasses." *Id.* at claim 1 and 4:12-14. The reading glass cases of Foster Grant's Accused Products have a body with both a first component and second component, the first component having a transparent portion that allows a consumer to observe at least a portion of the eyeglasses contained inside the body, as indicated below.



Figures 1 and 2 of the specification depict the second component 30 of the eyeglass cases with an end 32. The specification explains that the end 32 of the second component 30 "provide[s] a substantially flat surface permitting the eyeglass case to be rested on its end and displayed in a vertical manner[.]" *Id.* at 4:64-66. The second component of Foster Grant's Accused Products likewise have ends with a substantially flat surface that allows the eyeglass cases to be displayed in a substantially vertical manner, as shown below.



Foster Grant's Accused Products literally satisfy every element of claim 1, as the foregoing analysis demonstrates.  Indeed, Foster Grant has obviously directly copied Sun Optics's patented products, implying that Foster Grant's infringement is willful.  Foster Grant's copy-cat products even have the same configuration of small and large cases.  As explained in Sun Optics's Memorandum in support of its Motion for Preliminary Injunction on Design Patents, Foster Grant also has copied the design of Sun Optics's reading glass cases.  Indeed, a comparison of Sun Optics's reading glass cases with Foster Grant's reading glass cases reveals that Foster Grant copied not only the overall design, but also the physical dimensions of each component of Sun Optics's reading glass cases.  Sun Optics has overwhelmingly demonstrated that it is likely to prevail on infringement of at least claim 1 of the '739 patent.

### 2.    The claims of the '739 patent are valid

In addition to providing a strong showing of likelihood of success on the merits for the question of infringement, Sun Optics is also likely to succeed on the issue of the validity of claim 1.  First, all of the claims of the '739 patent are presumed valid.  *See* 35 U.S.C. § 282. Importantly, this presumption exists at every stage of the proceedings, including the preliminary injunction stage, *Canon Computer Sys. Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir.

1998), and the party challenging validity (here Foster Grant) bears the burden of establishing invalidity by clear and convincing evidence, *North American Vaccine, Inc. v. American Cyanamid Co.*, 7 F.3d 1571, 1579 (Fed. Cir. 1993). "Thus, where the challenger fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue." *Canon Computer Sys.*, 134 F.3d at 1088.

The U.S. Patent and Trademark Office thoroughly examined the application leading to the '739 patent, and found it to be valid in light of the extensive prior art considered by the Examiner. *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 447 (Fed. Cir. 1986) ("[T]he examiner, who with the deference we owe governmental officials we assume has some expertise in interpreting the references and some familiarity with the level of skill in the art."); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1235-1236 (Fed. Cir. 2003) (recognizing statutorily mandated presumption that the patent examiner will do his or her job correctly). Sun Optics has therefore met its burden with respect to establishing the validity of claim 1 of the '739 patent.

**B.    Sun Optics is Suffering Irreparable Harm Because of Foster Grant's Continuing Infringement of the '739 Patent**

As explained above, Foster Grant's infringement of the '429 and '180 patents is intrinsically tied to its infringement of the '739 patent. Thus, on the question of irreparable harm, the evidence also favors Sun Optics and entry of preliminary injunctive relief for the reasons set forth in Sun Optics's Memorandum in Support of Its Motion for Preliminary Injunction on Design Patents at pages 12-15, incorporated herein by reference.

Additionally, Sun Optics has incurred further irreparable harm since the filing of it Motion for Preliminary Injunction on Design Patents, and will continue to be irreparably harmed until Foster Grant's infringing activities are enjoined. As set forth in the Statement of Facts section above, Sun Optics has recently lost the opportunity to sell its Clear Tube program to the CVS drugstore chain because Foster Grant, who was already selling a conventional reading glass

program to CVS, recently obtained a contract to sell its infringing clear tubes to CVS. [Second Raile Decl., at p. 1, ¶ 5.]  The loss of this account represents a substantial loss of market share to Sun Optics.  [*Id.*]  This type of irreparable harm can not be adequately compensated for by a monetary award.  *See Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1233 (Fed. Cir. 1985); *Hybritech, Inc. v. Abbott Lab.*, 849 F.2d at 1456-57.  The irreparable harm factor clearly weighs in favor of granting a preliminary injunction.

> **C.    The Balance of Hardships and the Public Interest Both Favor Sun Optics**

As with the irreparable harm caused by Foster Grant's infringement, the balance of the hardships and the public interest both favor issuance of a preliminary injunction for the same reasons set forth in Sun Optics's Memorandum in support of its Motion for Preliminary Injunction on Design Patents at pages 15-17, incorporated herein by reference.  Additionally, the hardship of a preliminary injunction on Foster Grant will likely be minimal because Foster Grant will be able to continue to market its products in conventional displays as it has done in years past prior to the copying conduct that gives rise to the instant case.

**VII.    CONCLUSION**

Based on the foregoing, Sun Optics respectfully requests that the Court grant its motion for a preliminary injunction and preliminarily enjoin Foster Grant from selling its Private Eyes products, or colorable imitations thereof, in cases and displays that allegedly infringe the claims of the '739 patent.

Respectfully submitted,

**CONNOLLY BOVE LODGE & HUTZ LLP**

*/s/ R. Eric Hutz*

R. Eric Hutz (#2702)
1007 N. Orange Street
Wilmington, DE  19899
Telephone: (302) 658-9141
*Attorneys for Plaintiff*
*Sun Optics, Inc.*

**DATE:**  April 5, 2007

# EXHIBIT A

US00D525427S

(12) **United States Design Patent**     (10) Patent No.:        **US D525,427 S**

Raile                                    (45) Date of Patent: **     *Jul. 25, 2006**

(54) **EYEGLASS CASE**

(75) Inventor:    **Bruce Raile**, Park City, UT (US)

(73) Assignee:   **Sun Optics, Inc.**, Salt Lake City, UT
                 (US)

( * ) Notice:    This patent is subject to a terminal dis-
                 claimer.

(**) Term:       **14 Years**

(21) Appl. No.:  **29/205,824**

(22) Filed:      **May 20, 2004**

(51) **LOC (8) Cl.** .................................................... **03-01**
(52) **U.S. Cl.** ......................................... **D3/265; D3/263**
(58) **Field of Classification Search** ................. D3/263,
        D3/265, 268; 206/5, 6, 203.5; 351/63; 220/326
        See application file for complete search history.

(56)                  **References Cited**

                U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 246,460 A | * | 8/1881 | Chase | ............................ 206/6 |
| 1,092,156 A | | 4/1914 | Mathis | |
| 2,606,708 A | | 8/1952 | Irvan | |
| 2,713,947 A | | 7/1955 | Foster | |
| 2,735,597 A | | 2/1956 | Treleven | |
| 2,747,760 A | | 5/1956 | Jacobson | |
| 2,809,786 A | * | 10/1957 | Anderson | ................... 220/326 |
| 2,816,666 A | | 12/1957 | Nadel | |
| RE24,571 E | | 11/1958 | Nadel | |
| 2,936,897 A | | 5/1960 | Bloch | |
| 2,966,271 A | | 12/1960 | Nadel | |
| 3,333,709 A | | 8/1967 | Leblanc et al. | |
| D208,469 S | | 9/1967 | Parker | |
| 3,357,568 A | | 12/1967 | Leblanc et al. | |
| 3,593,856 A | | 7/1971 | Zander | |
| 3,817,392 A | | 6/1974 | Bloch | |
| 3,857,482 A | | 12/1974 | Shelton | |
| 3,866,800 A | | 2/1975 | Schmitt | |
| 4,000,810 A | | 1/1977 | Leblanc | |
| 4,204,602 A | | 5/1980 | Dunchock | |
| D267,992 S | | 2/1983 | Shelton | |
| D275,160 S | | 8/1984 | Shelton | |
| D275,161 S | | 8/1984 | Shelton | |
| 4,572,366 A | | 2/1986 | Carson | |
| 4,614,272 A | | 9/1986 | Shelton et al. | |
| D286,462 S | * | 11/1986 | Sender et al. | ................ D3/265 |
| 4,715,575 A | | 12/1987 | Kamerer | |
| 4,733,775 A | | 3/1988 | Fireman | |
| 4,744,461 A | | 5/1988 | Lapham | |
| 5,141,117 A | | 8/1992 | Olsen et al. | |
| D339,913 S | * | 10/1993 | Reed | ............................ D3/265 |
| 5,423,419 A | | 6/1995 | Wentz et al. | |
| 5,501,321 A | | 3/1996 | Liu | |
| D369,466 S | | 5/1996 | Jannard et al. | |
| 5,568,872 A | | 10/1996 | Hinnant, Sr. | |
| D400,009 S | * | 10/1998 | Conway | ....................... D3/265 |
| 5,899,371 A | * | 5/1999 | Weliver | ....................... 224/245 |
| 5,929,967 A | | 7/1999 | Conner | |

(Continued)

          FOREIGN PATENT DOCUMENTS

DE          3815889        11/1989

*Primary Examiner*—Celia A. Murphy
(74) *Attorney, Agent, or Firm*—Workman-Nydegger

(57)                    **CLAIM**

The ornamental design for an eyeglass case, as shown and
described.

                  **DESCRIPTION**

FIG. 1 is a perspective view of an eyeglass case showing my
new design;
FIG. 2 is a front elevational view of the eyeglass case as
shown in FIG. 1, with the back elevational view being a
mirror image thereof;
FIG. 3 is a right side elevational view of the eyeglass case
shown in FIG. 1, with the left side being a mirror image
thereof;
FIG. 4 is a top plan view of an eyeglass case shown in FIG.
1; and,
FIG. 5 is a bottom plan view of the eyeglass case as shown
in FIG. 1.
The broken lines are for illustrative purposes only and form
no part of the claimed design.

                  **1 Claim, 2 Drawing Sheets**




**US D525,427 S**
Page 2

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,949,515 | A | 9/1999 | Hoshino |
| D422,139 | S * | 4/2000 | Meikle ........................ D3/268 |
| D425,299 | S * | 5/2000 | Charbonneau ............... D3/265 |
| 6,102,541 | A * | 8/2000 | Kuo ............................ 351/63 |
| D432,784 | S * | 10/2000 | Conway ................... D3/203.5 |
| D432,786 | S * | 10/2000 | Rogers ........................ D3/265 |
| D434,560 | S * | 12/2000 | Chao ........................... D3/265 |
| D436,434 | S * | 1/2001 | Conway ................... D3/203.5 |
| D436,725 | S * | 1/2001 | Rogers ........................ D3/265 |
| 6,170,651 | B1 * | 1/2001 | Taormina ....................... 206/5 |
| D437,112 | S * | 2/2001 | Toffoli ........................ D3/219 |
| 6,206,217 | B1 * | 3/2001 | Chiang ......................... 220/8 |
| D439,738 | S * | 4/2001 | McCormack ................ D3/265 |
| D441,953 | S * | 5/2001 | Ben Moshe ................ D3/265 |
| D446,389 | S * | 8/2001 | Zhou ........................... D3/265 |
| 6,273,246 | B1 * | 8/2001 | Marciano ................... 206/301 |
| D454,686 | S * | 3/2002 | McCormack ................ D3/265 |
| 6,382,407 | B1 * | 5/2002 | Chao ............................. 206/5 |
| 6,415,915 | B1 | 7/2002 | Grossman |
| D467,421 | S * | 12/2002 | Chao ........................... D3/265 |
| 6,491,158 | B1 * | 12/2002 | Chen ............................. 206/5 |
| 6,626,287 | B1 | 9/2003 | Watson |
| D483,944 | S * | 12/2003 | Conner ....................... D3/265 |
| 6,789,664 | B1 | 9/2004 | Chao |
| 6,851,552 | B1 * | 2/2005 | Chao ............................. 206/5 |
| 6,929,116 | B1 * | 8/2005 | Chao et al. .................... 206/5 |
| 2002/0157968 | A1 * | 10/2002 | Chen ............................. 206/5 |
| 2003/0111361 | A1 | 6/2003 | Fischer et al. |
| 2005/0155872 | A1 * | 7/2005 | Cheng ........................... 206/6 |

* cited by examiner

**U.S. Patent**        Jul. 25, 2006        Sheet 1 of 2        **US D525,427 S**



*Fig. 1*



Fig. 4



Fig. 2



Fig. 3



Fig. 5

# EXHIBIT B

US00D527180S

(12) **United States Design Patent**     (10) **Patent No.:**      **US D527,180 S**

Raile     (45) **Date of Patent:**   ** *Aug. 29, 2006

(54) **EYEGLASS CASE**

(75) Inventor: **Bruce Raile**, Park City, UT (US)

(73) Assignee: **Sun Optics, Inc.**, Salt Lake City, UT (US)

( * ) Notice: This patent is subject to a terminal disclaimer.

(**) Term: **14 Years**

(21) Appl. No.: **29/221,502**

(22) Filed: **Jan. 17, 2005**

**Related U.S. Application Data**

(63) Continuation of application No. 29/205,824, filed on May 20, 2004.

(51) **LOC (8) Cl.** .................................................... **03-01**

(52) **U.S. Cl.** ......................................... D3/265; D3/263

(58) **Field of Classification Search** ................. D3/263, D3/265, 268; 206/5, 6, 203.5; 351/63; 220/326
See application file for complete search history.

(56)           **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 246,460 | A | * 8/1881 | Chase | ............................ 206/6 |
| 1,092,156 | A | 4/1914 | Mathis | |
| 2,606,708 | A | 8/1952 | Irvan | |
| 2,713,947 | A | 7/1955 | Foster | |
| 2,735,597 | A | 2/1956 | Treleven | |
| 2,747,760 | A | 5/1956 | Jacobson | |
| 2,809,766 | A | * 10/1957 | Anderson | ................... 220/326 |
| 2,816,666 | A | 12/1957 | Nadel | |
| RE24,571 | E | 11/1958 | Nadel | |
| 2,936,897 | A | 5/1960 | Bloch | |
| 2,966,271 | A | 12/1960 | Nadel | |
| 3,333,709 | A | 8/1967 | Leblanc et al. | |
| D208,469 | S | 9/1967 | Parker | |
| 3,357,568 | A | 12/1967 | Leblanc et al. | |
| 3,593,856 | A | 7/1971 | Zander | |
| 3,817,392 | A | 6/1974 | Bloch | |
| 3,857,482 | A | 12/1974 | Shelton | |

| | | | | |
|---|---|---|---|---|
| 3,866,800 | A | 2/1975 | Schmitt | |
| 4,000,810 | A | 1/1977 | Leblanc | |
| 4,204,602 | A | 5/1980 | Dunchock | |
| D267,992 | S | 2/1983 | Shelton | |
| D275,160 | S | 8/1984 | Shelton | |
| D275,161 | S | 8/1984 | Shelton | |
| 4,572,366 | A | 2/1986 | Carson | |
| 4,614,272 | A | 9/1986 | Shelton et al. | |
| D286,462 | S | * 11/1986 | Sender et al. ................ D3/265 | |
| 4,715,575 | A | 12/1987 | Kamerer | |
| 4,733,775 | A | 3/1988 | Fireman | |
| 4,744,461 | A | 5/1988 | Lapham | |
| 5,141,117 | A | 8/1992 | Olsen et al. | |
| D339,913 | S | * 10/1993 | Reed ............................ D3/265 | |
| 5,423,419 | A | 6/1995 | Wentz et al. | |
| 5,501,321 | A | 3/1996 | Liu | |

(Continued)

FOREIGN PATENT DOCUMENTS

DE          3815889       11/1989

*Primary Examiner*—Celia A. Murphy

(74) *Attorney, Agent, or Firm*—Workman-Nydegger

(57)              **CLAIM**

The ornamental design for an eyeglass case, as shown and described.

**DESCRIPTION**

FIG. 1 is a perspective view of an eyeglass case showing my new design;

FIG. 2 is a front elevational view of the eyeglass case as shown in FIG. 1, with the back elevational view being a mirror image thereof;

FIG. 3 is a right side elevational view of the eyeglass case shown in FIG. 1, with the left side view being a mirror image thereof;

FIG. 4 is a top plan view of the eyeglass case shown in FIG. 1; and,

FIG. 5 is a bottom plan view of the eyeglass case as shown in FIG. 1.

The broken lines are for illustrative purposes only and form no part of the claimed design.

**1 Claim, 2 Drawing Sheets**



**US D527,180 S**
Page 2

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D369,466 S | 5/1996 | Jannard et al. |
| 5,568,872 A | 10/1996 | Hinnant, Sr. |
| D400,009 S * | 10/1998 | Conway ...................... D3/265 |
| 5,899,371 A * | 5/1999 | Weliver ...................... 224/245 |
| 5,929,967 A | 7/1999 | Conner |
| 5,949,515 A | 9/1999 | Hoshino |
| D422,139 S * | 4/2000 | Meikle ........................ D3/268 |
| D425,299 S * | 5/2000 | Charbonneau .............. D3/265 |
| 6,102,541 A * | 8/2000 | Kuo ............................ 351/63 |
| D432,784 S * | 10/2000 | Conway ................. D3/203.5 |
| D432,786 S * | 10/2000 | Rogers ....................... D3/265 |
| D434,560 S * | 12/2000 | Chao .......................... D3/265 |
| D436,434 S * | 1/2001 | Conway ................. D3/203.5 |
| D436,725 S * | 1/2001 | Rogers ....................... D3/265 |
| 6,170,651 B1 * | 1/2001 | Taormina ..................... 206/5 |
| D437,112 S * | 2/2001 | Toffoli ...................... D3/219 |
| 6,206,217 B1 * | 3/2001 | Chiang .......................... 220/8 |
| D439,738 S * | 4/2001 | McCormack ................ D3/265 |
| D441,953 S * | 5/2001 | Ben Moshe ................. D3/265 |
| D446,389 S * | 8/2001 | Zhou ........................... D3/265 |
| 6,273,246 B1 * | 8/2001 | Marciano ................... 206/301 |
| D454,686 S * | 3/2002 | McCormack ................ D3/265 |
| 6,382,407 B1 * | 5/2002 | Chao ............................ 206/5 |
| 6,415,915 B1 | 7/2002 | Grossman |
| D467,421 S * | 12/2002 | Chao .......................... D3/265 |
| 6,491,158 B1 * | 12/2002 | Chen ............................ 206/5 |
| 6,626,287 B1 | 9/2003 | Watson |
| D483,944 S * | 12/2003 | Conner ....................... D3/265 |
| 6,789,664 B1 | 9/2004 | Chao |
| 6,851,552 B1 * | 2/2005 | Chao ............................ 206/5 |
| 6,929,116 B1 * | 8/2005 | Chao et al. ................... 206/5 |
| 2002/0157968 A1 * | 10/2002 | Chen ............................ 206/5 |
| 2003/0111361 A1 | 6/2003 | Fischer et al. |
| 2005/0155872 A1 * | 7/2005 | Cheng ............................ 206/6 |

* cited by examiner



*Fig. 1*



Fig. 4



Fig. 2



Fig. 3



Fig. 5

# EXHIBIT C

(12) **United States Patent**　　　　　(10) **Patent No.:**　　**US 7,188,739 B1**

Raile　　　　　　　　　　　　　　　　(45) **Date of Patent:**　　　**Mar. 13, 2007**

(54) **EYEWEAR CASE AND DISPLAY METHOD**

(75) Inventor: **Bruce Raile**, Park City, UT (US)

(73) Assignee: **Sun Optics, Inc.**, Salt Lake City, UT (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/360,264**

(22) Filed: **Feb. 6, 2003**

### Related U.S. Application Data

(60) Provisional application No. 60/433,724, filed on Dec. 13, 2002.

(51) **Int. Cl.**
　　*A47F 7/02*　　　　(2006.01)
(52) **U.S. Cl.** .................................................. **211/85.1**
(58) **Field of Classification Search** ............... 211/85.1; 248/902; 206/5, 6
　　See application file for complete search history.

(56) **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 246,460 | A | 8/1881 | Chase et al. |
| 1,092,156 | A | 4/1914 | Mathis |
| 2,606,708 | A | 8/1952 | Irvan |
| 2,713,947 | A | 7/1955 | Foster |
| 2,735,597 | A | 2/1956 | Treleven |
| 2,747,760 | A * | 5/1956 | Jacobson .................... 220/475 |
| 2,809,766 | A | 10/1957 | Anderson |
| 2,816,666 | A | 12/1957 | Nadel |
| RE24,571 | E | 11/1958 | Nadel |
| 2,936,897 | A | 5/1960 | Bloch |
| 2,966,271 | A | 12/1960 | Nadel |
| 3,333,709 | A | 8/1967 | Leblanc et al. |
| D208,469 | S | 9/1967 | Parker |
| 3,357,568 | A | 12/1967 | Leblanc et al. |
| 3,593,856 | A | 7/1971 | Zander |
| 3,817,392 | A * | 6/1974 | Bloch ........................ 211/85.1 |
| 3,857,482 | A | 12/1974 | Shelton |
| 3,866,800 | A | 2/1975 | Schmitt |
| 4,000,810 | A | 1/1977 | Leblanc |
| 4,204,602 | A | 5/1980 | Dunchock |
| D267,992 | S | 2/1983 | Shelton |
| D275,160 | S | 8/1984 | Shelton |
| D275,161 | S | 8/1984 | Shelton |
| 4,572,366 | A | 2/1986 | Carson |
| 4,614,272 | A | 9/1986 | Shelton et al. |
| D286,462 | S | 11/1986 | Sender et al. |
| 4,715,575 | A | 12/1987 | Kamerer |

(Continued)

### OTHER PUBLICATIONS

Pocket Clip & Tube Readers, Insight Eyeworks, circa Oct. 2001, 2 pages.

*Primary Examiner*—Sarah Purol
(74) *Attorney, Agent, or Firm*—Workman Nydegger

(57) **ABSTRACT**

Methods and apparatuses for an eyeglass case and display are provided. According to one aspect of the present invention, an eyeglass case permitting a consumer to view at least a portion of the eyeglasses is provided. In one embodiment, the eyeglass case is configured to permit a consumer to view the entire eyeglass frame. According to another embodiment, the eyeglass case provides a substantially flat surface permitting the eyeglass case to be rested on its end. According to another aspect of the present a method of and apparatus of displaying eyeglasses that includes a display member that permits a plurality of eyeglasses to be positioned one behind another such that each of the plurality of eyeglasses can be seen without needing to reposition the eyeglasses.

**11 Claims, 6 Drawing Sheets**



# US 7,188,739 B1
Page 2

---

### U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 4,733,775 A | * | 3/1988 | Fireman | 206/5 |
| 4,744,461 A | * | 5/1988 | Lapham | 206/5 |
| 5,141,117 A | | 8/1992 | Olsen et al. | |
| D339,913 S | | 10/1993 | Reed | |
| 5,423,419 A | * | 6/1995 | Wentz et al. | 206/6 |
| 5,501,321 A | | 3/1996 | Liu | |
| D369,466 S | | 5/1996 | Jannard et al. | |
| 5,568,872 A | * | 10/1996 | Hinnant, Sr. | 211/85.1 |
| D400,009 S | | 10/1998 | Conway | |
| 5,899,371 A | | 5/1999 | Weliver | |
| 5,949,515 A | | 9/1999 | Hoshino | |
| D422,139 S | | 4/2000 | Meikle | |
| D425,299 S | | 5/2000 | Charbonneau | |
| 6,102,541 A | | 8/2000 | Kuo | |
| D432,784 S | | 10/2000 | Conway | |
| D432,786 S | | 10/2000 | Rogers | |
| D434,560 S | | 12/2000 | Chao | |
| D436,434 S | | 1/2001 | Conway | |
| D436,725 S | | 1/2001 | Rogers | |
| 6,170,651 B1 | | 1/2001 | Taormina | |
| D437,112 S | | 2/2001 | Toffoli | |
| 6,206,217 B1 | | 3/2001 | Chiang | |
| D439,738 S | | 4/2001 | McCormack | |
| D441,953 S | | 5/2001 | Ben Moshe | |
| D446,389 S | | 8/2001 | Zhou | |
| 6,273,246 B1 | | 8/2001 | Marciano | |
| D454,686 S | | 3/2002 | McCormack | |
| 6,382,407 B1 | | 5/2002 | Chao | |
| 6,415,915 B1 | * | 7/2002 | Grossman | 206/6 |
| D467,421 S | | 12/2002 | Chao | |
| 6,491,158 B2 | | 12/2002 | Chen | |
| 6,626,287 B1 | * | 9/2003 | Watson | 206/6 |
| D483,944 S | | 12/2003 | Conner | |
| 6,851,552 B1 | | 2/2005 | Chao | |
| 6,929,116 B2 | * | 8/2005 | Chao et al. | 206/5 |
| 2002/0157968 A1 | | 10/2002 | Chen | |
| 2003/0111361 A1 | | 6/2003 | Fischer et al. | |
| 2005/0155872 A1 | | 7/2005 | Cheng | |

* cited by examiner



**Fig. 1**



**Fig. 2**



*Fig. 3*



*Fig. 4*



**Fig. 5**



**Fig. 6**



*Fig. 7*

US 7,188,739 B1

1

# EYEWEAR CASE AND DISPLAY METHOD

## CROSS-REFERENCE TO RELATED APPLICATIONS

This is a utility application of U.S. Provisional Patent Application Ser. No. 60/433,724 entitled "Eyewear Case and Display Methods" filed Dec. 13, 2002.

## BACKGROUND OF THE INVENTION

1. The Field of the Invention

The present invention relates to eyeglass cases and displays. More particularly, the present invention relates to methods and apparatuses of eyeglass cases and displays.

2. The Relevant Technology

Eyeglass cases and point of sale displays have been used for many years to protect eyeglasses and to display eyeglasses to prospective buyers. The configuration of eyeglasses makes them difficult to display. Eyeglasses positioned on a flat surface can quickly become disorganized, damaged, or intertwined with frames of adjacent eyeglasses.

Eyeglass displays facilitate display of eyeglasses by presenting frames in a more organized and efficient manner. However, the configurations of typical displays have many deficiencies. The configuration of typical displays makes it difficult to remove and replace eyeglasses without dropping the eyeglasses or disturbing or damaging adjacent eyeglasses. Where the display can be rotated, eyeglasses can slip from the display and fall to the floor during movement of the display. Additionally, eyeglass displays can be expensive to manufacture and are often configured to display a limited number of eyeglasses on a large display.

Eyeglass cases are adapted to provide protection for eyeglasses. One drawback of typical eyeglass cases is that they are often opaque and prevent viewing of the frames without removing the eyeglasses from the eyeglass case. In many instances, the eyeglasses are removed from the eyeglass cases for display on point of sale displays. This increases the likelihood of damage to the eyeglass frames and lenses. Additionally, the cases are often discarded or misplaced resulting in inefficiencies due to wasted eyeglass cases, mismatched eyeglass cases and frames, or lost time spent locating the proper cases for the eyeglasses. Where an eyeglass case is used which is not matched to the eyeglasses, the chance of damaging or losing, the eyeglasses increases.

Some eyeglass cases have been developed to permit a consumer to be able to see part of the eyeglasses without needing to remove the eyeglasses from the case. Such eyeglass cases allow the eyeglasses to remain positioned in the eyeglass cases during display of the eyeglasses. However, such eyeglass cases suffer from several deficiencies. Eyeglass cases that have been developed to allow a consumer to view a portion of the eyeglasses typically are difficult to open, are tailored for a particular display type, and/or do not allow a consumer to view the entire eyeglass frame. Such eyeglass cases are typically disposable in nature and are of little usefulness once the eyeglasses have been purchased.

## BRIEF SUMMARY OF THE INVENTION

The present invention relates to methods and apparatuses of eyeglass cases and displays. An eyeglass case is provided according to one aspect of the present invention. The eyeglass case is adapted to enclose a pair of eyeglasses while permitting a consumer to view at least a portion of the

2

eyeglasses. According to one aspect of the present invention, the eyeglass case is configured to permit a consumer to view the entire eyeglass frame. In one embodiment, the eyeglass cases can be transparent, semi-transparent, or translucent to allow a consumer to view the color, style, and other aspects of the eyeglass frames. In another embodiment, the eyeglass case is reusable.

According to another aspect of the present invention, the eyeglass case provides a substantially flat surface permitting the eyeglass case to be rested on its end. By permitting the eyeglass cases to be rested on its end, the eyeglasses can be displayed in a vertical manner. This allows a large number of eyeglasses to be positioned adjacent one another in a small amount of display space. By permitting a consumer to view at least a portion of the eyeglasses, the eyeglass case allows the consumer to browse a large number of eyeglasses without having to remove the eyeglasses from the eyeglass cases. This improves the ease and efficiency of browsing eyeglasses.

The present invention also provides a display and method for displaying eyeglasses. According to one aspect of the present invention, the display includes a display member that permits a plurality of eyeglasses to be positioned one behind another such that each of the plurality of eyeglasses can be seen without needing to reposition the eyeglasses. In one embodiment, the display member includes a plurality of openings that are configured to receive an end of an eyeglass case such that each eyeglass case can be displayed in a vertical manner. In an alternative embodiment, the display member comprises a horizontally positioned shelf or tray that is configured to accommodate a plurality of vertically positioned eyeglass cases.

The combination of the display and the eyeglass case facilitates simple and efficient browsing of the eyeglasses. Additionally, the combination helps the eyeglasses stay neat and clean thus maintaining the organized and professional presentation of the eyeglasses. For example, the eyeglass cases allow a consumer to quickly identify the color, eyeglass frame style, and lens color of eyeglasses without needing to remove the eyeglasses from the eyeglass case. The configuration of the display allows a consumer to view a large number of eyeglass cases simultaneously without needing to move or reposition the eyeglass cases. Once a desired pair of eyeglasses is identified, the display permits the consumer to remove and replace the eyeglass case in which the eyeglasses are enclosed without disturbing adjacent eyeglass cases. Additionally, the configuration of the display allows the consumer to return the eyeglass case to the display without affecting the organized and professional presentation of the eyeglasses. The configuration further allows a user to rotate the eyeglass display without throwing the eyeglasses to the floor.

These and other objects and features of the present invention will become more fully apparent from the following description and appended claims, or may be learned by the practice of the invention as set forth hereinafter.

## BRIEF DESCRIPTION OF THE DRAWINGS

To further clarify the above and other advantages and features of the present invention, a more particular description of the invention will be rendered by reference to specific embodiments thereof which are illustrated in the appended drawings. It is appreciated that these drawings depict only typical embodiments of the invention and are therefore not to be considered limiting of its scope. The invention will be

US 7,188,739 B1

3

described and explained with additional specificity and detail through the use of the accompanying drawings in which:

FIG. 1 illustrates a perspective view of an eyeglass case according to one aspect of the present invention.

FIG. 2 shows a perspective view of an eyeglass case illustrating a mechanism for coupling the first end of the eyeglass case to the second end of the eyeglass case.

FIG. 3 shows a front view of an eyeglass case according to another aspect of the present invention.

FIG. 4 illustrates a cross-sectional view of an eyeglass case illustrating the construction of the eyeglass case according to one aspect of the present invention.

FIG. 5 illustrates a perspective view of a display for displaying eyeglasses on a shelf or table top according to one aspect of the present invention.

FIG. 6 illustrates a perspective view of a display for use on a show room floor according to one aspect of the present invention.

FIG. 7 illustrates a perspective view of a display according to one aspect of the present invention.

DETAILED DESCRIPTION OF THE
PREFERRED EMBODIMENTS

The present invention relates to methods and apparatuses of eyeglass cases and displays. According to one aspect of the present invention, an eyeglass case is provided which is adapted to enclose a pair of eyeglasses while permitting a consumer to view at least a portion of the eyeglasses. In one embodiment, the eyeglass case is configured to permit a consumer to view the entire eyeglass frame. According to another embodiment, the eyeglass case provides a substantially flat surface permitting the eyeglass case to be rested on its end. In this manner, the eyeglass case can be displayed in a vertical manner. This allows a consumer to view at least a portion of a large number of eyeglasses without having to remove the eyeglasses from the eyeglass case

According to another aspect of the present invention a display and method for displaying eyeglass is provided. According to one aspect of the present invention, the display includes a display member that permits a plurality of eyeglasses to be positioned one behind another such that each of the plurality of eyeglasses can be seen without needing to reposition the eyeglasses.

According to another aspect of the present invention, the combination of the display and the eyeglass case facilitates simple and efficient browsing of the eyeglasses. Additionally, the combination maintains an organized and professional presentation of the eyeglasses. For example, the configuration of the display allows a consumer to view a large number of eyeglasses simultaneously without needing to move or reposition the eyeglass cases. Once a desired pair of eyeglasses is identified, the display permits the consumer to remove and replace the eyeglass case without disturbing adjacent eyeglass cases. Additionally, the configuration of the display allows the consumer to return the eyeglass case to the display without affecting the organized and professional presentation of the eyeglasses.

With reference now to FIG. 1, there is shown an eyeglass case 1 and a pair of eyeglasses 2 positioned therein. Eyeglass case 1 provides a protective covering to eyeglasses 2 while allowing a consumer to observe part or all of the eyeglasses. In the illustrated embodiment, eyeglass case 1 comprises a body 10. Body 10 is adapted to enclose a pair of eyeglasses. Body 10 permits a consumer to observe at least a portion of eyeglasses 2. While eyeglass case 1 is described with

4

reference to eyeglasses 2, it will be appreciated that eyeglasses 2 are representative of a variety of types and configurations of eyewear including but not limited to reading glasses, sunglasses, and computer glasses.

In the illustrated embodiment, body 10 is substantially transparent allowing a consumer to observe the color and frame style of the eyeglasses positioned in the eyeglass case 1. In alternative embodiment, the body is translucent and permits a consumer to detect the color and/or outline of the eyeglasses positioned therein. In yet another embodiment, the eyeglass case includes a first translucent or transparent portion and a second opaque portion. The transparent or translucent portion permits a consumer to observe at least a portion of the eyeglasses.

In the illustrated embodiment, body 10 includes a first side surface 12, a second side surface 14, and a third side surface 16. First and second side surfaces 12, 14 are wider than third side surface 16. The width of first and second side surfaces 12, 14 roughly corresponds with the width of the eyeglasses from the top of the lens to the tips of the temple cover when the eyeglasses are in a folded position. The width of third side surface 16 roughly corresponds with the width of the folded eyeglasses at the thickest point from the back of the temples to the front of the lenses. When eyeglass case 1 is resting on first side surface 12, the front of the eyeglass lenses are facing downwards. When eyeglass case 1 is resting on second side surface 14 the front of the eyeglass lenses are facing upwards. When eyeglass case 1 is resting on third side surface 16 the eyeglass lenses are positioned in the same manner as when worn by a consumer.

In one embodiment, the three-side configuration of body 10 provides a tailored enclosure for accommodating the folded eyeglass frames. Typically, folded eyeglasses are widest at or near the top of the eyeglasses where the temples are folded behind the lenses. The eyeglasses are narrowest at the bottom portion of the eyeglasses where the temple tips touch the frame at the bottom of the lenses. The portion of the eyeglass case corresponding with the third side surface 16 accommodates the wider top of the eyeglasses. The narrower portion of the eyeglass case opposite the third side surface 16 accommodates the narrower bottom of the eyeglasses. As will be appreciated by those skilled in the art the configuration of body 10 is not limited to the embodiment illustrated in FIGS. 1 and 2. A variety of types and configurations of body 10 can be provided. For example, in one embodiment body 10 has a two-sided configuration. In another embodiment, body has a rectangular or any shape permitting the eyeglasses to be displayed on its side. In an alternative embodiment, body 10 does not provide a tailored enclosure for the eyeglass frames.

In the illustrated embodiment, body 10 comprises a first component 20 and a second component 30. First component 20 is configured to enclose the right side of eyeglasses 2. Second component 30 is configured to enclose the left side of eyeglasses 2. To form body 10, first component 20 and second component 30 are coupled to one another. In the illustrated embodiment, the three side surface configuration of body 10 provides an orientation for correct coupling of first component 20 to second component 30.

In the illustrated embodiment, first component 20 includes an end 22 while second component 30 includes an end 32. End 22 and end 32 comprise the top and bottom surfaces of eyeglass case 1. End 22 and/or end 32 provide a substantially flat surface permitting the eyeglass case to be rested on its end and displayed in a vertical manner. By permitting eyeglasses to displayed in a vertical manner, a

US 7,188,739 B1

5

plurality of eyeglass cases can be positioned so as to allow a consumer to view the eyeglasses in an efficient and organized manner.

In the illustrated embodiment, there is also shown indicia 40 situated on end 22 of first component 20. In the illustrated embodiment, indicia 40 provides an indication of the characteristics of the eyeglasses and other information related to the eyeglasses contained therein. For example, in the illustrated embodiment indicia 40 specifies the magnification power of the eyeglass lenses. In alternative embodiments, the indicia can include, but is not limited to, eyeglass style, price, UPC code, SKU number, picture of eyeglass style, style number, and/or care information. It will be appreciated by those skilled in the art that a variety of types and configurations of eyeglass cases can be utilized without departing from the scope and spirit of the present invention. For example, in one embodiment, body 10 has a rectangular configuration with four side surfaces. In an alternative embodiment, one of the first or second ends is weighted to maintain the eyeglass case in a vertical display position.

With reference now to FIG. 2, there is shown a perspective view of eyeglass case 1 illustrating a mechanism for coupling first component 20 to second component 30. First component 20 is shown separated from second component 30. Additionally, eyeglasses 2 have been removed from eyeglass case 1. First component 20 comprises an end 22, a recess 24, and a flange 26. Second component 30 comprises an end 32, an insert 34, and a flange 36.

Recess 24 of first component 20 comprises a female element. Insert 34 of second component 30 comprises a male element. Insert 34 is adapted to be positioned in recess 24 to secure first component 20 to second component 30. Flange 26 of first component 20 abuts the end of insert 34 when insert 34 is properly positioned in recess 24. Similarly flange 36 abuts the end of first component 20 when insert 34 is properly positioned in recess 24. In this manner, a simple yet effective coupling is provided between first component 20 and second component 30.

As will be appreciated by those skilled in the art, a variety of types and configurations of coupling can be provided between first component 20 and second component 30 without departing from the scope and spirit of the present invention. For example, in one embodiment a threaded coupling is provided between first component 20 and second component 30. In an alternative embodiment, a hinged coupling is provided between first component 20 and second component 30.

With reference now to FIG. 3, there is shown an eyeglass case 50 according to an alternative embodiment of the present invention. In the illustrated embodiment, eyeglass case 50 is adapted to enclose a pair of eyeglasses while permitting a consumer to observe at least a portion of the eyeglasses. Eyeglass case 50 comprises a body 60, a first end 70, and a second end 80.

Body 60 is adapted to enclose eyeglasses 2, while permitting a consumer to observe at least a portion of the eyeglasses 2. Body 60 permits a consumer to observe at least a portion of the eyeglasses by having a transparent, semi-transparent, or translucent construction. In the illustrated embodiment body 60 has a cylindrical configuration. In an alternative embodiment, body 60 has a rectangular or triangular configuration.

First end 70 is coupled to one end of body 60. Second end 80 is coupled to the opposite end of body 60. In the illustrated embodiment, first end 70 and second end 80 comprise removable barriers maintaining the position of eyeglasses 2 in eyeglass case 50. At least one of the first and

6

second ends 70 and 80 provides a substantially flat surface permitting the eyeglass case to be rested on its end.

With reference now to FIG. 4, there is shown a cross-sectional view taken along lines 4—4 of FIG. 3 illustrating the construction of eyeglass case 50. In the illustrated embodiment, body 60 is constructed of a clear synthetic polymer. By utilizing a polymer material, body 60 provides shatterproof protection for eyeglasses that can be manufactured simply and at low cost. It will be understood by those skilled in the art that body 60 can be constructed from a variety of types and configurations of materials. For example, in one embodiment, body 60 comprises a glass tube.

First end 70 and second end 80 are inserted into the ends of body 60. First end comprises an insert 72, an end cap 74, a resilient material 76, and a contact region 78. Insert 72 is positioned internal to one end of body 60. End cap 74 is positioned external to the end of body 60. End cap 74 provides a stopping mechanism for preventing insertion of first end 70 past a given point. Resilient material 76 provides a cushion mechanism internal to first end 70. Contact region 78 permits a portion of the eyeglasses to contact resilient material 76, thus minimizing movement of eyeglasses 2 within eyeglass case 50.

Second end 80 comprises an insert 82, an end cap 84, a resilient material 86, and a contact region 88. Insert 82 is positioned internal to the other end of body 60. End cap 84 is positioned external to the end of body 60 and provides a stopping mechanism for preventing insertion of second end 80 past a given point. Resilient material 86 provides a cushion mechanism internal to second end 80. Contact region 88 permits a portion of the eyeglasses to contact resilient material 86, thus minimizing movement of eyeglasses 2 within eyeglass case 50.

In the illustrated embodiment, indicia 40 is positioned directly on eyeglasses 2. By permitting a consumer to observe at least a portion of eyeglasses 2, the configuration of body 60 allows a consumer to view indicia 40 so as to identify characteristics of the eyeglass quickly and easily. A variety of types and configurations of eyeglass cases can be utilized without departing from the scope and spirit of the present invention. For example, in the preferred embodiment the eyeglass case is reusable thus providing a mechanism for displaying the eyeglasses to a consumer and for protecting the eyeglasses on an ongoing basis subsequent to purchase of the eyeglasses. In another embodiment, the eyeglass case includes a display element that permits the eyeglass case to be hung in a vertical manner. Examples of display elements include a hook, loop, tag, adhesive tab, and the like.

With reference now to FIG. 5 there is shown a display 100 for displaying eyeglasses. Display 100 permits a plurality of eyeglasses to be positioned one behind 2 another such that a plurality of eyeglasses can be seen without needing to reposition the eyeglasses. Additionally, the configuration of display 100 permits eyeglasses to be displayed in a vertical manner, thus providing an improved and efficient browsing experience.

In the illustrated embodiment, display 100 comprises a base 110, a support structure 120, a display member 130, a front 140, and a display surface 150. Base 110 provides a mechanism for securing display 100. Base 110 allows a consumer to position display 100 on a surface such as a floor, a counter top, or shelf, thus permitting a consumer to identify and browse eyeglasses to be purchased.

Support structure 120 is coupled to base 110. Support structure 120 provides a frame for securing other components of display 100. Display member 130 is coupled to

US 7,188,739 B1

7

support structure **120** and/or base **110**. Display member **130** permits a plurality of eyeglasses to be positioned in rows one behind another such that each of the plurality of eyeglasses can be seen without needing to reposition the eyeglasses. This increases the number of eyeglasses that can be displayed. Additionally, display member **130** permits the eyeglasses to be displayed in a vertical manner.

In the illustrated embodiment, display member **130** is positioned at an angle to facilitate viewing of consecutive rows of eyeglasses. In an alternative embodiment, display member **130** is positioned in a substantially horizontal manner. A variety of types and configurations of display members can be utilized without departing from the scope and spirit of the present invention. In one embodiment, display member **130** comprises a shelf on which eyeglass cases can be positioned in a vertical manner. In another embodiment, display member **130** comprises a tray adapted to allow proper positioning of the eyeglasses.

In the illustrated embodiment, display member **130** includes a plurality of openings **132a–n**. Openings **132a–n** are configured to receive an end of eyeglasses cases **1a–1n** such that the eyeglass cases are displayed in a vertical manner. Each one of openings **132a–n** corresponds with a slot that accommodates the eyeglass case. The slot secures the eyeglass case such that the eyeglass case is displayed in a vertical manner. The slot is configured to conform to the shape of the eyeglass cases. In an alternative embodiment, openings **132a–n** do not correspond with slots. Instead, the configuration of the openings **132a–n** is sufficient to secure the eyeglass cases.

The configuration of display member **130** and openings **132a–n** facilitates viewing of the eyeglasses when a purchaser is attempting to select from a variety of eyeglasses. A purchaser can quickly identify the characteristics of eyeglasses such as color, frame design, and magnification. This permits a purchaser to quickly identify desirable eyeglasses which can be inspected in greater detail.

Once a number of eyeglasses of interest have been identified, display member **130** and openings **132a–n** allow a consumer to easily and efficiently remove the eyeglass cases from the display. The configuration of openings **132a–n** prevents disruption of adjacent eyeglasses when removing or replacing eyeglass covers. This also permits a consumer to return the eyeglass case to its proper position in the display without difficulty and without disturbing adjacent eyeglasses, thus maintaining the organized and efficient display of eyeglasses.

In the illustrated embodiment, display **100** includes a front **140** having a plurality of indicia **142a–h**. Indicia **142a–h** correspond with characteristics of the eyeglasses such as magnification of each row of eyeglasses. In this manner a consumer can quickly and efficiently identify rows of eyeglasses having a desired magnification. Once a given magnification is identified, the consumer can select glasses according to other characteristics, such as frame type, color, or tinting of the lenses. The configuration of eyeglass cases **1a–1n** further facilitates the efficiency and ease of browsing eyeglass by permitting a consumer to view important characteristics of the eyeglasses without needing to remove the eyeglasses from the display **100**.

In the illustrated embodiment, display **100** also includes display surface **150**. Display surface **150** is configured to provide a mechanism for display of an emblem, logo, advertisement, or informational materials to a consumer. As will be appreciated by those skilled in the art, the configu-

8

ration and placement of the display surface can be varied without departing from the scope and spirit of the present invention.

With reference now to FIG. 6 there is shown an alternative embodiment of display **100**. In the illustrated embodiment display **100** comprises a base **110**, a support structure **120**, display members **130a–h**, and a display surface **150**. Base **110** secures the display while providing aesthetic and functional design features to the display. The height of base **110** facilitates display of eyeglasses by positioning the lowest display members within a consumer's reach.

Support structure **120** is coupled to base **110**. Support structure **120** provides a central frame mechanism to which display members **130a–h** are coupled. Display members **130a–d** are positioned on one side of support structure **120**. Display members **130e–h** are positioned on the opposite side of support structure **120**. By providing a plurality of display members, a variety of types and configurations of eyeglasses can be provided. For example, a wide range of lens powers and different colors and intensities of lens shading of can be provided. Additionally, frames having different styles, colors, and construction can be displayed.

With reference now to FIG. 7, there is shown yet another embodiment of display **100** according to one aspect of the present invention. In the illustrated embodiment display **100** has a rectangular configuration. Base **110** comprises a wide and solid foundation for display **100**. Support structure **120** has a skeleton frame configuration to provide support to five display members on each of four sides of the display. Additionally, reflective surfaces **160a–e** are provided. Reflective surfaces **160a–e** provide a mechanism for allowing consumers to observe their visage while wearing the selected eyeglasses.

As will be appreciated by those skilled in the art, a variety of types and configurations of displays can be utilized without departing from the scope or spirit of the present invention. For example, in one embodiment the display has three sides instead of four sides as shown in FIG. 7. In another embodiment, the support structure is integrally coupled to the display member. In yet another embodiment, the display is rotatable about a central axis. In an alternative embodiment the display is disposable. In yet another embodiment, the display is configured to permit a plurality of substantially clear eyeglass cases to be hung such that the eyeglasses are displayed vertically.

One presently preferred method of displaying eyeglasses enclosed in eyeglass cases will now be described in relation to FIGS. 1–7. A display **100** having one or more display members **130** for containing glasses is provided. Next, a first eyeglass case containing a pair of eyeglasses is positioned on display member **130**. Next, at least a second eyeglass case containing a pair of eyeglasses is positioned on the display member **130** behind the first eyeglass case such that a consumer can view the eyeglasses in the first and second eyeglass case simultaneously.

Another presently preferred method of displaying the eyeglasses will now be described. In the embodiment, a display having at least a first display member is provided. Next, a first eyeglass case permitting a user to view an entire frame of eyeglasses and containing a pair of eyeglasses is hung on the display member such that the eyeglasses are positioned vertically. Next, a. second eyeglass case permitting a user to view an entire frame of eyeglasses and containing a pair of eyeglasses is hung on the display member behind the first eyeglass case such that the eyeglasses are positioned vertically.

US 7,188,739 B1

9

The present invention may be embodied in other specific forms without departing from its spirit or essential characteristics. The described embodiments are to be considered in all respects only as illustrative and not restrictive. The scope of the invention is, therefore, indicated by the appended claims rather than by the foregoing description. All changes which come within the meaning and range of equivalency of the claims are to be embraced within their scope.

What is claimed is:

**1.** An eyeglass display comprising:

a support member;

one or more display members having a plurality of openings, wherein each of said plurality of openings is adapted to receive an eyeglass case and is configured to permit a consumer to view at least a portion of the eyeglasses enclosed therein, wherein at least one eyeglass case is received by one of said plurality of openings and is displayed in a substantially vertical manner, said eyeglass case comprising,

a body adapted to enclose a pair of eyeglasses, said body have a first component and a second component, said second component having a substantially flat surface at one end thereof, said body configured to permit a consumer to observe at least-a portion of the pair of eyeglasses enclosed within said body, wherein said substantially flat surface at said one end of said second component permitting said eyeglass case to be positioned on said substantially flat surface at said one end of said second component in a substantially vertical manner.

**2.** The eyeglass case of claim **1**, wherein each of said plurality of openings corresponds with a slot configured to secure said eyeglass case in a substantially vertical manner.

**3.** The eyeglass case of claim **1**, wherein each slot is configured to conform to the shape of said eyeglass case.

**4.** The eyeglass case of claim **1**, wherein said display member is positioned at an angle to facilitate viewing of consecutive rows of eyeglasses.

**5.** The eyeglass case of claim **1**, wherein said display further comprises at least a second display member.

10

**6.** An eyeglass display comprising:

a base;

a support structure coupled to said base; and

one or more display members having a plurality of eyeglass cases positioned in a substantially vertical manner one behind another, wherein at least one of said plurality of eyeglass cases comprises,

a body adapted to enclose a pair of eyeglasses, wherein said body is configured to permit a consumer to view the eyeglasses contained therein, said body comprising a first component and a second component coupled to said first component, wherein at least one of said first and second components is configured to permit said body to stand in a substantially vertical manner,

wherein said plurality of eyeglass cases are positioned to allow each of the plurality of eyeglasses to be seen without requiring removal of at least one of said plurality of eyeglass cases from the display.

**7.** The eyeglass case recited in claim **6**, wherein the first component and second component are removably coupled.

**8.** The eyeglass case recited in claim **6**, wherein both of said first component and said second component have a substantially flat surface at the end thereof.

**9.** The eyeglass case recited in claim **6**, wherein one of said first component and said second component have a substantially flat surface at the end thereof.

**10.** The eyeglass display recited in claim **6**, wherein the display is configured for hanging.

**11.** The eyeglass display recited in claim **6**, wherein said substantially vertical manner of displaying said eyeglass case comprises said eyeglass case being placed in a position equal to or greater than a forty-five degree angle and equal to or less than a ninety degree angle relative to the base of the display.

* * * * *

# EXHIBIT D

(Also Form PTO-1050)

# UNITED STATES PATENT AND TRADEMARK OFFICE
## CERTIFICATE OF CORRECTION

PATENT NO. : 7,188,739 B1

DATED : Mar. 13, 2007

INVENTOR(S) : Raile

It is certified that an error appears or errors appear in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

**Drawings**
Sheet 4, replace Figure 5 with the figure depicted herein below, in which the "support structure" has been labeled with —120—



Fig. 5

MAILING ADDRESS OF SENDER (Please do not use customer number

John C. Stringham, Esq.
WORKMAN NYDEGGER
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111

PATENT NO. 7,188,739 B1

No. of additional copies

P15/REV03

(Also Form PTO-1050)

# UNITED STATES PATENT AND TRADEMARK OFFICE
## CERTIFICATE OF CORRECTION

PATENT NO.  :  **7,188,739 B1**

DATED          : **Mar. 13, 2007**

INVENTOR(S) : **Raile**

It is certified that an error appears or errors appear in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

**Title Page**
Item 56, References Cited, insert section --FOREIGN PATENT DOCUMENTS-- and insert reference --DE 3815889 11/1989--

**Column 1**
Line 46, after "losing" remove [,]

**Column 6**
Line 52, remove [2]

**Column 9**
Line 19, after "comprising" change "," to --:--
Line 21, change "have" to --having--
Line 24, change "least-a" to --least a--
Line 31, change "case" to --display--
Line 34, change "case" to --display--
Line 36, change "case" to --display--
Line 39, change "case" to --display--

**Column 10**
Line 8, after "comprising" change "," to --:--

MAILING ADDRESS OF SENDER (Please do not use customer number

**John C. Stringham, Esq.**
**WORKMAN NYDEGGER**
**1000 Eagle Gate Tower**
**60 East South Temple**
**Salt Lake City, Utah 84111**

PATENT NO. 7,188,739 B1

No. of additional copies

→

P15/REV03

R. ERIC HUTZ (#2702)
**CONNOLLY BOVE LODGE & HUTZ**
Attorneys for Plaintiff
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
Phone (302) 658-9141

LARRY R. LAYCOCK (*motion to appear pro hac vice pending*)
CHAD E. NYDEGGER (*motion to appear pro hac vice pending*)
**WORKMAN NYDEGGER**
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT  84111
Telephone:  (801) 533-9800

Attorneys for Plaintiff
SUN OPTICS, INC.

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SUN OPTICS, INC., a Utah Corporation, | ) | Civil Action No. 1:07cv137-SLR |
| Plaintiff, | ) | |
| v. | ) | **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| FGX INTERNATIONAL, INC., a Delaware Corporation, | ) | Oral Argument May 18, 2007 9:00 a.m. |
| Defendant. | ) | Filed April 5, 2007 |

The Court, having considered Plaintiff Sun Optics, Inc.'s ("Sun Optics") Motion for

Preliminary Injunction, and for good cause appearing therefore, Plaintiff Sun Optics's Motion for

a Preliminary Injunction is GRANTED.  The Court's Findings of Fact and Conclusions of Law

are as Follows:

1.    Defendant FGX International, Inc. ("Foster Grant" or "Defendant") has made,

used, sold, offered to sell, or imported, in or into the United States products called

"Private Eyes" reading glasses and "Sun Readers" reading glasses and has marketed, or caused to be marketed, those reading glasses in cases that allow a portion of the reading glasses to be viewed through the cases and are displayed in a substantially vertical position,;

2.    Sun Optics has shown a reasonable likelihood of success on the merits of its claims, based upon its showing that Foster Grant's Private Eyes and Sun Readers reading glasses marketed in cases that allow a portion of the reading glasses to be viewed through the cases and displayed in a substantially vertical position likely infringe the properly construed claims of U.S. Patent No. 7,188,739 (the "'739 patent"), and Foster Grant has failed to raise a substantial question of invalidity of the claims of the '739 patent;

3.    Sun Optics has established that it will be irreparably harmed if Foster Grant continues to infringe the claims of the '739 patent pending the outcome of this litigation;

4.    Sun Optics has shown that the balance of the parties' respective hardships favors the granting of a preliminary injunction; and

5.    There is no potential injury to an important public interest by granting Sun Optics's motion for a preliminary injunction.

IT IS HEREBY ORDERED:

1.    That Foster Grant, its officers, agents, servants, employees, attorneys, and any persons acting in active concert or participation with them who receive actual notice of this order by personal service or otherwise shall not make, use, sell,

offer to sell, or import, in or into the United States, any Private Eyes or Sun Readers reading glasses marketed in cases that allow a portion of the reading glasses to be viewed through the cases and displayed in a substantially vertical position, or any colorable imitation thereof, pending conclusion of this litigation on the merits; and

2.    Foster Grant shall within one week of this Order recall all such reading glasses in cases that allow a portion of the reading glasses to be viewed through the cases, and all such displays used to market these reading glasses in a substantially vertical position, or any colorable imitation thereof, from all retailers that carry these products; and

3.    Foster Grant shall within one week of this Order inform each of its customers in the United States to which it has distributed reading glasses in cases that allow a portion of the reading glasses to be viewed through the cases and those reading glasses have been or are marketed in a substantially vertical position, or any colorable imitation thereof, of the present preliminary injunction precluding the manufacture, use, sale, and offer to sell or importing, in or into the United States, of these products.

DATED this ____day of _____, 2007

BY THE COURT

By:    _____
       Hon. Chief Judge Sue L. Robinson
       United States District Court Judge