R. ERIC HUTZ (#2702)
**CONNOLLY BOVE LODGE & HUTZ, LLP**
Attorneys for Plaintiff
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
Phone (302) 658-9141

LARRY R. LAYCOCK
CHAD E. NYDEGGER
**WORKMAN NYDEGGER**
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT  84111
Telephone:  (801) 533-9800

Attorneys for Plaintiff
SUN OPTICS, INC.

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SUN OPTICS, INC., a Utah Corporation, | ) | Civil Action No. 1:07cv137-SLR |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PLAINTIFF'S REPLY** |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| FGX INTERNATIONAL, INC., a Delaware | ) | **ITS MOTION FOR A** |
| Corporation, | ) | **PRELIMINARY INJUNCTION** |
| | ) | |
| Defendant. | ) | |
| | ) | Oral Argument May 18, 2007 at 9:00 a.m. |
| | ) | |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ......................................................................................................... 1

II.     STATEMENT OF FACTS ........................................................................................... 1

III.    ARGUMENT ................................................................................................................. 3

      A.      Sun Optics Is Likely to Prevail on the Merits of Validity and Infringement .......... 3

            1.      The '427 and '180 patents are valid ............................................................ 3

            2.      The '427 and '180 patents are enforceable .................................................. 5

            3.      FGX's Accused Products infringe the '427 and '180 patents ...................... 8

                  a)      It is not error to consider Sun Optics's commercial embodiments of the '427 and '180 patents ...................................... 8

                  b)      An ordinary purchaser would be induced to purchase FGX's Accused Products supposing them to be Sun Optics's patented design ................................................................. 9

                  c)      FGX's Accused Products have each of the points of novelty of the designs of the '427 and '180 patents .................................. 11

                        (1)     The band visually separating the opaque and transparent portions of the case is a point of novelty and is found  in FGX's Accused Products ......................... 11

                        (2)     The rounded cap on the top of the transparent portion of the case is a point of novelty and is found in FGX's Accused Products ............................................. 14

      B.      Sun Optics Has Demonstrated that It Will Be Irreparably Harmed if FGX Continues To Infringe the '427 and '180 Patents .................................................. 15

            1.      Sun Optics is entitled to a presumption of irreparable harm .................... 15

            2.      Sun Optics has demonstrated irreparable harm in addition to the presumption ................................................................................................. 16

      C.      Sun Optics Has Demonstrated that the Balance of the Hardships Tips in Favor of Sun Optics ............................................................................................... 17

D.    Sun Optics Has Demonstrated that Public Policy Weighs in Favor of Granting a Preliminary Injunction..........................................................................19

IV.    **CONCLUSION** ...............................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**PAGE**

<u>CASES</u>

*Abbott Labs. v. Andrx Pharms., Inc.*,
    452 F.3d 1331 (Fed. Cir. 2006) ........................................................................16

*Amini Innovation Corp. v. Anthony California, Inc.*,
    439 F.3d 1365, (Fed. Cir. 2006) .......................................................................10

*Berry Sterling Corp. v. Prescor Plastics, Inc.*,
    122 F.3d 1452 (Fed. Cir. 1997) ........................................................................12

*Bush Industries, Inc. v. O'Sullivan Industries, Inc.*,
    772 F. Supp. 1442 (D. Del. 1991) ......................................................................9

*Cargill, Inc. v. Canbra Foods, Ltd.*,
    476 F.3d 1359 (Fed. Cir. 2007) ..........................................................................5

*Christiana Indus. v. Empire Elecs., Inc.*,
    2006 U.S. Dist. LEXIS 54210 (D. Mich. 2006) ...............................................16

*Gorham Co. v. White*,
    81 U.S. 511 20 L. Ed. 731 (1871) ...............................................................10, 15

*Impax Labs., Inc. v. Aventis Pharms. Inc.*,
    468 F.3d 1366 (Fed. Cir. 2006) ..........................................................................5

*KangaROOS U.S.A., Inc. v. Caldor, Inc.*,
    778 F.2d 1571 (Fed. Cir. 1985) ..........................................................................7

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
    988 F.2d 1117 (Fed. Cir. 1993) ..........................................................................9

*Lee v. Dayton-Hudson Corp.*,
    838 F.2d 1186 (Fed. Cir. 1988) ..........................................................................9

*Li Second Family L.P. v. Toshiba Corp.*,
    231 F.3d 1373 (Fed. Cir. 2000) ......................................................................7, 8

*Nilssen v. Osram Sylvania, Inc.*,
    440 F. Supp.2d 884 (N.D. Ill. 2006)............................................................6, 7, 8

*Unique Functional Prods. v. Mastercraft Boat Co.*,
    82 Fed. Appx. 683 (Fed. Cir. 2003) ..................................................................9

## **OTHER AUTHORITIES**

*Chisum on Patents*, § 20.04[1][f][I] (1999)................................................................19

## I.     INTRODUCTION

Sun Optics Inc. ("Sun Optics") filed the present Motion for Preliminary Injunction to stop FGX International Inc. ("FGX") from selling products that infringe Sun Optics's U.S. Patent Nos. D525,427 and D527,180 (the "'427 patent" and "'180 patent" respectively).  Although FGX unabashedly copied the designs of the '427 and '180 patents, FGX argues in its Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction ("Opposition") that the Court should not issue a preliminary injunction because the patents at issue are 1) invalid due to a violation of the "on sale bar" in 35 U.S.C. § 102, 2) unenforceable for inequitable conduct for failure to disclose the alleged sales giving rise to the on sale bar, 3) not infringed, and 4) that Sun Optics suffers no irreparable harm because FGX and Sun Optics do not compete in the market where FGX sells its infringing products.  As demonstrated below, each of these arguments at best is unsupported by any evidence, and at worst is an attempt to intentionally mislead the Court.

## II.     STATEMENT OF FACTS

The "Clear Tube" merchandising program designed and sold by Sun Optics includes numerous different designs for reading glass cases.  [Second Declaration of Bruce Raile in Support of Plaintiff's Motion for a Preliminary Injunction ("Second Raile Decl."), at p. 1, ¶ 3.]  While the Clear Tube merchandising program includes cases that embody the designs of the '427 and '180 patents, many other designs for reading glass cases are also used as part of the Clear Tube merchandising program.  [*Id.*]  Indeed, Sun Optics intentionally varies the designs of the reading glass cases in the Clear Tube merchandising program for different types of retailers, or different quality levels, or different price points.  [*Id.*]

For example, the original reading glass cases used in the Clear Tube program sold to Rite Aid were completely transparent with no opaque portion, no silver band, or silver top.  [*Id.* at p. 2, ¶ 4.]  A picture of the design originally sold to Rite Aid is attached as Exhibit A to the Second

1

Raile Declaration. The designs of the '427 and '180 patents, which are marketed and sold to the "optical market," were developed as an intentional contrast to the designs that were originally sold to Rite Aid. [*Id.*]

As indicated above, Sun Optics uses a design different from the designs of the '427 and '180 patents in the Clear Tube program that Sun Optics sells to Rite Aid. Sun Optics did not sell it patented designs to Rite Aid, or to anyone else, prior to May 20, 2003. [*Id.* at p. 2, ¶ 5.] The first purchase order by Sun Optics, which was to its manufacturer in China, for its patented designs was made on September 16, 2003. [*Id.* at p. 2, ¶ 6.] That purchase order was shipped from China on September 30, 2003. [*Id.*] The first invoice to a customer in the United States for the patented designs is dated October 9, 2003. [*Id.*]

Contrary to the assertions made by FGX, Sun Optics has not attempted to bring attention to this lawsuit through the use of media or the press. As of April 12, 2007, Sun Optics has spoken to only one news reporter regarding the present lawsuit. [*Id.* at p. 2, ¶ 7.] Sun Optics spoke to this reporter only after the reporter had called and left two messages at Sun Optics inquiring about the present lawsuit. [*Id.*] Sun Optics has not sought out or initiated any media coverage or press concerning its lawsuit against FGX. [*Id.*] Sun Optics, to date, has not even published a standard press release regarding the instant litigation. [*Id.*] FGX's infringing products are causing significant harm to Sun Optics. [*Id.* at p. 2, ¶ 8.] Sun Optics initiated this lawsuit to stop this harm, and would have sued FGX to stop this harm even if FGX was not in the process of an IPO. [*Id.*]

Sun Optics sells its patented designs in the "optical market." [*Id.* at p. 3, ¶ 9.] The optical market includes establishments with opticians (i.e. specialized technician), optometrists, and ophthalmologists (i.e. doctors). [*Id.*] The establishments in the optical market are typically either independent offices, or chains. [*Id.*] Both the chains and the independent offices compete in the optical market, offering the same types of goods and services, including doctors on the

premises.  [*Id.*]  Consequently, Sun Optics's products sold under the '427 and '180 patents compete directly with FGX's Accused Products being sold in the optical market.  [*Id.*]

## III.    ARGUMENT

### A.    Sun Optics Is Likely to Prevail on the Merits of Validity and Infringement

The '427 and '180 patents are presumed to be valid, and FGX has failed to raise even a substantial question[1] regarding the validity of these patents.  FGX's argument that the '427 and '180 patents are invalid because the designs were sold more than one year prior to the priority date of the patents is unsupported and contrary to the facts.  On the issue of infringement, FGX has copied the designs of the '427 and '180 patents so closely that it must argue one standard when comparing the designs to the prior art, and then argue a different standard when comparing its Accused Products to the designs.  As demonstrated below, Sun Optics is likely to prevail on both validity and infringement.

### 1.    The '427 and '180 patents are valid

FGX argues that the '427 and '180 patents are not valid because the designs of those patents were sold by Sun Optics to Rite Aid more than one year before May 20, 2004, the priority dates of the patents.[2]  [Opposition, at pp. 7-9.]  Specifically, FGX argues that Sun Optics admits that it sells its Clear Tube merchandising program to Rite Aid, and admits that the Clear

---

[1] In footnote 7 of its Opposition, FGX quotes Sun Optics's Memorandum out of context to suggest that Sun Optics proposed the inaccurate standard of "clear and convincing evidence" as the burden that FGX must meet to show that its invalidity arguments are sufficient to defeat the present Motion for Preliminary Injunction.  Placing the quoted phrase in context, Sun Optics argued that the clear and convincing burden adheres to FGX's invalidity contentions *at trial* and that "[a]t the preliminary injunction stage, Foster Grant must first come forward with evidence raising a 'substantial question of invalidity.'"  [Memorandum, at p. 5 (citations omitted).]  Thus, Sun Optics expressly set forth the same "substantial question of invalidity" burden in its Memorandum that FGX argues in its Opposition.  [*See* Opposition, at p. 7 n.7.]

[2] The application resulting in the '427 patent was filed on May 20, 2004, and the application resulting in the '180 patent is a continuation of the '427 patent.  [*See* Exhs. A and C to the Complaint, Dkt. No. 1.]  Thus, the § 102(b) on sale bar date for both the '427 and '180 patents is May 20, 2003.

Tube program "includes" the designs of the '427 and '180 patents. [*Id.* at p. 8 (citing Sun Optics's Memorandum, at pp. 2-3 and 13-14).] FGX also filed the Declaration of Donna Shuler ("Shuler Declaration"), a Rite Aid employee, to establish that Sun Optics has been selling "reading glasses in Rite Aid, on fixtures maintained by FGX" "since at least May 2003." [Declaration of Donna Shuler, Dkt. No. 27, at p. 1, ¶¶ 3 and 5.]  FGX combines these "admissions" by Sun Optics with these assertions in the Schuler Declaration to argue that the '427 and '180 patents are invalid for selling the patented products more than one year before the priority date of the '427 and '180 patents. [Opposition, at pp. 7-9.] FGX has also submitted the Declaration of Jack Flynn ("Flynn Declaration"), FGX's President, which similarly states that "Sun Optics sells reading glasses in Rite Aid, on fixtures maintained by FGX" and has done so "since at least May 20, 2003." [Flynn Decl., Dkt. No. 15, at p. 1, ¶¶ 2 and 4.]

The problem with this argument is that neither Sun Optics, Ms. Shuler nor Mr. Flynn states that ***the patented designs*** were sold to Rite Aid, before May 20, 2003. Indeed, the Shuler and Flynn Declarations were carefully crafted to state that Sun Optics merely sells "reading glasses" to Rite Aid to avoid saying that Sun Optics sells its patented designs to Rite Aid. Because "Sun Optics pays FGX to maintain and stock the fixtures with its reading glasses" and this arrangement "has been in place without any material change since at least May 20, 2003," [Shuler Decl., at p. 1, ¶¶ 4-5; Flynn Decl., at p. 1, ¶¶ 3-4], both Ms. Shuler and Mr. Flynn know that the reading glass cases Sun Optics sold to Rite Aid are completely different from the designs of the '427 and '180 patents. The reading glass cases sold to Rite Aid are completely clear, having no opaque bottom portion, no silver band in the middle, and no silver cap on top, to name a few obvious differences. [Second Raile Decl. at p. 2, ¶ 4, Exh. A.] The fact is that Sun Optics has ***did not*** sell the patented designs to Rite Aid prior to May 20, 2003. [*Id.* at p. 2, ¶ 5.] Consequently, Sun Optics's sales to Rite Aid could not possibly invalidate the '427 and '180 patents under the on sale bar of § 102(b). FGX's invalidity argument is contrary to facts that

FGX knows to be true and is entirely unsupported by the evidence of record.  FGX's fabricated invalidity argument does not raise a substantial question as to the validity of the '427 and '180 patents, and Sun Optics is likely to prevail on validity at trial.

### 2.    The '427 and '180 patents are enforceable

FGX argues that the '427 and '180 patents are unenforceable due to inequitable conduct by Sun Optics during the prosecution of the patents.  [Opposition, at pp. 9-12.]  "To hold a patent unenforceable due to inequitable conduct, there must be clear and convincing evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the U.S. Patent and Trademark Office ("PTO")." *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363-1364 (Fed. Cir. 2007) (citing *Impax Labs., Inc. v. Aventis Pharms. Inc.*, 468 F.3d 1366, 1374 (Fed. Cir. 2006)).  FGX has failed to present evidence on either of these two required elements sufficient to raise a substantial question as to the enforceability of the '427 and '108 patents.

FGX alleges inequitable conduct based on a failure to apprise the PTO of the alleged sales of the patented designs to Rite Aid more than one year before the priority date of the patents, and for "improperly attempt[ing] to amend its applications for the Patents-in-Suit to claim the benefit of an earlier filing."  [Opposition, at pp. 9-12.]  As with FGX's contentions of invalidity, neither of these arguments have merit.

First, FGX's assertion that Sun Optics sold the patented designs to Rite Aid prior to May 20, 2003, has been addressed above.  This assertion is unsupported and contrary to the undisputed facts of record.

Second, FGX's assertion that Sun Optics committed inequitable conduct by "improperly" attempting to amend the applications resulting in the '427 and '180 patents is nothing more than contrived attorney argument.  Sun Optics submitted Preliminary Amendments in the applications resulting in the '427 and '180 patents to relate the priority of the patents back to a provisional

application.  [*See* Declaration of Chad Nydegger, Exhs. A and B.]  The Examiner mailed Office Actions for both of these applications on November 18, 2005, indicating that no design patent can claim priority to a provisional application, and therefore, the amendments to the priority should be cancelled.  [*Id.* at Exhs. C and D.]  In response to these Office Actions, Sun Optics promptly cancelled the priority claims to the provisional application without further argument.  [*Id.* at Exhs. E and F.]  FGX does not allege that Sun Optics provided the Examiner with false factual information regarding the priority of the applications.  FGX also does not allege that Sun Optics failed to disclose material factual information regarding the priority of the applications.  FGX's claim of inequitable conduct is based solely on the fact that the Examiner rejected Sun Optics's preliminary amendment to the priority of the claims, nothing more.

FGX attempts to support this argument by citing phrases from cases with facts wholly inapposite to the facts of the present case.  First, FGX cites *Nilssen v. Osram Sylvania, Inc.*, 440 F. Supp.2d 884, 909 (N.D. Ill. 2006).  [Opposition, at p. 12.]  In *Nilssen*, from 1984 to 1992 the patentee claimed the same priority date of October 5, 1984, on several related applications.  440 F. Supp.2d at 908.  In 1993, the patentee filed another related application that claimed priority back to March 20, 1978.  *Id.*  A few days prior to filing this application with the new priority date, the patentee sent a letter to its licensee indicating that the patentee was filing a new application to try and cover a product that "may be considered as representing known art."  *Id.* The patentee went on to secure four patents with the earlier priority date.  *Id.*  The court found that the priority date of these later four patents was improper because the parent application did not adequately disclose the subject matter claimed in the patents.  The court went on to find that the combination of the letter sent immediately prior to the sudden change in priority, after

consistently claiming the same priority date for 8 years, was sufficient to establish an intent to deceive the PTO, and thus constituted inequitable conduct.[3]

FGX also cites to *Li Second Family L.P. v. Toshiba Corp.*, 231 F.3d 1373, 1380 (Fed. Cir. 2000), "holding that 'an applicant's misrepresentation that he is entitled to the benefit of an earlier filing date is highly material' and finding inequitable conduct where applicant made affirmative assertions of an effective filing date without informing the PTO that the Examiner and Board of Appeals had rejected the same arguments that had been made earlier with respect to the prosecution of an earlier patent." [Opposition, at p. 12.]  There are no allegations that Sun Optics had previously made an attempt to relate any design patent to a provisional patent, and then tried to do so again without telling the Examiner of the prior failed attempt.  This case is simply not applicable to the facts at hand.

Last, FGX cites to *KangaROOS U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1576 (Fed. Cir. 1985), for the proposition that "[i]f the claim for priority met the elements of fraud, or was so grossly negligent as to support an inference of fraud or inequitable conduct, lapse on the part of the examiner does not excuse the applicant." [Opposition, at p. 12.]  In *KangaROOS*, the patentee related the priority of a utility patent back to a design patent.  778 F.2d at 1572.  The district court granted summary judgment of inequitable conduct, finding that the assertion of priority to overcome the "most pertinent prior art reference" was so grossly negligent that an intent to deceive the PTO could be inferred as a matter of law.  *Id.* at 1572-73.

The forgoing cases are inapposite to the facts of the present case.  First, in each of the foregoing cases the patentee succeeded in obtaining an inappropriate priority date.  Sun Optics cancelled its amendment to obtain an earlier priority date.  Second, in each of the cases the

_____

[3] The *Nilssen* court made similar findings with regard to three other patents and another letter sent shortly before priority for those patents was related back further than prior related patents. 440 F. Supp.2d at 909.

7

patentee sought an earlier priority date to overcome or cover a specific prior art reference or product. There is no evidence that Sun Optics sought an earlier priority date to overcome any specific reference.[4] Third, the finding of inequitable conduct in each of the cases required evidence that the patentee knew or should have known that the specific claim to priority was inappropriate, and therefore sought to mislead the PTO by claiming the priority. *See Li Second Family*, 231 F.3d at 1377 (finding inequitable conduct in part because the same arguments had been previously rejected by the Board of Appeals); *Nilssen*, 440 F. Supp.2d at 908 (finding inequitable conduct in part because the patentee suddenly claimed an earlier priority date after claiming the same priority date for related applications for eight years); *KangaROOS*, 778 F.2d at 1577 (vacating a finding of inequitable conduct on summary judgment and remanding because the district court did not allow the patentee to introduce evidence on the issue of intent). FGX has pointed to no evidence that Sun Optics intended to deceive the PTO because it knew or should have known that the specific claim for priority it sought, and later cancelled, was not appropriate. For at least these reasons, the cases cited by FGX are inapposite to the facts of the present case. There simply is no inequitable conduct here, and the '427 and '108 patents are enforceable.

### 3. FGX's Accused Products infringe the '427 and '180 patents

#### a) It is not error to consider Sun Optics's commercial embodiments of the '427 and '180 patents

FGX accuses Sun Optics of "attempt[ing] to confuse the Court" by "improperly incorporate[ing] an alleged commercial product into its papers." [Opposition, at p. 13.] First, a comparison of FGX's Accused Products with Sun Optics's commercial embodiments is convincing evidence of FGX's bad faith copying. Second, the Federal Circuit has long held that

---

[4] FGX's allegations that Sun Optics sought the earlier priority date to overcome the alleged § 102(b) on sale bar are inapplicable because Sun Optics's sales to Rite Aid did not give rise to an on sale bar for the reasons set forth above.

"[w]hen no significant distinction in design has been shown between the patent drawing and its physical embodiment, it is not error for the court to view them both, and to compare the embodiment of the patented design with the accused devices." *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1189 (Fed. Cir. 1988); *accord Unique Functional Prods. v. Mastercraft Boat Co.*, 82 Fed. Appx. 683, 687 (Fed. Cir. 2003*); L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125-1126 (Fed. Cir. 1993) ("When the patented design and the design of the article sold by the patentee are substantially the same, it is not error to compare the patentee's and the accused articles directly, indeed, such comparison may facilitate application of the *Gorham* criterion of whether an ordinary purchaser would be deceived into thinking that one were the other." (internal citation omitted)); *Bush Indus., Inc. v. O'Sullivan Indus., Inc.*, 772 F. Supp. 1442, 1451 (D. Del. 1991) ("Moreover, although we realize that the relevant comparison for the accused O'Sullivan stand is with the Bush patent design, and not with the Bush commercial model, because of the similarity between the '096 patent and the Bush CT 256 printer stand, such a comparison of commercial models is helpful." (internal citations omitted)). FGX alleges no difference in Sun Optics's commercial embodiments of the '427 and '180 and the designs of those patents because there is none. Consequently, it is proper, and indeed helpful, for the Court to compare Sun Optics's commercial embodiments with FGX's accused products. Nonetheless, regardless of whether the Court compares the Accused Products to the claims of the '427 and '180 patents or to Sun Optics's commercial embodiments thereof, the result is clear infringement.

      **b)**        **An ordinary purchaser would be induced to purchase FGX's Accused Products supposing them to be Sun Optics's patented design**

In arguing that the Accused Products do not meet the "ordinary observer" test, FGX marches through six elements, comparing them one by one. [Opposition, at pp. 17.] Although FGX addresses six elements in its section devoted to the ordinary observer test, FGX argues that

the Accused Products differ in only three of these elements, the shape of the cross section, a flat bottom, and a rounded top. [Opposition, at pp. 14 and 16-17.] FGX apparently concedes, as it must, that the opaque bottom portion, band in the middle, and transparent upper portion are exact copies of the designs in the '427 and '180 patents. Nonetheless, this element-by-element test has been denounced by the Federal Circuit as improper for determining whether an accused product meets the ordinary observer test. *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006) ("Specifically, as noted above, the trial court mistakenly analyzed each element separately instead of analyzing the design as a whole from the perspective of an ordinary observer."). The ordinary observer test is satisfied if "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Id.* at 1371 (quoting *Gorham Co. v. White*, 81 U.S. 511, 528, 20 L. Ed. 731 (1871)). The ordinary observer test is clearly satisfied by FGX's Accused Products.

Reading glasses sold in cases like those of the '427 and '180 patents are typically bought as an "impulse" purchase of relatively low value, usually in the range of $10-$25. [Second Raile Decl., at p. 3, ¶ 11.] As such, an ordinary purchaser will not typically pay significant attention to minute differences between reading glass cases. To the contrary, ordinary purchasers of reading glasses sold inside cases are likely to pay close attention to the style of the reading glasses inside the cases, which detracts from the attention the purchaser is likely to give to the details of the case. Consequently, ordinary purchasers are not likely to notice the difference between an "oval" and a "racetrack" shaped cross section of the case, or to a slight difference in the curvature of the top of the case, as argued by FGX. [Opposition, at pp. 14 and 16-17.] To the contrary, an ordinary purchaser is going to notice the general shape of the case, the opaque bottom portion, the band around the middle, the transparent upper portion, and the rounded cap

on top.  Comparing the designs of the Accused Products and the '427 and '180 patents as a whole, as required by the ordinary observer test, results in the inescapable conclusion that the ordinary observer test is satisfied by the Accused Products.

> ### c) FGX's Accused Products have each of the points of novelty of the designs of the '427 and '180 patents

Despite FGX's strained comparisons of the designs of the '427 and '180 patents to the prior art, the designs of the '427 and '180 patents have at least two points of novelty: 1) the band visually separating the opaque and transparent portions of the case, and 2) the rounded cap on the end of the transparent portion.  Both of these points of novelty clearly are found in FGX's Accused Products.

> ### (1) The band visually separating the opaque and transparent portions of the case is a point of novelty and is found in FGX's Accused Products

Unable to argue that FGX's accused products do not have the band visually separating the opaque and transparent portions of the case, FGX instead argues that the band is not a point of novelty because it is functional and is found in the prior art.  Neither of these strained arguments can withstand scrutiny.

The band is not functional.  FGX argues that the band is "purely functional" because "[t]he band is used to conceal the overlap between the plastic halves of the eyeglass case where the transparent top portion meets the opaque bottom potion."  [Opposition, at pp. 18-19.]  In other words, FGX argues that the band is functional because it changes the visual appearance of the product.  This argument is silly.

FGX correctly recites the following factors used to determine whether a design is functional: "whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not

11

dictated by function." [Opposition, at p. 19 (quoting *Berry Sterling Corp. v. Prescor Plastics, Inc.*, 122 F.3d 1452, 1455 (Fed. Cir. 1997)).] FGX, however, provides no analysis or argument on these factors, instead merely stating in conclusory fashion that "they all weigh towards the band serving a functional purpose." [*Id.*] Analysis of these factors indicates otherwise.

First, FGX offers no evidence that the band of the '427 and '180 patents is "the best design." Consequently this factor weighs against a finding of functionality.

Second, many alternative designs exist that would not adversely affect the utility of the case. For example, a case with an opaque bottom and clear top, but without a band, functions just as well to contain reading glasses as a case with a band. Further, if the opaque portion of the case is the "female" connector, then the overlap of the upper and lower portions will be "concealed" without a band. A completely clear case also functions to contain glasses just as well as one that has a band. In sum, innumerable alternative designs exist that would not adversely affect the utility of the case, and this factor weighs against a finding that the band is functional.

Third, FGX has presented no evidence of advertising touting the band as having specific utility. Consequently, this factor also weighs in favor of finding no functionality.

Last, there are many elements in the designs and overall appearance that clearly are not dictated by function. The band, the opaque portion, and the cap on top of the case are just a few examples. This factor weighs in favor of finding no functionality. FGX's argument that the band is functional simply is not credible.

The band in the designs of the '427 and '180 patents is also not found in the prior art. FGX argues that the band of the '427 and '180 patents is found in Sun Optics's U.S. Patent No. 7,188,739 ("'739 patent"), U.S. Patent No. D446,389 to Zhou and Shunkao ("Zhou"), and a picture taken from an Initial Disclosure Statement ("IDS") in the prosecution history of Sun Optics's provisional application.

The case depicted in the '739 patent is entirely transparent, as shown below:



Because the case is entirely transparent, it does not disclose a band visually separating the opaque and transparent portions. The "band" referred to by FGX is not a "band" at all, but lines drawn to indicate the overlapping female and male elements used to couple the two portions of the case together. *See* '739 patent, at 5:25-38. The '739 patent simply does not disclose any band, let alone the band of the '427 and '108 patents.

The picture from the provisional application is not legible when reproduced, as seen in FGX's Opposition at page 16. The picture reproduced below is a picture of the same design depicted in the IDS of the provisional application and reproduced on page 16 of FGX's Opposition. [Second Raile Decl., at p. 2, ¶ 10, Exhibit B.]



As shown by the picture, this reading glass case has an "extenuated band" around the middle. The band is rounded and raised out from the body of the case. This "extenuated band"

is in contrast to the flat band that is flush with the body of the case in the '427 and '180 patents. Clearly the band of the '427 and '180 patents is distinguished from the "extenuated band" design.

Last, Zhou does not disclose the band of the '427 and '108 patents. Comparing the Zhou design to the design of the '180 patent, the bands in the two designs are different:



As shown by the figures, the band of Zhou does not contrast either the upper or lower portions of the case, and appears to be made from the same the material as both portions of the case. The band of the '427 and '180 patents, however, is an accent against the upper and lower portions of the case. Further, the band of the '427 and '180 patents is made from a different material than the upper and lower portions of the case, unlike the band of Zhou. Zhou does not disclose the band of the '427 and '180 patents.

In summary, the band in the designs of the '427 and '180 patents is not functional, is not found in the prior art, is a point of novelty, and is undisputedly copied in the Accused Products.

### (2)    The rounded cap is a point of novelty and is found in FGX's Accused Products

FGX concedes, as it must, that the rounded cap at the top of the transparent portion of the cases in the '427 and '180 patents is a point of novelty.  [Opposition, at p. 18.]  This point of novelty is found in FGX's Accused Products.  FGX argues that the rounded cap on the Accused Products is "substantially dissimilar" from the rounded cap in the designs of the '427 and '180 patents.  To the contrary, FGX's cap is substantially ***similar*** to the rounded cap in the designs of

the '427 and '180 patents.  Indeed, all the evidence demonstrates that FGX intentionally copied the designs of the '427 and '180 patents.

That the curvature of cap on the top of FGX's Accused Products is slightly different than that of the '427 and '180 patents is insufficient to escape a finding of infringement.  The Supreme Court has rejected the argument that such minute differences in the designs can avoid a finding of infringement.  In *Gorham Co. v. White*, 81 U.S. 511, 530 (1871), the Supreme Court found infringement despite slight differences between the patented designs and the accused products stating, "Unless, therefore, the patent is to receive such a construction that the act of Congress will afford no protection to a designer against imitations of his invention, we must hold that the sale by the defendant of spoons and forks bearing the designs patented to White in 1867 and 1868 is an infringement of the complainant's rights."  Similar to the defendant in *Gorham*, FGX has deliberately copied Sun Optics's designs and *de minimus* deviations in the Accused Products will not free FGX from the consequences of its infringing actions.

**B. Sun Optics Has Demonstrated that It Will Be Irreparably Harmed if FGX Continues To Infringe the '427 and '180 Patents**

**1. Sun Optics is entitled to a presumption of irreparable harm**

Sun Optics is entitled to a presumption of irreparable harm in light its strong showing of likely infringement and validity of the '427 and '180 patent.  Contrary to the assertions of FGX, the Supreme Court in *eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837 (U.S. 2006), did not address whether a patentee is entitled to a presumption of irreparable harm upon a strong showing of infringement and validity.  In *eBay* the Supreme Court merely overturned the Federal Circuit's "general rule that courts will issue permanent injunctions against patent infringement absent exceptional circumstances."  126 S. Ct. at 1839.  The Supreme Court ruled that the traditional four-factor test must be used to determine whether an injunction should issue under the principles of equity.  *Id.* at 1841.  The Supreme Court did not address the Federal Circuit's holdings that when applying the four-factor test a presumption of irreparable harm attaches after

a strong showing on infringement and validity. *See Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006) (implying that a presumption of irreparable harm still exists after the *eBay* decision by finding that the patentee "is no longer entitled to a presumption of irreparable harm" because the patentee "has not established a likelihood of success on the merits"); *see also Christiana Indus. v. Empire Elecs., Inc.*, 2006 U.S. Dist. LEXIS 54210 (D. Mich. 2006) ("Defendant asserts that in *Ebay, Inc. v. Mercexchange, LLC*, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006), the Supreme Court eliminated the presumption of irreparable harm for preliminary injunctions upon a showing of validity and infringement. Plaintiff argues, and this Court agrees, that *Ebay* did not invalidate the presumption. The *Ebay* Court addressed the proper analysis for permanent injunctive relief. It held that courts err by categorically granting permanent injunctive relief on a showing of infringement and validity, without analyzing the traditional four factors for injunctive relief."). Thus, Sun Optics is entitled to a presumption of irreparable harm.

## 2. Sun Optics has demonstrated irreparable harm in addition to the presumption

FGX argues that Sun Optics will not suffer irreparable harm because any "loss of sales, drop in price, and reduction in revenue are all easily quantifiable forms of damages and, without more, cannot constitute irreparable harm." [Opposition, at p. 21.] FGX, however, has no response to the irreparable harm that FGX's infringement causes to Sun Optics due to the nature of the industry. As explained in Sun Optics's Memorandum, retailers that carry FGX's non-infringing products typically are precluded by their contract with FGX from carrying Sun Optics's patent products so long as FGX offers its Accused Products. [Memorandum, at pp. 14-15.] Thus, by simply being allowed to offer its Accused Product to customers, FGX can both preclude Sun Optics from selling its patented products to FGX's customers, and simultaneously avoid incurring damages because the Accused Products are not being sold. This clearly irreparably harms Sun Optics, and FGX has offered no argument to the contrary.

FGX also argues that Sun Optics will not be irreparably harmed because FGX "only sells the allegedly infringing products to doctors' offices, and has no intent of selling these products in Plaintiff's distribution network." [Opposition, at p. 21.] The Declaration of Alec Taylor, however, actually states that "[t]he reading glass cases at-issue in this matter are sold by FGX *almost* exclusively to doctor's offices." [Taylor Decl., at p. 2, ¶ 8 (emphasis added).] Mr. Taylor goes on to testify that of the $1,000,000 of infringing product it anticipates selling this year, "*[s]ubstantially* all of those sales are made to doctor's offices." [*Id.* at p. 2, ¶ 9 (emphasis added).] FGX does not indicate to whom they also sell the Accused Products other than doctor's offices. Finally, Mr. Taylor states that it is his "understanding that Sun Optics is not pursing the doctor's office market where FGX's goods are being marketed." [*Id.* at p. 3, ¶ 11.]

Mr. Taylor's "understanding" is wrong. Doctor's offices form part of the "optical market," which is the very market where Sun Optics sells its patented designs. [Second Raile Decl., at p. 2, ¶ 9.] Thus, FGX's Accused Products are competing directly in the optical market with Sun Optics's patented products. [*Id.*]

Finally, FGX makes the conclusory assertion that "the unnamed 'retailers' that won't now listen to Plaintiff's 'pitch' are not a result of FGX's allegedly infringing activities." [Opposition, at p. 22.] This unsupported attorney argument can not rebut the ***evidence*** submitted by Sun Optics it is being harmed by FGX's infringing activities. Sun Optics has overwhelming demonstrated that it is being irreparably harmed by FGX's infringing activities.

### C.   Sun Optics Has Demonstrated that the Balance of the Hardships Tips in Favor of Sun Optics

Any hardships that FGX will incur from a preliminary injunction are *de minimus*.

First, FGX argues that Sun Optics brought the present suit "merely in an attempt to strong-arm a settlement out FGX prior to FGX's going public." Sun Optics brought the present lawsuit to stop the harm that FGX's infringing activities are causing Sun Optics, and would have brought the present lawsuit even if FGX was not preparing for an IPO. [Second Raile Decl., at p.

2, ¶ 8.]  The timing of this lawsuit has been dictated by FGX's own actions.  FGX presumptively knew that the designs it copied were patent pending because Sun Optics's products have been clearly marked "patent pending" since at least January of 2005.  [Second Raile Decl., at p. 3, ¶ 12.]  FGX also certainly knew that it was preparing to go public.  Despite having the foregoing knowledge, FGX apparently decided to copy and launch its infringing products at the same time it announced it was going public.  Any alleged hardship from "explain[ing] issues to investors" and "loss of reputation," [Opposition, at p. 22], is the result of copying Sun Optics's patented products and would exist regardless of whether an injunction issues.  These "hardships" argued by FGX are not the result of a preliminary injunction, but a result of the present lawsuit and will continue to exists regardless of whether an injunction issues.  Consequently, the Court should not consider these "hardships" in deciding whether to issue a preliminary injunction.

Similarly, FGX's "belief" that Sun Optics "has garnered press and informed reporters of the lawsuit in an effort to increase the pressure of this suit" is unfounded.  As set forth above, Sun Optics has not attempted to garner media attention and has not even sent out a standard press release regarding the present litigation.  [Second Raile Decl., at p. 2, ¶ 7.]  FGX's "beliefs" regarding the press are both unfounded and irrelevant to whether an injunction should issue.

FGX also argues that it will incur hardship because it will have to "sit on inventory" should a preliminary injunction issue.  [Opposition, at p. 22.]  However, in the same paragraph FGX states that it "expects to ship substantially less than $1,000,000 worth of the products at issue in this case in 2007."  [*Id.*]  Given the relatively small amount of product that FGX "expects" to ship during the entire year, it is inconsistent for FGX to argue that it will incur "hardship" to have to sit on whatever portion of that product that has already been shipped and not yet sold.  Further, this "hardship" is only monetary in nature and can be adequately compensated by bond should FGX ultimately prevail in the present case.  If "sitting on inventory" were sufficient to defeat a motion for preliminary injunction, no defendant selling

18

infringing products would ever be preliminarily enjoined.  FGX has not shown that it will incur any significant hardship if a preliminary injunction issues.

As set forth in Sun Optics's Memorandum at pages 15-16, FGX must show that the balance of the hardships tips ***decidedly*** in its favor to avoid a preliminary injunction. [Memorandum, at pp. 15-16 (citing 7 Donald S. Chisum, *Chisum on Patents*, § 20.04[1][f][I] (1999) ("As to comparative hardship, the court will usually grant relief unless the balance tips decidedly in favor of the defendant.")).]  FGX has simply failed to show that it will incur any significant hardship should a preliminary injunction issue.  On the other hand, the hardship flowing from the irreparable harm that Sun Optics will continue to incur if a preliminary injunction does not issue is substantial.  Far from tipping "decidedly" in favor of FGX, the balance of the hardships tips in favor of granting a preliminary injunction.

### D.    Sun Optics Has Demonstrated that Public Policy Weighs in Favor of Granting a Preliminary Injunction

FGX's arguments that Sun Optics is "gaming the system" are completely contrary to the undisputed facts of this case.  First, Sun Optics has not "attempted to put improper pressure on FGX, knowing about its initial public offering, and trying to garner press about this lawsuit[.]"[5] [*See* Opposition, at p. 23]  As established above, Sun Optics has not initiated contact with a single reporter or member of the media.  FGX's "belief" to the contrary is unfounded and contrary to the facts.

Second, Sun Optics did not "fail[] to disclose its own prior sales to the Office while prosecuting its patent."  [Opposition, at p. 23.]  As established above, the alleged "prior sales"

---

[5] FGX also alleges that Sun Optics "engaged in judge shopping because it didn't like its random assignment[.]"    FGX offers no factual evidence or additional argument in support of this allegation.  This argument, however, forms the basis of FGX's Motion to Dismiss that will be argued concurrently with the present motion.  Sun Optics will rebut this allegation in its Opposition to FGX's Motion to Dismiss, due April 18, 2007.  Nonetheless, should FGX attempt to raise this unsupported allegation in connection with the present motion, Sun Optics reserves the right to rebut any such arguments.

were not of the designs of the '427 and '180 patents. Despite **_knowing_** that Sun Optics's sales to Rite Aid were of a design entirely different than those of the '427 and '180 patents, FGX has misrepresented to this Court that those sales anticipate the '427 and '180 patents under § 102(b).

Third, Sun Optics did not "falsely attempt[] to gain the benefit of an earlier filing date." Again as explained above, Sun Optics merely attempted to relate a design patent to a provisional application. Sun Optics promptly cancelled the amendment in response to the examiner's rejection. FGX points to no false representation of fact or other culpable conduct by Sun Optics on this issue. Sun Optics did not commit inequitable conduct.

FGX having argued no public policy concern in its favor that is supported by the facts, the general public policies in favor of sustaining the patent system tip this factor in favor of granting an injunction.

## IV.    <u>CONCLUSION</u>

Based on the foregoing, Sun Optics respectfully requests that the Court grant its motion for a preliminary injunction and preliminarily enjoin FGX from selling its Clear Tube products that allegedly infringe the '429 and '180 patents.

Respectfully submitted this 12th day of April, 2006.

CONNOLLY BOVE LODGE & HUTZ, LLP

_/s/ R. Eric Hutz_
R. ERIC HUTZ (#2702)
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
Phone (302) 658-9141
ehutz@cblh.com

Attorneys for Plaintiff
Sun Optics, Inc.