R. ERIC HUTZ (#2702)
**CONNOLLY BOVE LODGE & HUTZ, LLP**
Attorneys for Plaintiff
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141

LARRY R. LAYCOCK (*motion to appear pro hac vice pending*)
CHAD E. NYDEGGER (*motion to appear pro hac vice pending*)
**WORKMAN NYDEGGER**
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT 84111
Telephone: (801) 533-9800

Attorneys for Plaintiff
SUN OPTICS, INC.

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE

| | |
|---|---|
| SUN OPTICS, INC., a Utah Corporation, | Civil Action No. _ 1:07cv137-SLR__ |
| Plaintiff, | |
| v. | **SECOND DECLARATION OF BRUCE RAILE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| FGX INTERNATIONAL, INC., a Delaware Corporation, | |
| Defendant. | Filed April 12, 2007 |

Bruce Raile, declarant herein, declares as follows:

  1.   I am a citizen of the United States, am over the age of 21, and am competent to testify to the matters set forth herein.

  2.   I am the President, CEO, and co-founder of Sun Optics, Inc. ("Sun Optics"), Plaintiff in the above-captioned matter.

  3.   The "Clear Tube" merchandising program designed and sold by Sun Optics includes numerous different designs for reading glass cases. While the Clear Tube

merchandising program includes cases that embody the designs of the '427 and '180 patents, many other designs for reading glass cases are also used as part of our Clear Tube merchandising program. Indeed, Sun Optics intentionally varies the designs of the reading glass cases in the Clear Tube merchandising program for different types of retailers, or different quality levels, or different price points.

4.  For example, the original reading glass cases used in the Clear Tube program sold to Rite Aid were completely transparent with no opaque portion, no silver band, or silver top. A picture of this design originally sold to Rite Aid is attached hereto as Exhibit A. The designs of the '427 and '180 patents, which are marketed and sold to the "optical market," were developed as an intentional contrast to the designs that were originally sold to Rite Aid.

5.  Sun Optics did not sell reading glass cases embodying the designs of the '427 and '180 patents to Rite Aid, or to anyone else, prior to May 20, 2003.

6.  The first purchase order by Sun Optics, which was to its manufacturer in China, for reading glass cases that embody the designs of the '427 and '180 patents was made on September 16, 2003. That purchase order was shipped from China on September 30, 2003. The first invoice to a customer in the United States for products that embody the designs of the '427 and '180 patents is dated October 9, 2003.

7.  Sun Optics has not attempted to bring attention to this lawsuit through the use of media or the press. As of April 12, 2007, Sun Optics has spoken to only one news reporter regarding the present lawsuit. Sun Optics spoke to this reporter only after this reporter had called and left two messages at Sun Optics inquiring about the present lawsuit. Sun Optics has not sought out or initiated any media coverage or press concerning its lawsuit against FGX. Sun Optics, to date, has not even published a standard press release regarding the instant litigation.

8.  FGX's infringing products are causing significant harm to Sun Optics. Sun Optics initiated this lawsuit to stop this harm, and would have sued FGX to stop this harm even if FGX was not in the process of an IPO.

9. Sun Optics sells products embodying the designs of the '427 and '180 patents in the "optical market." The optical market includes establishments with opticians (i.e. specialized technician), optometrists, and ophthalmologists (i.e. doctors). The establishments in the optical market are typically either independent offices, or chains. Both the chains and the independent offices compete in the optical market, offering the same types of goods and services, including doctors on the premises. Consequently, Sun Optics's products sold under the '427 and '180 patents compete directly with FGX's Accused Products being sold in the optical market.

10. A picture of the "extenuated band" design used by Sun Optics and shown in the prosecution history of Sun Optics's provisional application 60/433,724 is attached hereto as Exhibit B.

11. Reading glasses sold in cases like those of the '427 and '180 patents are typically bought as an "impulse" purchase of relatively low value, usually in the range of $10-$25.

12. Sun Optics has been marking its products sold embodying the designs of the '427 and '180 patents as "patent pending" since at least January of 2005.

I have read the foregoing declaration and declare under penalties of perjury that the contents thereof are true and correct of my own personal knowledge.

Dated this _12_ day of April, 2007.

_____
BRUCE RAILE

**EXHIBIT A**



**EXHIBIT B**

