IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SUN OPTICS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-137-SLR |
| | ) | |
| FGX INTERNATIONAL INC., | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

**GREENBERG TRAURIG, LLP**
Donald J. Detweiler (I.D. #3087)
Sandra G. M. Selzer (I.D. #4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
302-661-7000
*detweilerd@gtlaw.com*
*selzers@gtlaw.com*

*Attorneys for FGX International, Inc*

**GREENBERG TRAURIG, LLP**
Adam B. Landa
200 Park Avenue
New York, NY 10166
212-801-9200

- and -

Steven J. Wadyka
1750 Tysons Boulevard, 12th Floor
McLean, VA 22102
703-749-1300

*Attorneys for Defendant,
FGX International, Inc.*

Dated: Wilmington, Delaware
April 27, 2007

**TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 1

PRELIMINARY STATEMENT ........................................................................... 1

SUMMARY OF ARGUMENT ............................................................................ 3

CONCISE STATEMENT OF FACTS ................................................................... 4

    A.    FGX's Reading Glass Contracts ........................................................... 4

    B.    FGX's Private Eyes Fixture ................................................................. 5

ARGUMENT ............................................................................................... 6

    A.    Preliminary Injunction Is A Drastic And Extraordinary Remedy. ..................... 6

    B.    Plaintiff Has Failed To Demonstrate, And Cannot Demonstrate, That It Is Reasonably Likely To Succeed On The Merits. ......................................... 7

        1.    Terms in Claim 1 Must Be Construed As They Would Be Understood By A Person Of Ordinary Skill In The Art At The Time The Patent Application Was Filed .................................................... 8

            (a)    A Court Must Resolve The Meaning Of Each Disputed Claim Term Before Considering Whether An Accused Product Infringes the Patent .......................................... 8

            (b)    Construing "Support Member" ...................................... 8

            (c)    Construing "Display Member ... Openings" ............................ 10

            (d)    Construing "Display Member ... Configured To Permit A Consumer To View" ................................................. 11

        2.    The Accused Product is Missing Elements of Claim 1 and Therefore Does Not Infringe ................................................ 12

            (a)    The Absence Of Even One Element Of A Patent Claim Is Fatal To A Claim Of Infringement .................................. 12

            (b)    It is Error to Compare the Patentee's Product to the Accused Product; Therefore, Pictures of Plaintiff's Commercial Eyeglass Display Have No Place in its Brief .......... 13

            (c)    FGX's Accused Product ............................................. 14

(d)    FGX's Product Does Not Comprise The Claimed "Support Member" ...................................................................................... 15

3.    FGX's Product Does Not Comprise The Claimed "Openings" ................ 16

4.    FGX's Product Does Not Permit A Consumer To View All Of The Eyeglasses As Required By The Claim .............................................. 17

5.    Plaintiff Should be Precluded from Arguing that the Shape at the Bottom of the Eyeglass Cases is a "Substantially Flat Surface" ..................................................................................................... 18

6.    Plaintiff's Inequitable Conduct Bars Enforcement of the '739 Patent .......................................................................................................... 19

C.    Plaintiff Has Failed To Demonstrate, And Cannot Demonstrate, Irreparable Harm ........................................................................................... 20

1.    Plaintiff is Not Precluded from Selling its Product to FGX's Customers ...................................................................................................... 21

2.    Plaintiff's Claims Regarding the CVS Account are Without Basis and False ............................................................................................... 23

D.    Plaintiff Has Failed To Demonstrate, And Cannot Demonstrate, That The Balance Of Hardships Tip In Its Favor .......................................................... 24

E.    Plaintiff Has Failed To Demonstrate, And Cannot Demonstrate, That The Public Interest Weighs In Favor Of Such Extraordinary Relief. .................. 24

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

## Federal Cases

Abbott Labs. v. Andrx Pharms., Inc., 452 F.3d 1331 (Fed. Cir. 2006) ........................................ 21

Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343 (Fed. Cir. 2001) ........ 6, 7, 12, 20

Amhil Enterprises Ltd. v. Wawa, Inc., 81 F.3d 1554 (Fed. Cir. 1996) ........................................ 13

AquaTex Industries, Inc. v. Techniche Solutions, 479 F.3d 1320 (Fed. Cir. 2007) .................... 13

Atari Games Corp. v. Nintendo of America, Inc., 897 F.2d 1572 (Fed. Cir. 1990) .................... 23

Buzzelli v. Minnesota Min. & Mfg. Co., 521 F.2d 1162, 1166 (6th Cir. 1975) ........................... 19

Cargill, Inc. v. Canbra Foods, LTD., 476 F.3d 1359 (Fed. Cir. 2007) ....................................... 20

Catalina Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277 (Fed. Cir. 2002) ............................ 14

Charles Greiner & Co. v. Mari-Med. Mfg., Inc., 962 F.2d 1031 (Fed. Cir. 1992) ...................... 12

Christiana Indus. v. Empire Elecs., Inc., 2006 U.S. Dist. Lexis 54210 (D. Mich. 2006) ............ 21

Conair Group, Inc. v. Automatik Apparate-Maschinenbau GmbH, 944 F.2d 862 (Fed.
    Cir. 1991) ............................................................................................................................ 13

eBay Inc. v. MercExchange, LLC, ___ U.S. ___, 126 S. Ct. 1837 (May 15, 2006) ............... 6, 21

Evident Corp. and Peroxydent Grp. v. Church & Dwight Co., Inc., 399 F.3d 1310
    (Fed. Cir. 2005) ................................................................................................................... 19

Illinois Tool Works, Inc. v. Grip-Pak, Inc., 906 F.2d 679 (Fed. Cir. 1990) ............................... 24

IMX, Inc. v. LendingTree, No. 03-1067, 2007 WL 62697 (D. Del. 2007) ................................... 20

Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566 (Fed. Cir. 1993) .......................................... 6

Int'l Visual Corp. v. Crown Metal Mfg. Co., 991 F.2d 768 (Fed. Cir. 1993) .............................. 14

Jeneric/Pentron, Inc. v. Dillon Company, Inc., 205 F.3d 1377 (Fed. Cir. 2000)..................... 7, 12

Johnson & Johnson Associates, Inc.v. R.E. Service Co., Inc., et al., 285 F.3d 1046
    (Fed. Cir. 2002)..................................................................................................................... 14

L.A. Gear, Inc. v. Thom McAN Shoe Co., 988 F.2d 1117 (Fed. Cir. 1993) ................................. 14

Markman v. Westview Instruments, 52 F.3d 967, 979 (Fed. Cir. 1995), aff'd, 517

U.S. 370, 116 S.Ct. 1384, 134 L. Ed. 2d 577 (1996) ................................................... 8

Nutrition 21 v. United States, 930 F.2d 867 (Fed. Cir. 1991) ........................... 7, 20, 21

Okor v. Sega of America, 30 Fed. Appx. 950 (Fed. Cir. 2002) .................................... 13

Paragon Podiatry Lab., Inc. v. KLM Labs. Inc., 984 F.2d 1182 (Fed.Cir. 1993) ......... 20

Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) ................................................ 8

Praxair, Inc. v. ATMI, Inc., 2005 WL 3159054 (D. Del. 2005) ................................... 13

Sofamor Danek Group, Inc. v. DePuy-Motech, Inc., 74 F.3d 1216 (Fed. Cir. 1996) .... 7, 8, 12, 13

Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co., 425 F.3d 1366 (Fed. Cir. 2005) ................................................................................................................ 13

Zenith Labs., Inc. v. Bristol-Myers Squibb Co., 19 F.3d 1418 (Fed. Cir. 1994) ........... 14

**Federal Regulations**

37 CFR 1.56 ................................................................................................................. 19

**Other Authorities**

National Law Journal, May 12, 2003, Vol. 25, No. 38, p. S8 ........................................ 6

## NATURE AND STAGE OF THE PROCEEDINGS

Defendant FGX International, Inc. ("FGX"), by and through its undersigned counsel, Greenberg Traurig, LLP, respectfully submits this memorandum of law in opposition to plaintiff, Sun Optics, Inc.'s ("Plaintiff" or "Sun Optics") April 5, 2007 motion for a preliminary injunction (the "Second PI Motion" (D.I. 23)) based on its proposed amended complaint (the "Proposed Complaint" (D.I. 21)).

Plaintiff filed the initial complaint in this matter together with a motion for a preliminary injunction (the "First PI Motion" (Dkt 2)) on March 8, 2007 alleging infringement of two design patents, U.S. Patent Nos. D525,427 and D527,180 (the "'427 patent," and the "'180 patent" respectively or together the "design patents"). On April 4, 2007, FGX moved to dismiss the above-captioned action (D.I. 12) and on April 5, 2007 filed an opposition to the First PI Motion ("First Opposition" (D.I. 20)). That same day, April 5, Plaintiff moved to amend its complaint to include a claim for infringement of a utility patent, U.S. Patent No. 7,188,739 (the " '739 patent" or the "utility patent" (D.I. 21)) and made the present Second PI Motion, which relates solely to the utility patent.  Plaintiff then filed its reply in further support of its First PI Motion on April 12, 2007 (the "First Reply" (D.I. 29)).

## PRELIMINARY STATEMENT

Plaintiff has not met its heavy burden of proof on any of the required elements for a preliminary injunction.

Plaintiff's '739 utility patent covers only a specifically defined "eyeglass display" - not all possible displays for holding eyeglasses.  To prove a likelihood of success on its infringement claim, Plaintiff must show that the accused product, FGX's Private Eyes fixture, infringes every limitation in claim 1 of its '739 utility patent as properly construed by the Court.  Plaintiff cannot.  The express limitations of the claims reveal that FGX's display (the Private Eyes

fixture) lacks two of the necessary elements of claim 1, namely, the claimed support member and the claimed display member. More specifically, unlike the claimed support member of the patented eyeglass display, FGX's advertising placard is not "a frame for securing other components of [the] display." Unlike the claimed display member, FGX's display contains two planes with holes that do not allow a portion of all eyeglasses to be viewed simultaneously and do not alone secure the glasses in place.

Moreover, the requested injunction also must fail as Plaintiff offers only unsubstantiated and speculative claims of irreparable harm and does not demonstrate that the balance of hardships favors an injunction or that the requested injunction is in the public interest.

Further, Plaintiff does not deserve the equitable relief it seeks: it has submitted contradictory facts in support of its two motions for preliminary injunction. Plaintiff relies on declarations of its president, CEO and co-founder, Bruce Raile. These declarations, which provide the entire factual basis for Plaintiff's application, are contradictory and misleading. Plaintiff's first proffered facts revealed that its design patents (the subject of its First PI Motion) were invalid. When confronted with the invalidity of its design patents, Plaintiff changed its story. Its newly proffered facts show that there is no basis for Plaintiff's claimed irreparable harm.

Plaintiff also disingenuously describes the shape at the end of FGX's eyeglass cases first as "rounded" and then as "substantially flat," as suited to its need or argument. To succeed on the merits of infringement for its design patents, Plaintiff argues that the shape is rounded; yet, to succeed on the merits of the utility patent, it argues that the same shape is substantially flat. It is

not possible for it to be both, and thus, it is not possible for Plaintiff to obtain both preliminary injunctions it seeks.[1]

Because of the inconsistencies in Plaintiff's factual assertions and its inability to meet its burden of proof on each element of the standard, this Court should deny the requested preliminary injunctions.

## SUMMARY OF ARGUMENT

This Court should deny Plaintiff's motion for a preliminary injunction because Plaintiff fails to demonstrate, and cannot demonstrate, any of the following four factors used to decide preliminary injunctions:

I.       Plaintiff has failed to demonstrate, and cannot demonstrate, that it is reasonably likely to succeed on the merits because it cannot show that FGX's accused product has infringed every element of the patented eyeglass display.

II.      Plaintiff has failed to demonstrate, and cannot demonstrate, irreparable harm because its alleged harms lack any factual basis, are hypothetical and even if they were supported by evidence could be readily compensated through money damages.

III.     Plaintiff has failed to demonstrate, and cannot demonstrate, that the balance of hardships tip in its favor: its unsubstantiated harms are greatly outweighed by FGX's documented harms.

IV.      Plaintiff has failed to demonstrate, and cannot demonstrate, that the public interest weighs in favor of such extraordinary relief.

---

[1] The First Opposition provides numerous additional reasons that Plaintiff's First PI Motion must be denied.

## CONCISE STATEMENT OF FACTS[2]

FGX designs and sells reading glasses, sunglasses, other eyewear products and accessories under 13 different brand names. April __, 2007 Declaration of Alec Taylor ("4/__/07 Taylor Decl.") ¶ 3. FGX's brands are directed to different consumers and sold into various distribution chains. Id. For example, some of its brands are intended to reach the style-conscious consumer willing to pay for top design and quality, others to meet the needs of those with an active sports lifestyle, others to reach more cost-conscious purchasers, and still others are directed at an older clientele. Id. Consistent with the different consumers each brand is intended to capture, FGX sells some of its brands to high-end stores, others to large pharmacies and discount department stores, and still others to eye doctor's offices. Id. Each brand is designed and marketed with a particular audience and distribution method in mind and at a different price point. Id. This minimizes interbrand competition within FGX's product offerings. Id.

### A.    FGX's Reading Glass Contracts

Most of FGX's supply contracts for its reading glasses (over 80%) provide that FGX will be the primary supplier of reading glasses to its customers, not the exclusive supplier. 4/__/07 Taylor Decl. ¶ 5. Although FGX does have a few "exclusive" arrangements for reading glasses, those agreements only provide FGX a right of first refusal, after which the retailer is free to purchase products from another manufacturer. Id. FGX does not sell every product it manufactures to all of its customers. Taylor Decl. ¶ 4. Instead, it strategically determines where to place its brands consistent with the brand image, price points and other business considerations. Id. For these reasons, even in contracts that provide FGX a right of first refusal, it generally chooses not to exercise that right. Taylor Decl. ¶ 5. FGX does not have contracts

---

[2] The Concise Statement of Facts at pages 2-6 of FGX's First Opposition is incorporated by reference.

with all of the distribution outlets for its reading glasses.  Id.  For example, FGX does not have contracts with its eye doctor's office customers.  Id.

## B.  FGX's Private Eyes Fixture

FGX's newest brand, Private Eyes, features stylish reading glasses available in numerous designs all marketed to and sold exclusively through the offices of eye care professionals, i.e., eye doctor's offices.  4/__/07 Taylor Decl. ¶ 7.  FGX also provides the doctor's offices that carry its Private Eyes brand eyeglasses with fixtures that hold multiple pairs of glasses in a manner designed to be convenient for storage and display.  Taylor Decl. ¶ 9  The fixtures are provided free of charge as is the custom in the industry.  Id.  FGX has no current plans to offer Private Eyes to any other distribution chain.  Taylor Decl. ¶ 8.  To do so would be inconsistent with the marketing and branding of Private Eyes and would place Private Eyes in direct competition with some of FGX's other brands.  Id.

There are two sizes of Private Eyes fixtures: the smaller fixture holds 30 eyeglass cases (below left) and the larger holds 42 (below right).  Taylor Decl. ¶ 9, Ex. A, B.

 

Plaintiff now claims that the smaller Private Eyes fixture infringes claim 1 of its '739 patent, which claims an eyeglass display and seeks to preliminarily enjoin FGX from making, using or selling its fixture pending conclusion of this litigation.[3]  Prior to bringing this Second PI Motion, Plaintiff did not inform FGX that it had a pending patent or its belief that the Private Eyes fixture would infringe that pending patent, and Plaintiff did not request that FGX stop making, using or selling its fixture.  Id. ¶ 10.

**ARGUMENT**

**A.     Preliminary Injunction Is A Drastic And Extraordinary Remedy.**

In the context of a patent infringement suit, a "preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted."  Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993).  The party seeking a preliminary injunction bears a heavy burden of showing:  (1) a reasonable likelihood of succeeding on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of hardships tips in its favor; and (4) the injunction will have a favorable impact on the public interest.  Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001).  The Supreme Court recently cautioned that in the patent context, even a showing of validity and infringement does not entitle the patent holder to an injunction after a full trial, much less as preliminary relief.  eBay Inc. v. MercExchange, LLC, ___ U.S. ___, 126 S. Ct. 1837, 1841 (May 15, 2006).

The grant of a preliminary injunction in patent cases is not only the exception, it is a rarity.  National Law Journal, May 12, 2003, Vol. 25, No. 38, p. S8.  At the preliminary injunction stage, the patentee rather than the accused infringer, carries the burden of showing likelihood of success on the merits with respect to the patent's validity, enforceability, and

---

[3] The Private Eyes eyeglass cases are accused of infringing Plaintiff's '420 and '180 design patents and are the subjects of Plaintiff's First PI Motion.

infringement.  Nutrition 21 v. United States, 930 F.2d 867, 869 (Fed. Cir. 1991)(emphasis added).

**B.    Plaintiff Has Failed To Demonstrate, And Cannot Demonstrate, That It Is Reasonably Likely To Succeed On The Merits.**

In order to demonstrate a likelihood of success on the merits, the movant must show that it will likely prove that the defendant infringes the patent.  Jeneric/Pentron, Inc. v. Dillon Company, Inc., 205 F.3d 1377, 1380 (Fed. Cir. 2000) (affirming denial of preliminary injunction where patentee failed to show a likelihood of success on infringement); Sofamor Danek Group, Inc. v. DePuy-Motech, Inc., 74 F.3d 1216, 1219, 1221 (Fed. Cir. 1996) (affirming denial of preliminary injunction where patentee did not show a reasonable likelihood of success on the merits in proving that the patented device exactly embodied each claim limitation or its equivalent).

Even if plaintiff initially shows a likelihood of success on the merits, a preliminary injunction should not issue if the accused infringer raises a substantial question concerning either infringement or validity.  In other words, if the accused infringer raises an infringement or invalidity defense that the patentee cannot show lacks substantial merit, the preliminary injunction should not issue.  Amazon.com, 239 F.3d at 1350 (preliminary injunction vacated despite plaintiff demonstrating likelihood of success on the merits since defendant raised substantial questions as to validity of patent).

An infringement analysis involves two steps: first the claim is construed, and then the properly construed claim is compared with the accused device to determine whether all of the claim limitations are present in the accused devise.  Id. at 1351.

1.    **Terms in Claim 1 Must Be Construed As They Would Be Understood By A Person Of Ordinary Skill In The Art At The Time The Patent Application Was Filed**

      (a)    **A Court Must Resolve The Meaning Of Each Disputed Claim Term Before Considering Whether An Accused Product Infringes the Patent**

Construction of disputed claim language is as a matter of law to be resolved by the court. Sofamor Danek Group, Inc. v. DePuy-Motech, Inc., 74 F.3d 1216, 1220 (Fed. Cir. 1996) (citing Markman v. Westview Instruments, 517 U.S. 370, 372, 116 S.Ct. 1384, 134 L. Ed. 2d 577 (1996)). Determining claim language is essential to the determination of likelihood of success on the merits because claim language defines claim scope. Id.

"To ascertain the meaning of claims, we consider three sources: the claims, the specification, and the prosecution history." Markman v. Westview Instruments, 52 F.3d 967, 979 (Fed. Cir. 1995), aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L. Ed. 2d 577 (1996) (internal citations omitted). "[T]he words of a claim are generally given their ordinary and customary meaning." Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Id.

      (b)    **Construing "Support Member"**

Although the patent does not use or define the term "support member," it does use the term "support structure," namely, "support structure 120." See e.g. '739 patent at 6:59, 65-67. Everywhere in the specification where the support structure is discussed, it is described as a

frame for securing other components of the display.[4]  The drawings are in accord.  See Reference

120 in '739 patent, Figures 5 (as amended by plaintiff's "correction"), 6 and 7.  Thus, the central

role of the support structure as specified and illustrated in the patent is to hold the display

members or other components.  Figures 5-7 from the '739 patent reproduced below further show

the function of the support structures.[5]



The term *support member* must be construed to correspond to the described *support*

*structure*, and thus must be construed to mean "a frame for securing display members of the

display."

---

[4] Support structure 120 provides a frame for securing other components of the display, '739
patent 6:65-67;

        [s]upport structure 120 provides a central frame mechanism to
        which display members [] are coupled,

'739 patent 8:12-14; and

        [s]upport structure 120 has a skeleton frame configuration to
        provide support to five display members on each of four sides of
        the display,

'739 patent 8:27-29.

[5] Figure 5 of the '739 patent bears no reference numeral "120" to represent the support structure.
In Plaintiff's certificate of correction for its '739 patent, Figure 5 is amended to label the vertical
back of the display, which is connected to the base 110 and provides support for the display
member 130, as "120," i.e. the support structure.  See Second Opening Brief at Ex. D.

(c)    **Construing "Display Member ... Openings"**

Claim 1 requires:

> one or more display members having a plurality of ***openings***, wherein ***each*** of said plurality of openings is ***adapted to receive an eyeglass case*** ... .

'739 patent, claim 1, 9:12-16.  (Emphasis added.)  The patent specification discloses only two types of openings:

> In the illustrated embodiment, display member 130 includes a plurality of openings *132a-n*.  Openings 132*a-n* are configured to receive an end of an eyeglasses case 1*a-n* such that the eyeglass cases are displayed in a vertical manner.  Each one of openings 132*a-n* corresponds with a slot that accommodates the eyeglass case.  The slot secures the eyeglasses such that the eyeglass case is displayed in a vertical manner.  The slot is configured to conform to the shape of the eyeglass cases.  In an alternative embodiment, openings 132a-n do not correspond with slots.  Instead, the configuration of the openings 132a-n is sufficient to secure the eyeglass cases.

Id. at 7:24-31. (emphasis added).  In other words, the display member described in the patent includes openings in the form of a slot to hold the eyeglass cases, or alternatively, openings sufficient to secure an eyeglass case.  No display member lacking such openings is disclosed in the '739 patent, and no other meaning for opening is disclosed.

Figures 5 and 6 of the '739 patent illustrate the *slots*.  As used in the patent, slots are essentially molded cups in the shape of eyeglass cases that receive the bottoms of the cases so the eyeglasses do not fall out of the display member 130.  See, e.g., Figures 1 and 2 (reproduced below) comprising the eyeglass cases illustrated in Figures 5 and 6 (portions of which are reproduced farther below).

Figure 1        Figure 2        Figure 5 (cropped)        Figure 6 (cropped)



The opaque cups are most easily seen in Figure 5 after noting that the body of all of the illustrated eyeglass cases are transparent so that both lens are fully visible when the cases are closed. The alternative embodiment, comprising openings sufficient to secure an eyeglass case, is not illustrated or further described.

In view of the above, the expression "openings adapted to receive an eyeglass case," read in light of the specification, must be interpreted to mean "openings with slots for holding eyeglass cases" or "openings that secure eyeglass cases."

**(d)    Construing "Display Member ... Configured To Permit A Consumer To View"**

Claim 1 requires:

> one or more display members having a plurality of *openings*, wherein *each* of said plurality of openings ... is *configured to permit a consumer to view* at least a portion of the eyeglasses enclosed therein ... .

'739 patent, claim 1 9:12-16. (Emphasis added.) In other words, the display member described in the patent includes multiple openings, each of which is configured to permit glasses, within an eyeglass case that is seated in the opening, to be viewed by a consumer. This is consistent with the entirely transparent eyeglass cases shown in Figures 1 and 2 of the patent, and with the

display stands populated with entirely transparent eyeglass cases shown in Figures 5 and 6 of the

patent.    Indeed, the patent is devoid of any display stand containing a not entirely-transparent

eyeglass case.

As the Figures illustrate, the use of entirely transparent cases ensures the consumer's

ability to see at least a portion of every pair of eyeglasses.  The specification is consistent with

the plain language of claim 1.  For example, the description for Figure 5 explains:

> Display member 130 permits a plurality of eyeglasses to be
> positioned in rows one behind another such that ***each of the
> plurality of eyeglasses can be seen*** without needing to reposition
> the eyeglasses.

*Id.* at 7:1-4 (emphasis supplied).

Accordingly, the phrase "each ... configured to permit a consumer to view at least a

portion of  the eyeglasses enclosed therein," means that, when the display member is populated

with eyeglass cases, a consumer must be permitted to view at least a portion of ***each*** of the

eyeglasses in the eyeglass cases.

**2.    The Accused Product is Missing Elements of Claim 1 and Therefore Does Not Infringe**

**(a)    The Absence Of Even One Element Of A Patent Claim Is Fatal To A Claim Of Infringement**

Plaintiff still must demonstrate that the accused device includes **every** element of the

claim as properly construed by the Court.  <u>Sofamor</u>, 74 F.3d at 1220, (<u>citing</u> <u>Charles Greiner &</u>

<u>Co. v. Mari-Med. Mfg., Inc.</u>, 962 F.2d 1031, 1034 (Fed. Cir. 1992)).  To determine infringement,

the properly construed claim is compared with the accused device to determine whether all of the

claim limitations are present.  <u>Amazon.com</u>, 239 F.3d at 1351; <u>Sofamor</u>, 74 F.3d at 1221.

Literal infringement of a claim occurs when every limitation recited in the claim appears

in the accused device exactly.  <u>Jeneric/Pentron, Inc.</u>, 205 F.3d at 1382 (no literal infringement

where accused device contained percentage of ingredient outside precisely claimed range); Sofamor, 74 F.3d at 1220 (no literal infringement where accused device used a different type of threaded plug than the claimed threaded plug). See also Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co., 425 F.3d 1366, 1373 (Fed. Cir. 2005) (internal citations omitted).

If literal infringement is not established, the preliminary injunction cannot issue as Plaintiff has failed to offer arguments or evidence in support of a claim of infringement under the doctrine of equivalents.[6]  See e.g. Conair Group, Inc. v. Automatik Apparate-Maschinenbau GmbH, 944 F.2d 862, 867 (Fed. Cir. 1991) (vacating preliminary injunction where patentee did not show likelihood of success on literal infringement and discussion of doctrine of equivalents was insufficient to support preliminary injunction).  In any event, proof of infringement under the doctrine of equivalents requires specific factual evidence, which Plaintiff has not submitted. AquaTex Industries, Inc. v. Techniche Solutions, 479 F.3d 1320, 1328-29 (Fed. Cir. 2007) (affirming grant of summary judgment dismissing infringement claims where patentee failed to provide any particularized testimony on equivalents).

> **(b)**    **It is Error to Compare the Patentee's Product to the Accused Product; Therefore, Pictures of Plaintiff's Commercial Eyeglass Display Have No Place in its Brief**

The *only* way to prove infringement is to compare the properly construed claims to the accused device.  Praxair, Inc. v. ATMI, Inc., 2005 WL 3159054, at *2 (D. Del. 2005) (excluding evidence of commercial embodiment in infringement determination) (internal citations omitted);

---

[6] Plaintiff claims only that FGX's accused product literally infringes claim 1 of the '739 patent. Memorandum of Law in Support of  Second PI Motion ("Second Opening Brief") at 7.  Plaintiff cannot raise infringement under the doctrine of equivalents for the first time on reply.  Okor v. Sega of America, 30 Fed. Appx. 950, 952 (Fed. Cir. 2002) (not precedential) (declining to address patentee's arguments regarding infringement by the doctrine of equivalents, raised for the first time in his reply brief); Amhil Enterprises Ltd. v. Wawa, Inc., 81 F.3d 1554, 1563-64 (Fed. Cir. 1996) (holding that a reply brief is not the appropriate place to first raise the doctrine of equivalents as a basis for infringement).

Catalina Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1286 (Fed. Cir. 2002); Johnson & Johnson Associates, Inc.v. R.E. Service Co., Inc., et al., 285 F.3d 1046, 1052 (Fed. Cir. 2002). "It is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process[.]" Zenith Labs., Inc. v. Bristol-Myers Squibb Co., 19 F.3d 1418, 1423 (Fed. Cir. 1994); see also Int'l Visual Corp. v. Crown Metal Mfg. Co., 991 F.2d 768 (Fed. Cir. 1993).[7] Plaintiff's pictures and discussion of its Clear Tube eyeglass display (Second Opening Brief at 3-5; April 5, 2007 Declaration of Bruce Raile ("4/5/07 Decl.") ¶ 3, Ex. A), therefore, should be ignored by the Court.[8]

      **(c)**    **FGX's Accused Product**

FGX's accused product, the Private Eyes display, is shown below.

---

[7] In the case of utility patents, the *only* way to prove infringement is to compare the properly construed claims to the accused device. Zenith Labs., Inc. v. Bristol-Myers Squibb *Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994). In the context of *design* patents (such as those at issue in the First PI Motion), however, there is a very limited exception to that rule. In design cases, *after* the court has determined that the accused product and the properly construed patent claims are in fact substantially the same, can the court then compare the patentee's and accused articles directly in its determination of infringement. See L.A. Gear, Inc. v. Thom McAN Shoe Co., 988 F.2d 1117, 1125-26 (Fed. Cir. 1993). Plaintiff would substitute this limited exception for the rule. First Reply at 8-9.

[8] As a threshold matter, there is no evidence that Plaintiff's Clear Tube eyeglass display falls within the scope of the properly construed claims of the '739 patent.



The Private Eyes display is formed from four basic parts, a base, upper and middle layers and a placard. The base includes a small perpendicular attachment onto which the placard can be affixed. The two layers are supported above the base on bolts and spacers that penetrate the four corners of the base and the two layers. Thumb-nuts are screwed onto the bolts to assemble the unit. The heads of the four bolts make contact with, and support the entire display above, a counter or other surface. The eyeglass cases used in connection with the Private Eyes display have an opaque cap on a transparent upper portion and an opaque lower portion.

### (d)    FGX's Product Does Not Comprise The Claimed "Support Member"

The properly construed claim of the '739 patent requires that the accused product include a support member. A support member is properly construed to be: a frame for securing display members of the display.[9]

Plaintiff identifies the vertical advertising placard attached at the back of FGX's accused product as the part that reads on the "support member" element of claim 1. Second Opening Brief at 11. Unlike the claimed support member in the '739 patent, the Private Eyes placard does not act as a frame for securing a display member. To the contrary, as is discussed above, and as is apparent from the picture below, the product is formed from a base and two layers. None of

---

[9] As specified, the support structure 120 "provides a frame for securing other components of display 100 [the eyeglass display]," "provides a central frame mechanism to which display members [ ] are coupled," or "provide[s] support to five display members on each of four sides of the display." '739 patent. 6:65-67, 8:12-14.

these taken alone or in combination constitute a *display member* as that term is used in the patent, and moreover, none of these are secured to the placard. Indeed, the placard can be removed without any effect (other than aesthetic) to the Private Eyes display.

Accordingly, FGX's Private Eyes display does not comprise a *support member,* and thus, does not infringe, claim 1 of the '739 patent.

### 3.    FGX's Product Does Not Comprise The Claimed "Openings"

The properly construed claim of the '739 patent requires that the accused product include openings adapted to receive an eyeglass case. As discussed above, the term "openings," as properly construed, mean "openings with slots for holding eyeglass cases" or "openings that secure eyeglass cases."

Plaintiff alleges that the upper layer of FGX's fixture infringes its claimed "display member" (Second Opening Brief at 11), thus, by implication, plaintiff alleges that the upper layer comprises the claimed "openings".

The Private Eyes fixture contains no slots nor openings that secure eyeglass cases. Instead, the bottom of FGX's eyeglass cases rest on a "base." In contrast, in the claimed display member, the opening itself secures the eyeglass cases. The '739 patent Figures clearly show that the eyeglass cases do not rest on the base 110. See, e.g., Figure 5 where the bottom of the slot in the front right position is drawn closer to the right edge of the base than the bottom of the slot in the back right position to show the eyeglass cases are supported above the base 110. That the eyeglass cases are not supported by the base is also apparent from Figures 6 and 7, which shows no base beneath the bottom of the slots holding the eyeglass cases.

Moreover, the openings in the upper and lower layers do not secure the eyeglass cases, but rather, they give lateral stability to the eyeglass case which rests upon the base. As

illustrated below, an eyeglass case can be passed completely through the opening in the upper and lower layers.

| (eyeglass case passing through hole on top plane from the accused product) |
|---|



Instead of using "openings with slots for holding eyeglass cases" or "openings that secure eyeglass cases," the accused product relies on its base to prevent its eyeglass cases from falling.

Accordingly, FGX's Private Eyes display does not comprise the claimed *openings,* and thus, does not infringe, claim 1 of the '739 patent.

### 4. FGX's Product Does Not Permit A Consumer To View All Of The Eyeglasses As Required By The Claim

The properly construed claim of the 739 patent requires that the accused product include openings, "each … configured to permit a consumer to view at least a portion of the eyeglasses enclosed therein." In other words, when the display member is populated with eyeglass cases, a consumer must be permitted to view at least a portion of *each* of the eyeglasses in the eyeglass cases. Unlike the claimed display member, however, the FGX Private Eyes display is not configured to allow consumers to view a portion of each pair of eyeglasses simultaneously. Instead, with the Private Eyes display, there is no visible portion of most non-perimeter eyeglasses, thus, a customer wanting to view those eyeglasses would have to reposition them. In other words, the spacing of the openings combined with the opaque-top eyeglass cases used in

FGX's accused product creates blind spots where a consumer cannot see any portion of some of the eyeglasses. Figure 5 shows that the arrangement of openings and transparent cases of the patented display, permits the consumer to view at least a portion of the eyeglasses enclosed in each case:



Because FGX's Private Eyes fixture does not comprise "*openings ... each ... configured to permit a consumer to view at least a portion of the eyeglasses enclosed therein*" as required by the '739 patent, it does not infringe the '739 patent.

### 5.    Plaintiff Should be Precluded from Arguing that the Shape at the Bottom of the Eyeglass Cases is a "Substantially Flat Surface"

Claim 1 of the '739 patent covers eyeglass cases having a "substantially flat surface at one end thereof." '739 patent, claim 1 9:22-23. To make out a claim of infringement, Plaintiff therefore, must establish that FGX's Private Eyes eyeglass cases have a substantially flat surface at one end.

In an attempt to set out a claim for infringement of its design patents '420 and '180, Plaintiff argues that the top of FGX's accused eyeglass cases are "rounded" but that the identically shaped bottom is "substantially flat." See First Opening Brief at 11. The identically

shaped top and bottom of FGX's eyeglass cases cannot be both: (top) ▬▬▬,

(bottom) ▬▬▬.

Having alleged that the shape is "rounded," Plaintiff should be precluded from now claiming that the same shape is "substantially flat."

### 6. Plaintiff's Inequitable Conduct Bars Enforcement of the '739 Patent

The '739 patent is unenforceable due to Plaintiff's inequitable conduct before United States Patent and Trademark Office (the "PTO"). More specifically, Plaintiff failed to comply with its duty of disclosure under 37 C.F.R. 1.56.

Under 37 C.F.R. 1.56, an inventor and those involved with the prosecution of an application have a duty of candor that includes an obligation to advise the PTO of all material prior art of which they are aware. Evident Corp. and Peroxydent Grp. v. Church & Dwight Co., Inc., 399 F.3d 1310, 1312 (Fed. Cir. 2005) (finding of noninfringement and unenforceability based on inequitable conduct affirmed since Plaintiff had the duty and the opportunity to disclose relevant prior art to the PTO yet failed to do so); Buzzelli v. Minnesota Min. & Mfg. Co., 521 F.2d 1162, 1166 (6th Cir. 1975) (plaintiff's failure to disclose clearly material prior art, plus the false assertion that no such art existed, constituted inequitable conduct before the patent office and rendered the patent unenforceable). Failure to do so, renders the patent unenforceable. See id. See also First Opposition at 8-11 (discussing patent unenforceability in the context of inequitable conduct in the patent application process). At the time of filing the application that matured into the '739 patent the inventor was aware of: (i) eyeglass cases that allow a consumer to see part of the eyeglasses within the case, i.e., partially transparent; and (ii) that such eyeglass cases were tailored for particular display types. '739 patent 1:47-57. Mr. Raile, Plaintiff and the prosecuting attorney, all of whom were obligated to disclose material prior art, failed to disclose

any of the known eyeglass cases or the associated displays. It was the deficiencies of that prior art that the invention sought to overcome. '739 patent 1:47-59. Such intentional withholding of material prior art by Plaintiff and/or its attorneys violates the duty of candor owed to the PTO, thus depriving the patent examiner of the ability to examine fairly the patent. The intent to deceive the PTO is "usually inferred from the facts and circumstances surrounding the conduct at issue." Cargill, Inc. v. Canbra Foods, LTD., 476 F.3d 1359, 1364 (Fed. Cir. 2007). See also Paragon Podiatry Lab., Inc. v. KLM Labs. Inc., 984 F.2d 1182, 1189 (Fed. Cir. 1993) (" 'Smoking gun' evidence is not required in order to establish an intent to deceive ... Rather, this element of inequitable conduct, must generally be inferred from the facts and circumstances surrounding the applicant's overall conduct.")

Plaintiff's failure to disclose material information to the PTO in connection with its application for the '739 patent renders the patent unenforceable. Plaintiff, therefore, has not demonstrated the requisite likelihood of success on the merits of enforceability. Nutrition 21, 930 F.2d at 869. Even if Plaintiff had demonstrated a likelihood of success on enforceability (which it has not), at a minimum, FGX has raised a substantial question as to the enforceability of the patents-in-suit, and a preliminary injunction cannot issue. Amazon.com, 239 F.3d at 1350.

**C.    Plaintiff Has Failed To Demonstrate, And Cannot Demonstrate, Irreparable Harm**[10]

This Court recently recognized that there is no presumption of irreparable harm even where patent infringement has been established. IMX, Inc. v. LendingTree, No. 03-1067, 2007 WL 62697 (D. Del. 2007) (referencing the "now-overturned presumption that a patent holder is

---

[10] Plaintiff incorporates its allegations of irreparable harm from its First PI Motion into this Second PI Motion. Second Opening Brief at 14. As discussed in FGX's First Opposition at pages 20-22, those allegations fail to establish any harm to Plaintiff let alone irreparable harm and in any event the types of harm alleged are compensable through money damages.

irreparably harmed upon a finding of infringement.")[11]     See also First Opposition at 20. Moreover, the presumption does not aid Plaintiff in obtaining a preliminary injunction. Nutrition 21 v. United States, 930 F.2d 867, 869 (Fed. Cir. 1991).  Without the presumption, Plaintiff cannot establish irreparable harm.

### 1.     Plaintiff is Not Precluded from Selling its Product to FGX's Customers

Plaintiff's central argument in support of irreparable harm is based on the alleged predominance of exclusive dealing arrangements in the eyewear industry.[12]  To the contrary, the eyewear industry is not dominated by exclusive dealing arrangements of the type described by Plaintiff and, in FGX's experience, retailers do not purchase exclusively from one provider. Taylor Decl. ¶ 6.  The vast majority of FGX's contracts (over 80%) do not contain any exclusive dealing limitation.  Id. ¶ 5.  Moreover, FGX does not have contracts with any eye doctor's offices or with many other of its reading glass distributors.  Id. FGX's few contracts that do have exclusive supplier arrangements merely provide FGX with a right of first refusal after which the retailer is free to purchase products from another manufacturer.  Id. FGX exclusively markets and sells its Private Eyes brand to doctor's offices and has no present intention to expand Private Eyes to other retail outlets.  4/__/07 Taylor Decl.¶¶ 7-8.  As discussed above, to do so would be inconsistent with the Private Eyes marketing strategy and would cause Private Eyes to compete

---

[11] In its First Reply, in an attempt to hold onto the presumption of irreparable harm, Plaintiff ignored this Court's ruling in IMX.  First Reply at 15-16.  Of the two cases Plaintiff cites in support of the presumption one does not address the issue of whether the presumption survived the Supreme Court's decision in eBay v. MercExchange LLC, 126 S.Ct. 1837 (2006).  Abbott Labs. v. Andrx Pharms., Inc., 452 F.3d 1331 (Fed. Cir. 2006).  The other case cited by Plaintiff is a district court case from another circuit.  Christiana Indus. v. Empire Elecs., Inc., 2006 U.S. Dist. Lexis 54210 (D. Mich. 2006).

[12] Plaintiff's allegations to this effect appears to be pure conjecture, not based on a reasonable investigation.  March 7, 2007 Declaration of Bruce Raile ("3/7/07 Raile Decl."), ¶ 6.

with other FGX brands.  Id.  Thus, Plaintiff has failed to show any real impediment to its ability to sell its Clear Tube products (patented, or otherwise) in any channel.

According to Plaintiff's First Opening Brief and the March 7 Raile Declaration, the uniqueness of Plaintiff's Clear Tube patented products opened opportunities at stores to whom it would otherwise be unable to sell.[13]

> Before [FGX] began copying Sun Optic's Clear Tube program, Sun Optics was able to market its innovative Clear Tube program as a program available exclusively from Sun Optics.  The innovative nature of Sun Optic's Clear Tubes coupled with Sun Optic's as the exclusive source for the Clear Tubes enabled Sun Optics to obtain appointments to pitch it[s] Clear Tube program to retailers, like Rite Aid, that were already carrying the product of another vendor.

First Opening Brief at 14 (internal citations to 3/7/07 Raile Declaration omitted).  Later realizing that its proffered facts destroyed its infringement claim (for the reasons outlined in the First Opposition at 7-9), Plaintiff changed its story on reply, now claiming (through Raile's April 12 Declaration) that the Clear Tube products initially sold to Rite Aid were not the patented products Plaintiff seeks to protect through this suit.  First PI Reply at 3-5; 4/12/07 Raile Decl. ¶ 5, 6.  In other words, Plaintiff was able to break into the industry without the benefit of its patents and a substantial portion of its Clear Tube system is not even alleged to be infringed. According to Plaintiff's very declarations, the alleged infringement of the design patents and the '739 utility patent by FGX simply is not the cause of any harm it may be suffering by allegedly being unable to sell to certain distributors.

After initially basing its claimed irreparable harm on the loss of business from stores such as Rite Aid, Plaintiff changed direction in its First Reply, now claiming that doctor's offices form

---

[13] This argument ignores that "offering to sell" a patented product is a compensable damage to a successful patent plaintiff.  Here, however, Plaintiff has not alleged any damages from the purportedly patented fixtures that ostensibly are given away for free.  Contrary to the implication of Plaintiff's argument, Plaintiff has not patented its Clear Tube program.

part of the "optical market" in which Plaintiff competes. 4/12/07 Raile Decl. ¶ 9. Plaintiff is defining the broadest possible market in an unwieldy attempt to cast FGX's Private Eyes as competition to its Clear Tube products. Plaintiff has not, however, claimed that it actually markets or sells its patented products to doctor's offices or that those products have been, or are likely to be, rejected by a single doctor's office because of the accused products. Id. Moreover, FGX does not have contracts with doctor's offices and has no right of first refusal; Plaintiff, therefore, is free to sell its Clear Tube products even to the very doctor's offices carrying FGX's products. Id.

### 2.    Plaintiff's Claims Regarding the CVS Account are Without Basis and False

In addition to the bases for irreparable harm outlined in its First Moving Brief, Plaintiff now claims irreparable harm based on is its failure to secure a contract with CVS. Without evidence, Plaintiff blames this failure on FGX: "Sun Optics recently received information giving Sun Optics reason to believe that [FGX] has secured a contract with CVS to sell its Private Eyes products to CVS." Second Opening Brief at 6; 3/7/07 Raile Decl. ¶ 5. Plaintiff does not provide the "information" it recently received, the name of the individual or entity from whom the information was received, or the circumstances under which it was received. The Court should give no weight to this unsubstantiated allegation. See e.g. Atari Games Corp. v. Nintendo of America, Inc., 897 F.2d 1572, 1577-78 (Fed. Cir. 1990) (vacating preliminary injunction because of insufficient factual support where district court made no finding that plaintiff could likely prove its allegations). Moreover, it is not true -- FGX has **only** marketed and sold its Private Eyes to eye doctor's offices. 4/__/07 Taylor Decl. ¶ 7.[14]

---

[14] The April 2, 2007 Declaration of Alec Taylor in support of FGX's motion to dismiss ("4/2/07 Taylor Decl." (D.I. 14)) stated that the accused product was sold "almost exclusively to doctor's offices" and "substantially all of those [$1 million] sales [of the accused product] were made to

Plaintiff provides no other connection between FGX's actions and Plaintiff's alleged irreparable harm from loss of the CVS account. Even if Plaintiff had shown a relationship between FGX's accused product and its loss of the CVS account, such harm is not irreparable. Illinois Tool Works, Inc. v. Grip-Pak, Inc., 906 F.2d 679, 683 (Fed. Cir. 1990) (Rejecting the notion that potential lost sales revenue alone could demonstrate "manifest irreparable harm" because such an approach would require a finding of irreparable harm to every patentee, regardless of the circumstances.)

**D.    Plaintiff Has Failed To Demonstrate, And Cannot Demonstrate,
That The Balance Of Hardships Tip In Its Favor.**

As set forth in detail in FGX's First Opposition at pages 22-23,[15] the balance of hardships strongly disfavors an injunction. Plaintiff has not provided any evidence of hardship to itself if the injunction be denied. The hypothetical harms it alleges are unsubstantiated and in any event can be fully remedied by monetary compensation.

**E.    Plaintiff Has Failed To Demonstrate, And Cannot Demonstrate,
That The Public Interest Weighs In Favor Of Such Extraordinary Relief.**

For the reasons set out in the First Opposition at 23, Plaintiff has failed to establish that the requested injunction is in the public interest. In addition, Plaintiff's two current requests for preliminary injunctions should be denied because the declarations of Bruce Raile submitted in support of those requests are materially misleading and contradictory (see Section C (1) above) -- the Court should not reward such behavior with extraordinary relief.

---

doctor's offices." 4/2/07 Taylor Decl. ¶¶ 8-9. After that declaration was submitted, Mr. Taylor was able to confirm that all of the accused products have been sold to doctor's offices and all marketing of the accused products was exclusively to doctor's offices. 4/__/07 Taylor Decl. ¶¶ 7-8.

[15] The IPO discussed in the First Opposition did not take place and is no longer pending.

## CONCLUSION

Plaintiff has failed to meet its burden. Specifically, Plaintiff has failed to demonstrate, and cannot demonstrate, that it is reasonably likely to succeed on the merits where: the prosecuted patent claim is ambiguous and Plaintiff cannot show that FGX's accused product has infringed every element of its patent claim. Plaintiff has failed to demonstrate, and cannot demonstrate, irreparable harm. Plaintiff has failed to demonstrate, and cannot demonstrate that the balance of hardships tip in its favor. Accordingly, these failings mandate denial of Plaintiff's application for preliminary injunction.

Based on the foregoing, FGX respectfully requests that this Court enter an Order (a) denying Plaintiff's two motions for preliminary injunction in their entirety; (b) granting FGX's motion to dismiss; and (c) granting such other and further relief as this Court deems just and proper.

Dated: April 27, 2007

**GREENBERG TRAURIG, LLP**

Donald J. Detweiler (I.D. #3087)
Sandra G. M. Selzer (I.D. #4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
302-661-7000
*detweilerd@gtlaw.com*
*selzers@gtlaw.com*

- and -

Adam B. Landa
200 Park Avenue
New York, NY 10166
212-801-9200

- and -

Steven J. Wadyka
1750 Tysons Boulevard, 12th Floor
McLean, VA  22102
703-749-1300

*Attorneys for FGX International, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SUN OPTICS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-137-SLR |
| | ) | |
| FGX INTERNATIONAL INC., | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I, Sandra G. M. Selzer, being duly sworn according to law, deposes and says that I am employed by Greenberg Traurig, LLP, which is counsel for FGX International, Inc. and hereby certify that on the 27th day of April 2007, I caused copies of the following to be served upon the parties listed below in the manned indicated.

- MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
- DECLARATION OF ALEC TAYLOR IN SUPPORT OF MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

**_Via Hand Delivery_**
R. Eric Hutz, Esq.
Connolly Bove Lodge & Hutz, LLP
The Nemours Building
1007 North Orange Street
Wilmington, Delaware 19801

**_Via First Class Mail U.S. Mail_**
Larry R. Laycock
Chad E. Nydegger
Workman Nydegger
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT 84111

Dated: April 27, 2007

**GREENBERG TRAURIG, LLP**

Sandra G. M. Selzer (I.D. # 4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
302-661-7000
_selzers@gtlaw.com_

_Attorneys for FGX International, Inc._