IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SUN OPTICS, INC., a Utah Corporation, )
)
Plaintiff, )
)
v. )
)
FGX INTERNATIONAL, INC., a Delaware )
Corporation, )
)
Defendant. )
)
)

Civil Action No.  1:07cv137 SLR

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PRELIMINARY IINJUNCTION

**CONNOLLY BOVE LODGE & HUTZ, LLP**

R. ERIC HUTZ (#2702)
The Nemours Building
1007 N. Orange Street
P. O. Box 2702
Wilmington, DE 19899
Phone:  (302) 658-9141
Fax: (302) 658-5614
*Attorneys for Plaintiff*
        *SUN OPTICS, INC.*

**OF COUNSEL**
LARRY R. LAYCOCK
CHAD E. NYDEGGER
**WORKMAN | NYDEGGER**
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111
Phone: (801) 533-9800

**DATE:** May 4, 2007

## TABLE OF CONTENTS

                                                                                      **Pages**

I.  INTRODUCTION .................................................................................................. 1

II. ARGUMENT ....................................................................................................... 1

   A.  Sun Optics Is Likely to Prevail on the Merits of Validity,
       Enforceability and Infringement ..................................................................... 1

       1.  The Accused Products Contain the claimed "support
           member" ................................................................................................. 2

       2.  The Accused Products contain the claimed "openings" in
           the "display member" ............................................................................ 5

       3.  The Accused Products "permit a consumer to view at least
           a portion of the eyeglasses enclosed therein" as required by
           claim 1.................................................................................................... 8

       4.  Sun Optics is not precluded from arguing that the shape of
           the bottom of the cases in the Accused Products have a
           "substantially flat surface" .................................................................10

       5.  The '730 patent is not unenforceable for inequitable
           conduct before the PTO ......................................................................10

   B.  Sun Optics Continues to be Irreparably Harmed by FGX's
       Infringement of the '739 Patent .................................................................13

       1.  Sun Optics is entitled to a presumption of irreparable harm....................13

       2.  The declarations submitted by Sun Optics are consistent
           one with another ...................................................................................14

       3.  FGX does not dispute that it used Accused Products to edge
           Sun Optics out of a recent contract to sell its Clear Tube
           Program.................................................................................................16

       4.  FGX does not dispute that up to 20% of contracts are
           "exclusive" contracts that enable FGX to preclude its
           current customers from purchasing products from Sun
           Optics ....................................................................................................17

   C.  The Balance of the Hardships Weighs in Favor of Issuing and
       Injunction...................................................................................................17

   D.  The Public Interest Weighs in Favor of Issuing an Injunction ............................18

III.    CONCLUSION ..............................................................................................................19

# TABLE OF AUTHORITIES

**Pages**

## CASES

*Abbott Labs. v. Andrx Pharms., Inc.,*
452 F.3d 1331 (Fed. Cir. 2006) ................................................................. 13

*Burlington Indus., Inc. v. Dayco Corp.,*
849 F.2d 1418, 7 U.S.P.Q.2D (BNA) 1158, (Fed. Cir. 1988) ............................. 13

*Cargill, Inc. v. Canbra Foods, Ltd.,*
476 F.3d 1359 (Fed. Cir. 2007) ................................................................. 11

*Christiana Indus. v. Empire Elecs., Inc.,*
2006 U.S. Dist. LEXIS 54210 (D. Mich. 2006) ............................................ 14

*Ebay, Inc. v. Mercexchange, LLC,*
126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006) .................................................. 13

*Impax Labs., Inc. v. Aventis Pharms. Inc.,*
468 F.3d 1366 (Fed. Cir. 2006) ................................................................. 11

*Jack Guttman, Inc. v. Kopykake Enters., Inc.,*
302 F.3d 1352 (Fed. Cir. 2002) ................................................................... 8

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
358 F.3d 898 (Fed. Cir. 2004) ..................................................................... 3

*Mars, Inc. v. H.J. Heinz Co.,*
377 F.3d 1369 (Fed. Cir. 2004) ................................................................... 7

*Molins PLC v. Textron,*
48 F.3d 1172 (Fed. Cir. 1995) ................................................................... 13

*Nazomi Communications, Inc. v. ARM Holdings,*
*PLC,* 403 F.3d 1364 (Fed. Cir. 2005) ........................................................... 3

*Novozymes A/S v. Genencor Int'l, Inc.,*
474 F. Supp. 2d 592 (D. Del. 2007) ............................................................ 13

*Pfizer, Inc. v. Teva Pharms. USA, Inc.,*
429 F.3d 1364 (Fed. Cir. 2005) ................................................................... 8

*Phillips v. AWH Corp.,*
415 F.3d 1303 (Fed. Cir. 2005) ....................................................... 3, 4, 5, 6, 7

*Process Control Corp. v. HydReclaim Corp.,*
    190 F.3d 1350 (Fed. Cir. 1999) ......................................................................7

*Renishaw PLC v. Marposs Societa' per Azioni,*
    158 F.3d 1243 (Fed. Cir. 1998) ......................................................................3

*Spectra-Physics, Inc. v. Coherent, Inc.,*
    827 F.2d 1524 (Fed. Cir. 1987) ......................................................................6

*SRI Int'l v. Matsushita Elec. Corp. of Am.,*
    775 F.2d 1107, 1121 (Fed. Cir. 1985) ...........................................................3

*Teleflex, Inc. v. Ficosa N. Am. Corp.,*
    299 F.3d 1313 (Fed. Cir. 2002) ......................................................................3

## RULES AND STATUTES

Federal Rule of Civil Procedure 9 ..............................................................................16

## OTHER AUTHORITIES

7 Donald S. Chisum, *Chisum on Patents,*
    § 20.04[1][f][I] (1999) ................................................................................21

## I.    INTRODUCTION

Sun Optics, Inc. ("Sun Optics") filed the present Motion for Preliminary Injunction to stop FGX International, Inc. ("FGX") from selling products that infringe Sun Optics's U.S. Patent No. 7,188,739 (the "'739 patent"). Despite copying the invention of the '739 patent, FGX argues in its Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction [D.I. 38] ("Second Opposition") that the Court should not issue a preliminary injunction because: 1) the '739 patent is not infringed, 2) that Sun Optics suffers no irreparable harm, 3) Sun Optics has incurred no hardship, and 4) public policy disfavors an injunction. As demonstrated below, these arguments are based on unsupported legal theories and are carefully tailored to avoid directly addressing Sun Optics's allegations of infringement and irreparable harm.

## II.    ARGUMENT

### A.    Sun Optics Is Likely to Prevail on the Merits of Validity, Enforceability and Infringement

FGX does not contest the validity of the '739 patent. FGX argues that the accused products do not infringe claim 1 of the '739 patent because the accused products do not contain: 1) a "support member," 2) "openings," 3) a "display member . . . configured to permit a consumer to view at least a portion of the eyeglasses enclosed therein," and 4) eyeglass cases with a "substantially flat surface." [Second Opposition, at pp. 15-18.] FGX also alleges that the '739 patent is unenforceable due to inequitable conduct. [*Id.* at pp. 19-20.] As demonstrated below, the Accused Products contain each and every limitation of claim 1 of the '739 patent, as properly construed. Further, FGX's allegations of unenforceability for inequitable conduct have no legal support and fall far short of raising a "substantial question" as to the validity and enforceability of the '739 patent.

**1.    The Accused Products Contain the claimed "support member"**

FGX first argues that the Accused Products do not have the "support member" required by claim 1 of the '739 patent. This argument, however, is based on an erroneous construction of the phrase "support member." When properly construed, the Accused Products undisputedly contain the "support member" required by claim 1.

FGX argues that "support member" should be construed to mean "a frame for securing display members of the display." [Second Opposition, at p. 9.] To support this construction, FGX cites to selective passages in the specification that discuss the "support structure 120"[1] in connection with the embodiments shown in Figures 5-7. [*Id.* at p. 9 n.4.] For example, FGX quotes the following portion of the specification that describes the support member disclosed in Figure 5, the embodiment of which the Accused Products are a virtual copy: "Support structure 120 provides a frame for securing other components of the display[.]" [*Id.* (quoting the '739 patent, at 6:66-67).] FGX, however, ignores the very next sentence of the specification, which explains that "[d]isplay member 130 is coupled to support structure 120 *and/or* base 110." ['739 patent, at 6:67-7:1.] Thus, the specification expressly states that the display member may be coupled directly to the base *in lieu of* being coupled to the support structure 120. Because the display member is not necessarily coupled to the support member, it is error to construe the "support member" such that it must "secur[e] display members of the display" as argued by FGX. Consequently, FGX's construction requiring the support member to "secure[e] display members of the display" is directly contrary to the specification's teachings with regard to Figure 5, and should be rejected.

FGX's construction of "support member" should be rejected for the additional reason that it attempts to import a limitation of the preferred embodiment depicted in

---

[1]    Sun Optics agrees that the "support structure 120" described in the specification and the "support member" recited in the claims are the same.

Figure 5 into the claims. Figure 5 shows that the display member 130 is attached to the support member. Consequently, FGX argues that "support member" should be construed to require the display member to be attached to the support member. The Federal Circuit, however, has condemned importing limitations of preferred embodiments into the claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (*en banc*) ("For instance, although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments." (citing *Nazomi Communications, Inc. v. ARM Holdings, PLC,* 403 F.3d 1364, 1369 (Fed. Cir. 2005) (claims may embrace "different subject matter than is illustrated in the specific embodiments in the specification"); *Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 906-08 (Fed. Cir. 2004); *Teleflex, Inc. v. Ficosa N. Am. Corp.,* 299 F.3d 1313, 1327 (Fed. Cir. 2002); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985)). The Court should reject FGX's attempt to import limitations of a preferred embodiment into the claim through its construction of "support member."

Construing the phrase "support member" to be consistent with all the teachings of the specification, "support member" must mean "a frame for supporting one or more other components of the display." This construction of "support member" should be adopted because it is derived directly from the specification: "Support structure 120 provides a frame for securing other components of display 100." ['739 patent, at 6:65-67.] Unlike FGX's proposed construction, this construction of "support member" is consistent with the specification's teaching that the support structure may or may not support the display member. [*See id.* at 6:67-7:1 ("Display member 130 is coupled to support structure 120 **and/or** base 110.") (emphasis added).] Sun Optics's proposed construction is correct because it recognizes that the "support member" may support structures other than the display member, such as a display surface. [*See id.* at 6:58-60 and Fig. 5, 8:5-8 and Fig. 6, Fig. 7 (The "display surface 150" in each of these passages is depicted in the figures and is supported by the "support structure 120.");] *Renishaw PLC*

3

*v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."). Finally, Sun Optics's construction of "support member" appropriately adopts the ordinary meaning of the words in the claim. *See Phillips*, 415 F.3d at 1312 ("[T]he words of a claim are generally given their ordinary and customary meaning.") (citations and internal quotations omitted). Thus, the Court should respectfully reject FGX's proposed construction, which attempts to give "support member" a meaning that is inconsistent with the specification and improperly imports limitations of a preferred embodiment into the claims. Instead, the Court should respectfully construe "support member" to mean "a frame for supporting one or more other components of the display."

FGX's Accused Products clearly have a support member that supports other components of the display, namely a display surface, as shown below:



Consequently, the Accused Products undisputedly have the "support member" of claim 1 as properly construed.

      2.     **The Accused Products contain the claimed "openings" in the "display member"**

FGX argues that the Accused Products do not have the "openings" in the "display member" required by claim 1 of the '739 patent. This argument, however, is similarly based on an erroneous construction and an improper analysis comparing the Accused Products to the claims. The Accused Products clearly contain the "openings" in the "display member" required by claim 1 when properly construed.

FGX argues that the "openings" in the "display case" should be construed to mean "openings with slots for holding eyeglass cases" or "openings that secure eyeglass cases." [Opposition, at pp. 10-11.] FGX then admits that the Accused Products have openings in the display member, but argues no infringement because the openings of the Accused Products do not "secure" the eyeglass cases. [*Id.* at 16-17.] FGX is wrong on both its proffered construction of the "openings" limitation and in its comparison of the Accused Products to this limitation.

> Claim 1 requires:

> One or more display members having a plurality of openings, wherein each of said plurality of openings is adapted to receive an eyeglass case and is configured to permit a consumer to view at least a portion of the eyeglasses enclosed therein, wherein at least one eyeglass case is received by one of said plurality of openings and is displayed in a substantially vertical manner . . .

Sun Optics argues that this limitation regarding "openings" is self explanatory and needs no particular construction, other than the ordinary meanings of the words. *See Phillips*, 415 F.3d at 1312 ("[T]he words of a claim are generally given their ordinary and customary meaning."). In sum, if the openings are 1) adapted to receive an eyeglass case, 2) configured to permit a consumer to view at least a portion of the eyeglasses enclosed therein, and 3) at least one of the cases in one of the openings is displayed in a substantially vertical manner, then this limitation is satisfied. Instead of following this clear language of the claim, FGX proposes a construction of this limitation that imports a "securing" element into the claim.

FGX argues that the following quotation from the specification at 7:24-31 supports its construction of the "openings" limitation:

> In the illustrated embodiment, display member 130 includes a plurality of openings *132a-n*. Openings 132*a-n* **are configured** to receive an end of an eyeglasses case 1*a-n* **such that the eyeglass cases are displayed in a vertical manner**. Each one of the openings 132*a-n* corresponds with a slot that accommodates the eyeglass case. The **slot secures** the eyeglasses **such that the eyeglass case is displayed in a vertical manner**. The slot is configured to conform to the shape of the eyeglass cases. In an alternative embodiment, openings 132*a-n* do not correspond with slots. Instead, the configuration of openings 132a-n is sufficient to secure the eyeglass cases.

[Opposition, at p. 10 (underlined emphasis supplied by FGX, bold emphasis supplied by Sun Optics).] FGX uses the underlined language above to import a limitation of "securing" into its proposed construction of the "openings" limitation. [*Id.* at 11.] As established above, however, importing limitations from the specification into the claims is improper. *Phillips*, 415 F.3d at 1323 ("We also acknowledge that the purpose underlying the Texas Digital line of cases--to avoid the danger of reading limitations from the specification into the claim--is sound."). Thus, FGX's proposed construction of the "openings" limitation should respectfully be rejected.

FGX's proposed construction should be rejected for the additional reason that it injects ambiguity into the claim that is not present by simply giving the words of the claim their ordinary meanings. FGX's proposed construction requiring the openings to "secure" the cases raises the questions, "Secure how? Secure in which direction? Secure to what?" FGX uses the ambiguity its proposed construction creates to argue non infringement because "an eyeglass case can be passed completely through the opening in the upper and lower layers" of the display member *when disassembled from the display.* [Opposition, at pp. 16-17.] In so arguing, FGX implies that "secure" means that the openings in the display member must somehow maintain the cases "from falling" when a case is placed in an opening of a display member that is disassembled from the rest of the display. [*See id.*] By so interpreting its own construction, FGX completely divorces the meaning of the "openings" limitation from anything found in the claim or the

specification, contrary to Federal Circuit law.  *See Phillips*, 415 F.3d 1323 ("To avoid importing limitations from the specification into the claims, it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." (citing *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1533 (Fed. Cir. 1987))).  Given the Federal Circuit's holdings in *Phillips* that claim terms must be construed in light of the context in which they appear, including the claim itself and the specification, FGX's construction is not proper.  *Id.* at 1313-16.

The context in which the "openings" limitation appears indicates that the function of the openings in the display member is to maintain the cases in a substantially vertical position.  *See Phillips*, 415 F.3d at 1314 ("To begin with, the context in which a term is used in the asserted claim can be highly instructive.  To take a simple example, the claim in this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects made of steel.  This court's cases provide numerous similar examples in which the use of a term within the claim provides a firm basis for construing the term. *See, e.g., Mars, Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1374 (Fed. Cir. 2004) (claim term 'ingredients' construed in light of the use of the term 'mixture' in the same claim phrase); *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1356 (Fed. Cir. 1999) (claim term 'discharge rate' construed in light of the use of the same term in another limitation of the same claim).").  Indeed, the language in claim 1 surrounding the term "openings" states that the openings are to display the cases "in a substantially vertical manner."  The passage of the specification quoted by FGX and discussed above similarly indicates that the "*[o]penings 132a-n are configured* to receive an end of an eyeglasses case 1*a-n such that the eyeglasses are displayed in a vertical manner*" and "[t]he slot *secures* the eyeglasses such that the eyeglass case is displayed *in a vertical manner*."  [Second Opposition, at p.10 (quoting '739 patent, at 7:24-31)(emphasis added).]  Thus, if the Court determines that the "openings" limitation needs additional

construction beyond the common and ordinary meaning of the words, the court should construe the "openings" limitation to require "openings that maintain the eyeglasses in a substantially vertical position." If the Court adopts FGX's proposed construction, then the manner in which the openings must "secure" the cases is to secure them in a substantially vertical position. Either way, the purpose of the openings is undisputedly to maintain the cases in a substantially vertical position.

FGX admits that the Accused Products have openings that "give lateral stability to the eyeglass case which rests upon the base." [Second Opposition, at p. 16.] Because the "openings" limitation only requires the opening to maintain the eyeglass case in a substantially vertical position, as established above, FGX's argument that an eyeglass case can "pass through" the opening of the Accused Products when the Accused Product is disassembled is irrelevant. Neither the claim nor the specification requires the openings to be able to hold the eyeglass cases without a base. The only requirement of the claims is that the openings maintain the cases in a substantially vertical position for display. Thus, FGX's admission that the openings of the Accused Products "give[] lateral stability to the eyeglass case" meets this limitation under both Sun Optics's and FGX's construction of this term.

### 3. The Accused Products "permit a consumer to view at least a portion of the eyeglasses enclosed therein" as required by claim 1

FGX argues that the Accused Products do not "permit a consumer to view at least a portion of the eyeglasses enclosed therein" as required by claim 1. FGX is simply wrong. Even under FGX's construction of this phrase the Accused Products contain this limitation.[2]

---

[2]     Because the Accused Products meet this limitation even under FGX's construction of the phrase "permit a consumer to view at least a portion of the eyeglasses enclosed therein," Sun Optics will not herein dispute this construction. Sun Optics, however, reserves its right to argue a different construction of this limitation during the case. Sun Optics also reserves its right to refine its constructions of the claims proffered herein upon discovery and development of a full record. *See Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005) ("We also recognize that 'district courts may engage in rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its

FGX argues that to "permit a consumer to view at least a portion of the eyeglasses enclosed therein" means "that, when the display member is populated with eyeglass cases, a consumer must be permitted to view at least a portion of *each* of the eyeglasses in the eyeglass cases." [Second Opposition, at p. 12 (emphasis in original).] FGX argues without any supporting evidence that "there is no visible portion of the most non-perimeter eyeglasses, thus, a customer wanting to view those eyeglasses would have to reposition them." [*Id.* at 17.] This statement is simply false.

First, the large transparent upper portions of the cases of the Accused Products allow a consumer to look through the cases to see the eyeglasses contained in the non-perimeter cases. Further, the openings in the display member of the Accused Products ensure that the cases will be spaced apart sufficiently for a customer looking down at the display from an angle to see in between the cases to view at least a portion of the eyeglasses contained in each case, including the non-perimeter cases. Such a view is seen in Figure 5 of the '759 patent.[3] Even if the cases in Figure 5 had an opaque cap and an opaque bottom a customer would be able to see at least a portion of the eyeglasses in each of the cases of Figure 5. Further, the spacing in between the cases in the Accused Products is substantially the same as the spacing of the cases in Figure 5. This spacing between the openings of the Accused Products is best seen in the photographs of the display member at page 17 of the Second Opposition. Clearly a customer will be able to

---

understanding of the technology evolves.' *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002). Indeed, a conclusion of law such as claim construction is subject to change upon the development of the record after a district court's decision on a motion for preliminary injunction. *Id.* (citing *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001)).").

[3]    Curiously, FGX only provides a reproduction of Figure 5 of the '739 patent to argue that the Accused Products do not allow a consumer to view at least a portion of the eyeglasses in each case. FGX does not provide the Court with a picture of the accused products taken from the same viewpoint as that of Figure 5. Whereas the question of infringement compares the Accused Products to the claims, FGX's focus on Figure 5 to argue no infringement is not the proper analysis for infringement.

view *at least a portion* of the eyeglasses in each of the cases of the Accused Products. Consequently, the Accused Products satisfy this limitation of claim 1.

      **4.**      **Sun Optics is not precluded from arguing that the shape of the bottom of the cases in the Accused Products have a "substantially flat surface"**

Last, FGX argues that the Accused Products do not infringe claim 1 because Sun Optics has previously argued that the cases have a "rounded top" and a "substantially flat" bottom. [Second Opposition, at pp. 18-19.] Sun Optics is at a loss as to why arguing that the cases of the Accused Products have a "substantially flat" bottom in its Memorandum in Support of Motion for Preliminary Injunction [D.I. 3.] based on infringement of Sun Optics's design patents could possibly preclude Sun Optics from arguing that the same "substantially flat" bottom of those cases infringe Sun Optics's utility patent. Sun Optics's arguments regarding the shape of the bottom of the cases of the Accused Products are not only consistent, but are exactly the same. Sun Optics is not precluded from arguing that the bottoms of the cases of the Accused Products are "substantially flat."

FGX does not argue that the bottoms of the cases of the Accused Products are not "substantially flat" because it can not do so in good faith. The cases of the Accused Products undisputedly have a "substantially flat" bottom as required by claim 1.

As established above, the Accused Products contain each and every limitation of claim 1 when that claim is properly construed. Consequently, Sun Optics is likely to prevail on the issue of infringement at trial, and this factor supports issuing a preliminary injunction precluding FGX from continuing to infringe the '739 patent during the present litigation.

      **5.**      **The '730 patent is not unenforceable for inequitable conduct before the PTO**

FGX argues that the '739 patent is not enforceable due to inequitable conduct before the PTO during the prosecution of the application resulting in the '739 patent.

Specifically, FGX alleges that Sun Optics failed to disclose to the PTO "any of the known eyeglass cases or the associated displays" that are referred to in the specification itself. [Second Opposition, at pp. 10-20.]  These allegations by FGX fall far short of raising a "substantial question" regarding the enforceability of the '739 patent.

"To hold a patent unenforceable due to inequitable conduct, there must be clear and convincing evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the U.S. Patent and Trademark Office ("PTO")." *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363-1364 (Fed. Cir. 2007) (citing *Impax Labs., Inc. v. Aventis Pharms. Inc.*, 468 F.3d 1366, 1374 (Fed. Cir. 2006)).  FGX has failed to raise facts showing either of these elements required to establish inequitable conduct.

FGX has pointed to no material information that was withheld from the PTO during the prosecution of the '739 patent.  FGX's entire allegation of inequitable conduct is based on a passage in the specification of the '739 patent itself.  FGX, cites to column 1, lines 47-57 of the '739 patent to allege that "[a]t the time of filing the application that matured into the '739 patent the inventor was aware of: (i) eyeglass cases that allow a consumer to see part of the eyeglasses within the case, i.e., partially transparent; and (ii) that such eyeglass cases were tailored for particular display types." [Second Opposition, at p. 19.] FGX next alleges that Sun Optics "failed to disclose any of the known eyeglass cases or the associated displays." [*Id.* at pp. 19-20.] This statement is false. Sun Optics filed three separate Information Disclosure Statements during the prosecution of the application resulting in the '739 patent. [Declaration of Chad E. Nydegger in Support of Motion for Preliminary Injunction, at p. 1, ¶ 3 and Exhs. A-C (Information Disclosure Statements filed during the prosecution of the '739 patent).]   In these Information Disclosure Statements, Sun Optics discloses 47 different references. [*See id.* at Exh. A-

11

C.] FGX's unsupported allegation that Sun Optics "failed to disclose any of the known eyeglass cases or the associated displays" is simply not true.

FGX does not identify a single reference that Sun Optics withheld from the PTO. A far cry from raising a "substantial question" as to the enforceability of the '739 patent, this deficiency alone renders FGX's allegations insufficient to satisfy Federal Rule of Civil Procedure 9 requiring that allegations of fraud be plead with "particularity." Further, FGX's failure to identify any specific information or prior art reference renders it impossible for FGX to prove that the alleged withholding was "material" and not cumulative of other references before the examiner. FGX has not provided any evidence to support its allegation that Sun Optics withheld material information from the PTO during the prosecution of the '739 patent. This failure alone is sufficient grounds for dismissing FGX's allegations of inequitable conduct.

FGX has also failed to provide any evidence on the second element required to prove inequitable conduct, intent to deceive the PTO. FGX relies solely on the specification of the '739 patent to allege inequitable conduct. In other words, FGX argues that Sun Optics's statement in the specification regarding known cases and displays raises an inference that Sun Optics was intending to hide that knowledge to deceive the PTO. This reasoning is backwards. If Sun Optics was intending to deceive the PTO and withhold information from the PTO, in makes no sense for Sun Optics *to disclose that information in the specification of the very application* in which it was allegedly trying to hide the information from the PTO. Rather than create an inference of intent to deceive, the fact that Sun Optics disclosed the information in the specification creates an inference that Sun Optics was *not* intending to deceive the PTO. FGX has failed to raise facts sufficient to raise even an inference of intent to deceive the PTO on the part of Sun Optics.

FGX's unjustified accusations of inequitable conduct are precisely the type of accusations that have been condemned by the Federal Circuit: "[U]njustified accusations

of inequitable conduct are offensive and unprofessional. They have been called a 'plague' on the patent system. Unjustified accusations may deprive patentees of their earned property rights and impugn fellow professionals. They should be condemned." *Molins PLC v. Textron*, 48 F.3d 1172, 1182 (Fed. Cir. 1995) (citing *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422, 7 U.S.P.Q.2D (BNA) 1158, 1161 (Fed. Cir. 1988) ("The habit of charging inequitable conduct in almost every major patent case has become an absolute plague.")).

Because FGX has failed to provide facts sufficient to show that Sun Optics withheld material information from the PTO with intent to deceive the PTO, FGX has failed to raise a substantial question regarding the enforceability of the '739 patent. Consequently, Sun Optics is likely to prevail at trial on infringement and enforceability of the '739 patent, and this factor weighs in favor of granting a preliminary injunction.

**B.    Sun Optics Continues to be Irreparably Harmed by FGX's Infringement of the '739 Patent**

FGX attempts to rebut Sun Optics's showing of irreparable harm by artificially limiting Sun Optics's allegations, misconstruing the declarations submitted by Sun Optics establishing irreparable harm, and raising arguments and facts that appear grand on their face, but shrivel when placed under scrutiny.

**1.    Sun Optics is entitled to a presumption of irreparable harm**

As set forth at pages 15-16 of Sun Optics's Reply Memorandum in Support of Its Motion for Preliminary Injunction, [D.I. 29,] incorporated herein by reference, Sun Optics is entitled to a presumption of irreparable harm despite the Supreme Court's decision in *Ebay, Inc. v. Mercexchange, LLC*, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). *See Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006) (implying that a presumption of irreparable harm still exists after the *eBay* decision by finding that the patentee "has not established a likelihood of success on the merits" and thus "is no longer entitled to a presumption of irreparable harm"); *Novozymes A/S v. Genencor Int'l,*

*Inc.*, 474 F. Supp. 2d 592 (D. Del. 2007) ("Contrary to Genencor's argument (D.I. 209 at 37, 39), the Supreme Court in *eBay* did not state that loss of the right to exclude could not be irreparable harm. Rather, the Court simply rejected the proposition that the patentee's right to exclude should always lead to injunctive relief for patent infringement."); *Christiana Indus. v. Empire Elecs., Inc.*, 2006 U.S. Dist. LEXIS 54210 (D. Mich. 2006) ("Defendant asserts that in *Ebay, Inc. v. Mercexchange, LLC*, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006), the Supreme Court eliminated the presumption of irreparable harm for preliminary injunctions upon a showing of validity and infringement. Plaintiff argues, and this Court agrees, that *Ebay* did not invalidate the presumption. The *Ebay* Court addressed the proper analysis for permanent injunctive relief. It held that courts err by categorically granting permanent injunctive relief on a showing of infringement and validity, without analyzing the traditional four factors for injunctive relief.").

FGX also cites to *Nutrition 21 v. United States*, 930 F.2d 867 (Fed. Cir. 1991), for the proposition that "the presumption does not aid Plaintiff in obtaining a preliminary injunction." *Nutrition 21*, however, merely states that "without a clear showing of validity and infringement, a presumption of irreparable harm does not arise in a preliminary injunction proceeding." 930 F.2d at 869 (citing *Datascope Corp. v. Kontron, Inc.*, 786 F.2d 398, 400 (Fed. Cir. 1986); *Roper Corp. v. Litton Sys., Inc.*, 757 F.2d 1266, 1271 (Fed. Cir. 1985)). Given Sun Optics's strong showing on both validity and infringement above, *Nutrition 21* actually supports Sun Optics's argument that it is entitled to a presumption of irreparable harm.

### 2. The declarations submitted by Sun Optics are consistent one with another

In arguing that Sun Optics suffers no irreparable harm, FGX argues that the various declarations of Bruce Raile [Dkt. Nos. D.I. 4, 25 and 29] submitted in support of Sun Optics's motions are inconsistent. [Second Opposition, at p. 22.] This argument is a baseless attempt to impugn the integrity of Mr. Raile and Sun Optics.

FGX alleges that Sun Optics has "changed its story" regarding its allegations of irreparable harm from Sun Optics's first Motion for Preliminary Injunction based on Sun Optics's design patents and the present Motion for Preliminary Injunction based on Sun Optics's utility patent. [Second Opposition, at p. 22.] Every statement of fact in each of the declarations submitted by Mr. Raile is true, and FGX's allegations to the contrary are false. FGX does not dispute that Sun Optics used its Clear Tube program to lure a portion of Rite Aid's business away from FGX, as stated in the Declaration of Bruce Raile filed March 22, 2007 [D.I. 4]. FGX used this statement to fabricate a defense of invalidity arguing that the patented designs had been sold to Rite Aid prior to the critical date of the '427 and '180 patents. [See First Opposition, D.I. 20, at pp. 8-10.]. In order to dispel these allegations, Sun Optics filed another Declaration of Bruce Raile on April 12, 2007, [I.D. 29,] clarifying that the Clear Tube program encompasses many different designs of cases for reading glasses, and that the cases of the Clear Tube program sold to Rite Aid were of a design different than those claimed in the '427 and '180 patents. FGX does not dispute this fact. Thus, the declarations submitted by Sun Optics are entirely consistent and forthcoming. They simply expose FGX's attempts to transform ambiguities into arguments and defenses that do not comport with the facts.

FGX also alleges in footnote 13 of its Opposition that "Plaintiff has not patented its Clear Tube program." This allegation by FGX also is false. The '739 patent is specifically directed at protecting Sun Optic's Clear Tube program. Further, specific designs of cases used in Sun Optics's Clear Tube program are also patented, such as the designs of the '427 and '180 patents. These patents, among other applications currently pending before the PTO, are specifically directed at protecting Sun Optics's Clear Tube program.

    **3.**    **FGX does not dispute that it used Accused Products to edge Sun Optics out of a recent contract to sell its Clear Tube Program**

FGX argues that Sun Optics's allegation of irreparable harm based on Sun Optics's failure to obtain a contract with CVS is "without basis and false." [Second Opposition, at p. 23.] FGX could have easily refuted these allegations with a simple declaration stating that FGX did not recently secure a contract with CVS to sell reading glasses. Instead, FGX has left Sun Optics's allegations that FGX did in fact secure such a contract with CVS uncontested. FGX also could have refuted Sun Optics's allegations with a declaration stating that FGX's contract with CVS does not involve any Accused Products. Instead, FGX carefully sidesteps making such a statement by focusing on its *Private Eyes brand* of products. [*Id.*, at p. 23.] Sun Optics does not now contest that FGX sells its Private Eyes brand of reading glasses only to doctor's offices. However, FGX's admits that "FGX sells some of its brands to high-end stores, others to large pharmacies and discount department stores, and still others to eye doctor's offices. Each brand is designed and marketed with a particular audience and distribution method in mind and at a different price point. This minimizes interbrand competition within FGX's product offerings." [Declaration of Alec Taylor filed April 27, 2007, [D.I. 39],at p. 4, ¶ 3.] In light of this sworn statement by FGX, it is expected that FGX would not sell its Private Eyes brand of reading glasses to both doctor's offices and to CVS. Instead, FGX likely sells some brand other than Private Eyes to CVS. In other words, that FGX does not sell its Private Eyes brand of glasses to CVS is both expected and irrelevant to whether FGX is selling one of its *other brands* of reading glasses to CVS in manner that infringes the '739 patent.[4]

---

[4]    FGX's statement that "Plaintiff now claims that the smaller Private Eyes fixture infringes claim 1 of its '739 patent," [Second Opposition, at p. 6,] erroneously implies that Sun Optics's claims and allegations are limited to "the smaller Private Eyes fixture." Sun Optics's claims and allegations are not so limited. Sun Optics's claims of infringement of the '739 patent "*include, but are not limited to,* products sold under the trade names 'Private Eyes' and 'Comfort Flex[.]'" [Plaintiff's Motion for Leave to File a First Amended Complaint, D.I. 21, at p. 5, ¶ 30 of Exh. A (First Amended Complaint).]

####    4.    FGX does not dispute that up to 20% of contracts are "exclusive" contracts that enable FGX to preclude its current customers from purchasing products from Sun Optics

FGX admits that up to 20% of its contracts are "'exclusive arrangements for reading glasses" that provide FGX with at least a "right of first refusal[.]" [Opposition, at p. 4 (citing the Declaration of Alec Taylor filed April 27, 2007, D.I. 39 at p. 2, ¶ 5).] Thus, for at least 20% of FGX's customers, which likely represents much more than 20% of its sales of reading glasses,[5] FGX can foreclose Sun Optics from competing for business with FGX's customers by simply exercising its admitted "right of first refusal." A preliminary injunction would preclude FGX from exercising this "right of first refusal," thereby allowing Sun Optics to compete for the business of these customers. Thus, FGX's admitted "exclusive" contracts will continue to cause Sun Optics irreparable harm by foreclosing Sun Optics from significant markets so long as FGX is allowed to continue infringing Sun Optics's patents. Consequently, this factor weighs in favor of Sun Optics and an injunction should issue.

###    C.    The Balance of the Hardships Weighs in Favor of Issuing and Injunction

As set forth at pages 15-16 of Sun Optics's Memorandum in Support of Motion for Preliminary Injunction, D.I. 3, FGX must show that the balance of the hardships tips *decidedly* in its favor to avoid a preliminary injunction. [Memorandum, at pp. 15-16 (citing 7 Donald S. Chisum, *Chisum on Patents*, § 20.04[1][f][I] (1999) ("As to comparative hardship, the court will usually grant relief unless the balance tips decidedly in favor of the defendant.")).] FGX has made no new arguments regarding this factor, instead merely incorporating by reference the arguments of its First Opposition. [Second Opposition, at p. 24.] In its First Opposition, FGX alleged hardship in light of its pending

---

[5]    FGX states that "over 80%" of its contracts "do not contain any exclusive dealing limitation." [Second Opposition, at p. 21.] This statistic may be deceiving. While FGX may have many non-exclusive contracts with small customers, such as doctors offices, national chains with over a thousand of stores, such Rite Aid and CVS, typically have exclusive contracts with suppliers. Thus, while 20% of FGX's contracts are exclusive, these contracts likely represent much more than 20% of FGX's sales of reading glasses.

IPO, and the cost of having to store inventory. [First Opposition, at pp. 22-23.] However, FGX's arguments based on its pending IPO are now rendered moot because the IPO is no longer pending. [Second Opposition, at p. 24 n.15.] FGX's arguments regarding the hardship it will incur storing inventory is addressed at pages 18-19 of its First Reply [D.I. 29], incorporated herein by reference. Thus, FGX has simply failed to show that it will incur any significant hardship should a preliminary injunction issue. On the other hand, the hardship flowing from the monetary and other irreparable harm that Sun Optics will continue to incur if a preliminary injunction does not issue is substantial. Far from tipping "decidedly" in favor of FGX, the balance of the hardships tips in favor of granting a preliminary injunction.

### D.    The Public Interest Weighs in Favor of Issuing an Injunction

FGX incorporates by reference the arguments it makes on the public interest factor at page 23 of its First Opposition. [Second Opposition, at p. 24.] Sun Optics has adequately refuted these arguments at pages 19-20 of its First Reply, [D.I. 29,] incorporated herein by reference.

FGX also makes the additional argument that "Plaintiff's two current requests for preliminary injunctions should be denied because the declarations of Bruce Raile submitted in support of those requests are materially misleading and contradictory . . . the Court should not reward such behavior with extraordinary relief." [Second Opposition, at p. 24.] As set forth above, the declarations of Bruce Raile are entirely consistent and forthcoming. FGX, on the other hand, has not been forthcoming with pertinent facts. Instead, FGX has taken advantage of the fact that the parties have not yet conducted discovery by coming forth with only part of the facts relevant to the arguments it makes. For example, FGX argued that Sun Optics's sales to Rite Aid invalidated Sun Optics's design patents despite *knowing* that those sales were of a completely different, and non-anticipatory, design. [*See* First Reply, at pp. 3-5.] FGX also has argued that it has not sold its Private Eyes brand glasses to CVS. FGX, however, does not deny that it recently

acquired an account with CVS.  By focusing its statement on the Private Eyes brand reading glasses, FGX also avoids stating whether its contract with CVS is for Accused Products sold under one of FGX's other 12 brands of reading glasses.  If the Court is to consider the litigation tactics used by the parties in deciding in which direction the public policy factor weighs, then this factor clearly weighs in favor of Sun Optics.  If the Court does not consider the litigation tactics of the parties in deciding this factor, it still weighs in favor of Sun Optics in light of the public policy of sustaining the patent system, as set forth at pages 16-17 of Sun Optics's First Memorandum, [D.I. 3,] incorporated herein by reference.

## III.    CONCLUSION

Based on the foregoing, each of the relevant factors weighs in favor of issuing an injunction in this case.  FGX has unabashedly copied Sun Optics's patented products, an allegation that FGX has never refuted.  Sun Optics respectfully requests that the Court grant its Motion for Preliminary Injunction and preliminarily enjoin FGX from selling any Accused Products that allegedly infringe the '739 patent.

<div style="margin-left: 40%;">

Respectfully submitted

**CONNOLLY BOVE LODGE & HUTZ, LLP**

By:    */s/* R. Eric Hutz
      R. Eric Hutz (#2702)
      The Nemours Building
      1007 N. Orange Street
      P. O. Box 2207
      Wilmington, DE 19899
      Telephone: (302) 658-9141
      *Attorneys for Plaintiff*
        *Sun Optics, Inc.*

</div>

**OF COUNSEL**:
LARRY R. LAYCOCK
CHAD E. NYDEGGER
**WORKMAN | NYDEGGER**
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111
Telephone: (801) 533-9800
*Attorneys for Plaintiff SUN OPTICS, INC.*

**DATE:** May 4, 2007

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SUN OPTICS, INC.<br>a Utah Corporation, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.07-137 (SLR) |
| v. | ) ) | |
| FGX INTERNATIONAL, INC.,<br>a Delaware Corporation, | ) ) ) | **CERTIFICATE OF SERVICE** |
| Defendant. | ) ) | |

I, R. Eric Hutz, hereby certify that on May 4, 2007, I caused to be electronically filed a true and correct copy of the foregoing with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Donald J. Detweiler, Esquire
Sandra G. M. Selzer, Esquire
**GREENBERG TRAURIG, LLP**
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
*Attorney for Defendant*
    *FGX International Inc.*

I further certify that on May 4, 2007, I caused a copy of the foregoing to be served by hand delivery on the above-listed counsel of record and the following counsel in the manner indicated:

| | |
|---|---|
| **FIRST-CLASS U.S. MAIL**<br>Adam B. Landa, Esquire<br>**GREENBERG TRAURIG, LLP**<br>200 Park Avenue<br>New York, NY 10166 | **FIRST-CLASS U.S. MAIL**<br>Steven J. Wadyka, Jr., Esquire<br>**GREENBERG TRAURIG, LLP**<br>1750 Tysons Boulevard, 12th Floor<br>McLean, VA 22102 |

*/s/ R. Eric Hutz*

531648_1